1  THOMAS M. BOEHM [SBN 63888]
   LAW OFFICE OF THOMAS M. BOEHM
2  2 North Santa Cruz Avenue, Suite 211
   Los Gatos, CA 95030-5900
3
   TELEPHONE:        408.998.8899
4  FACSIMILE:        408.998.4848
   EMAIL:            BOEHMTM@GMAIL.COM
5
   ATTORNEY FOR PLAINTIFFS,
6  BERNARD PICOT and PAUL DAVID MANOS
   MTN TO DISMISS.OPPO.BRF.FINAL.wpd
7

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11
   BERNARD PICOT and            )    CASE NO.  5:12-CV-01939 EJD
12 PAUL DAVID MANOS,            )
                                )
13      Plaintiffs,             )
                                )
14 v.                           )    MEMORANDUM OF POINTS &
                                )    AUTHORITIES IN OPPOSITION TO
15 DEAN D. WESTON, and DOES 1   )    MOTION TO DISMISS FOR LACK OF
   through 15, inclusive,       )    PERSONAL JURISDICTION AND
16                              )    IMPROPER VENUE
                                )
17      Defendants.             )    Hearing date:   August 10, 2012
   _____)    Hearing time:   9:00 am
18                                   Dept:           Courtroom 4, 5th Floor
                                     Judge:          Hon. Edward J. Davila
19

20

21

22

23

24

25

26

27

TABLE OF CONTENTS           Page/s

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3 - 5

1     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     1.1   Posture of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     1.2   The Instant Motions. . . . . . . . . . . . . . . . . . . . . . . . . . .  6

     1.3   Pre-litigation Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

2     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

     2.1   The Jurisdictional Motion. . . . . . . . . . . . . . . . . . . . . . . .  12

         2.1.1  The Legal and Procedural Criteria for Finding Jurisdiction. . . . . .  12

              2.1.1.1    Types of Jurisdiction. . . . . . . . . . . . . . . . . .  12

              2.1.1.2    Propriety of Specific Jurisdiction. . . . . . . . . . . .  13

              2.1.1.3    Burdens of Proof and Evidentiary Criteria. . . . . . .  13

         2.1.2  Jurisdiction for the Intentional Tort Claim. . . . . . . . . . . . . . .  14

              2.1.2.1    Purposeful Availment or Direction. . . . . . . . . . .  14

              2.1.2.2    The Tort Claim Relates to WESTON'S<br>                                      Forum-related Activities. . . . . . . . . . . . . . . . .  17

              2.1.2.3    Jurisdiction Over WESTON Is Reasonable. . . . . . . .  17

                      2.1.2.3.1    WESTON'S Purposeful Availment. . . .  17

                      2.1.2.3.2    WESTON'S Burden to Defend Here. .  18

                      2.1.2.3.3    Conflicts: California v Michigan. . . . .  18

                      2.1.2.3.4    California's Interest in the Dispute. . .  18

                      2.1.2.3.5    Efficient Resolution. . . . . . . . . . .  18

                      2.1.2.3.6    Plaintiff's Interest in Relief. . . . . . .  19

                      2.1.2.3.7    An Alternative Forum. . . . . . . . . .  19

         2.1.3  Jurisdiction for the Declaratory Relief Claim. . . . . . . . . . . . . .  19

              2.1.3.1    Purposeful Availment or Direction. . . . . . . . . . .  19

2.1.3.2    The Declaratory Relief Claim Relates
to Forum-related Activities. . . . . . . . . . . . . . . .  21

2.1.3.3    Jurisdiction Over WESTON Is Reasonable. . . . . . .  21

2.1.3.3.1    WESTON'S Purposeful Availment. . . .  22

2.1.3.3.2    WESTON'S Burden to Defend Here. .  22

2.1.3.3.3    Conflicts: California v Michigan. . . . .  22

2.1.3.3.4    California's Interest in the Dispute. . .  22

2.1.3.3.5    Efficient Resolution. . . . . . . . . . . . .  22

2.1.3.3.6    Plaintiff's Interest in Relief. . . . . . . .  22

2.1.3.3.7    An Alternative Forum. . . . . . . . . . .  22

2.1.3.4    Pendent Jurisdiction. . . . . . . . . . . . . . . . . . .  23

2.2    The Venue Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

3    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

<u>TABLE OF AUTHORITIES</u>

<u>STATUTES</u>    FEDERAL    28 USC 1404. . . . . . . . . . . . . . . . . . . . . . . .  6 [fn 3]
28 USC 1441. . . . . . . . . . . . . . . . . . . . . . .  7

STATE

CALIFORNIA    CCP § 410.10. . . . . . . . . . . . . . . .  13

NEVADA    NRS 86.541. . . . . . . . . . . . . .  10 [fn 9]

<u>CASES</u>    US Supreme Court

Burger King Corp. v. Rudzewicz,
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). . . . . .  17, 19

Calder v. Jones,
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).   14, 21 [fn 21]

Keeton v. Hustler Magazine, Inc.,
465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). . . .  21 [fn 21]

//

1      Ninth Circuit

2      Action Embroidery Corp. v. Atlantic Embroidery Inc.,
       368 F.3d 1174, 1180 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23
3
       AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). . .   13
4
       Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). . . . . . . . . . . . .   13, 20
5
       Bancroft & Masters, Inc v. Augusta Nat'l Inc.,
6      223 F.3d 1082, 1088 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . .   15 [fn 13], 17

7      Boschetto v. Hansing, 539 F.3d 1011,1016 (9th Cir. 2008). . . . . . . . . . . .   12

8      Brainerd v. Governors of the University of Alberta,
       873 F.2d 1257 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . .   15 [fn 13], 20
9
       Brayton Purcell LLP v. Recordon & Recordon,
10     606 F.3d 1124, 1127 (9th Cir. 2010). . . . . . . . . . . . . . . . . . .   13, 16 [fn 16]

11     CE Distrib., LLC v. New Sensor Corp.,
       380 F.3d 1107, 1113-1114 (9th Cir. Ariz. 2004). . . . . . . . . . . . . .   23 [fn 23]
12
       Corporate Inv. Bus. Brokers v. Melcher, 824 F.2d 786, 790 (9th Cir. 1987). .   17
13
       Data Disc, Inc. v. Systems Technology Associates, Inc.,
14     557 F.2d 1280, 1288 (9th Cir. Cal. 1977). . . . . . . . . . . . . . . . . . . . . . . .   14

15     Decker Coal Co. v. Commonwealth Edison Co.,
       805 F.2d 834, 841 (9th Cir. Mont. 1986). . . . . . . . . . . . . . . . . . . . . . . . .   18
16
       Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). . . . . . . . . . . . . . .   13
17
       Dole Food, Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). . . .   14, 16, 19
18
       Fiore v. Walden,
19     657 F.3d 838, 849 (9th Cir. Nev. 2011). . . . . . . . . . . . . . . . . .   16 [fn 16], 19

20     Gordy v. Daily News, L.P., 95 F.3d 829, 833 (9th Cir. 1996). . . . . . .   15 [fn 13]

21     Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,
       784 F.2d 1392 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . .   14, 18, 21
22
       Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,
23     328 F.3d 1122, 1134 (9th Cir.2003). . . . . . . . . . . . . . . . . . . .   18, 19 [fn 17]

24     Lake v. Lake, 817 F.2d 1416, 1422-23 (9th Cir. 1987). . . . . . . . . . .   15 [fn 13]

25     Mavrix Photo, Inc. v. Brand Techs., Inc.,
       2011 U.S. App. LEXIS 16326, 21-22 (9th Cir. Cal. 2011). . . . . . . . . . . . .   14
26

27

28     PICOT v WESTON, 5:12-CV-01939 EJD
       **MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**
       **FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**. . . . . . . . . . . . . . . . . **Page 4 of 24**

Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007). . . . . 13, 17, 19 [fn 17]

Metropolitan Life Insurance Co. v. Neaves,
912 F.2d 1062 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 15 [fn 13]

Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). . . . . . . . . 13

Schwarzenegger v. Fred Martin Motor Co.,
374 F.3d 797, 801 (9th Cir. 2004). . . . . . . . . . . . . . . 13, 16 [fn 14], 20 [fn 18]

Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). . . . . . . . . . . . . . . . . 20

Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988). . . . 17, 18

Yahoo! Inc. v. La Ligue Contre le Racisme,
433 F.3d 1199, 1206 (9th Cir. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . 15, 16

Ziegler v. Indian River County, 64 F.3d 470, 476 (9th Cir. Cal. 1995). 17, 18, 22

District Courts (within the Ninth Circuit)

Bcs & Assocs. Bus. Consulting Servs. v. Essentia Health,
2010 U.S. Dist. LEXIS 28423, 9-12 (D. Ariz. Mar. 24, 2010). . . . . . . 21 [fn 20]

Enters. v. Cloyd,
2010 U.S. Dist. LEXIS 102579 (D. Ariz. Sept. 23, 2010). . . . . . . . . . 15 [fn 13]

Ghiorzi v. Whitewater Pools & Spas, Inc.,
2011 U.S. Dist. LEXIS 70139, 8-9 (D. Nev. June 28, 2011). . . . . . . . . 6 [fn 10]

Language Line Servs., Inc. v. Language Servs. Assoc., LLC,
No. C 10-02605 JW, 2010 U.S. Dist. LEXIS 134160,
2010 WL 5115671, (N.D. Cal. Dec. 9, 2010). . . . . . . . . . . . . . . . . 21 [fn 21]

Skillnet Solutions, Inc. v. Entm't Publs, LLC,
2012 U.S. Dist. LEXIS 28087 (N.D. Cal. Mar. 2, 2012). . . . . . . . . . . . . . . 23

TaiMed Biologics, Inc. v. Numoda Corp.,
2011 U.S. Dist. LEXIS 48863, 15-17 (N.D. Cal. Apr. 28, 2011). . . . . 22 [fn 22]

Wolf Designs, Inc. v. DHR & Co.,
322 F. Supp. 2d 1065, 1074 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . 19

I           INTRODUCTION

        1.1      Posture of the Case

This action was filed in Santa Clara County Superior Court March 23, 2012 and removed to this Court by defendant on April 18, 2012. [1/] The complaint alleges two causes of action:  Declaratory Relief and Intentional Interference with Contractual Relations.  The tort claim arises from actions taken by WESTON that disrupted a contract he knew existed between PLAINTIFFS and Hydrogen Master Rights, Ltd. ["HMR"] [the "CONTRACT"] regarding the sale of hydrogen related technology [the "ASSETS"], including a formula, developed by MANOS, for an electrolyte that gave the essential value to the ASSETS. [2/]

        PLAINTIFFS' declaratory relief claim arises from assertions by WESTON that, pursuant to an express oral agreement [the "ORAL AGREEMENT"] he is to receive one third of the payments under the CONTRACT – plus the sum of $20,000 per month from March 2009.  PLAINTIFFS deny WESTON'S contentions.

        1.2      The Instant Motions

Having removed the action, WESTON now moves for dismissal contending a lack of personal jurisdiction and improper venue. [3/]  The jurisdiction motion should be denied.  This Court has specific personal jurisdiction over WESTON as to both the tort and declaratory relief claims.  And, the venue motion should be denied as well for, having himself removed the

---

[1/]     PLAINTIFF PICOT is a resident of Santa Clara County, California; PLAINTIFF MANOS is a resident of Nevada; and, DEFENDANT WESTON is a resident of Michigan.

[2/]     In December 2011, WESTON approached Dr. Pravansu Mohanty, known to WESTON to then be working with HMR, ostensibly to inquire whether the CONTRACT, to which WESTON was not a party, was progressing.  Despite Dr. Mohanty's suggestion that WESTON find out from MANOS and PICOT, WESTON announced he knew the formula for the electrolyte.

[3/]     In a separate motion, WESTON seeks to transfer the case to the Eastern District of Michigan, where he resides, pursuant to 28 USC 1404.

---

1   case to this Court, WESTON is bound by the venue here under 28 USC 1441.

2        1.3    Pre-litigation Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [4/]

3        In March 2009, PICOT, a resident of California, contacted MANOS, a resident of

4   Nevada, to evaluate a technology being promoted by Carey Hilton in Texas [the "HILTON

5   TECHNOLOGY"].  BP, ¶ 3; PDM, ¶ 3.  PICOT directed all of his efforts from California.  BP,

6   ¶ 3, 4, 10, 14, 22-24, 27, 28; PDM, ¶¶ 3, 27-31, 38.  MANOS was to assess further

7   develop the HILTON TECHNOLOGY while PICOT would tend to the business issues.  PICOT

8   and MANOS agreed they each would enjoy an 50% ownership interest if they succeeded.  BP,

9   ¶ 3; PDM, ¶ 3, 4.

10       MANOS asked WESTON to travel to Texas to inspect the HILTON TECHNOLOGY

11  and paid WESTON'S travel expenses.  WESTON'S input was of no value to MANOS, who then

12  evaluated the HILTON TECHNOLOGY himself in Nevada.  PDM, ¶ 5-7.  In July 2009,

13  MANOS and Hilton went to Michigan, where WESTON and his business partner, Frank Joseph,

14  who had been evaluating the HILTON TECHNOLOGY for themselves, were paying for a test

15  of the HILTON TECHNOLOGY at Roush testing facilities.  WESTON had contacts with entities

16  such as General Motors and Chrysler and informed MANOS that he and Joseph hoped to

17  present the HILTON TECHNOLOGY to such entities.  PDM, ¶ 8-9, 17-19. [5/]

---

18

19      [4/]   The statement of facts is supported by the accompanying:

20          [1]    DECLARATION OF PAUL DAVID MANOS IN OPPOSITION TO
                   MOTIONS TO DISMISS FOR LACK OF JURISDICTION AND
21                 VENUE AND TO TRANSFER, hereinafter "PDM, ¶    ";
            [2]    DECLARATION OF BERNARD PICOT IN OPPOSITION TO
22                 MOTIONS TO DISMISS FOR LACK OF JURISDICTION AND
                   VENUE AND TO TRANSFER, hereinafter "BP, ¶   "; and,
23          [3]    DECLARATION OF THOMAS M. BOEHM IN OPPOSITION TO
                   MOTIONS TO DISMISS FOR LACK OF JURISDICTION AND
24                 VENUE AND TO TRANSFER, hereinafter "TMB, ¶ __".

25      [5/]   Because of WESTON'S and Joseph's sustained interest in the HILTON
               TECHNOLOGY for themselves, on July 19, 2009 PICOT sent a proposed
26                                                          (continued...)

27

1   On his own, by the Fall of 2009, MANOS determined that the HILTON
2 TECHNOLOGY was unworkable and began looking for a new approach.  PDM, ¶ 7.  MANOS
3 kept his research to himself, and did not even include PICOT.  PDM, ¶ 15.  MANOS achieved
4 no significant progress until December 2009.  Even then, he was uncertain of his findings and
5 conferred with Dr. Mohanty in early 2010.  With the information obtained from Dr. Mohanty,
6 MANOS was able to advance.  Further significant development fell to Dr. Mohanty beginning
7 in approximately the first quarter of 2010.  PDM, ¶¶ 13-16.

8   From late August 2009 through the end of 2009, MANOS obtained limited assistance
9 in his work from WESTON.  [6/]  MANOS never engaged WESTON for or gave him permission
10 to perform research involving the key elements of the electrolyte.  MANOS never told
11 WESTON the formula for the electrolyte.  PDM, ¶¶ 17-20.

12   WESTON and Joseph were then working together under the name of The Right Angle.
13 WESTON asked MANOS to if he could interest his automotive industry contacts in the
14 ASSETS, explaining that he and Joseph wanted a license, to be held in the name of The Right
15 Angle, to sell the units to these contacts.  PDM, ¶¶ 17-19.  [7/] About November 2009,
16 WESTON told MANOS that, through The Right Angle, he wanted to buy units and electrolyte
17 fluid (once MANOS had solved the remaining issues) for resale to his contacts.  PDM, ¶¶ 17-
18 19.  WESTON'S hopes for The Right Angle suffered a setback later in December 2009, when
19 Frank Joseph was convicted and sentenced on Federal criminal charges.

---

21   [5/](...continued)
22   agreement to them define the relationships regarding the HILTON TECHNOLOGY, but WESTON never signed it.  PDM, ¶ 11; BP ¶ 6.

23   [6/]   MANOS limited WESTON'S role to the assembly, installation, testing and
24   demonstration of prototypes.  MANOS did not view WESTON as a skilled researcher.  WESTON'S "assistance" was designed to advance his and Joseph's hopes of making money for themselves from MANOS' success.

25   [7/]   Though WESTON attempted to interest his contracts, none of them ever
26   purchased or licensed anything.

---

1    Following Joseph's conviction, WESTON sought out MANOS for work.  PDM, ¶¶ 25-

2  26.  Under MANOS' instruction, WESTON traveled to California in January 2010 to assist

3  MANOS in a demonstration of the ASSETS to Peter Warkentin, who resided here. [8/]  Then,

4  at Warkentin's expense, WESTON traveled to Mexico to conduct a demonstration for

5  Warkentin's prospect there.  PDM, ¶¶ 27-28.

6    In the last months of 2009, WESTON began incessantly asking MANOS to share the

7  formula for the electrolyte with him, but MANOS never did.  PDM, ¶¶ 20-22, 29.  MANOS

8  asked WESTON to sign a non-disclosure agreement [the "NDA"], which WESTON did on

9  February 1, 2010.  MANOS did not think that WESTON knew the formula, but wanted the

10  NDA because WESTON'S persistent entreaties made MANOS increasingly distrustful.  The

11  NDA was drawn between WESTON and DBHS LLC, a Nevada entity created by PICOT and

12  MANOS in November 2009, when MANOS' research efforts had begun to hold a glimmer of

13  eventual promise.  PDM, ¶ 30; BP ¶¶ 8, 13. [9/]

---

15  [8/]    WESTON had nothing to do with procuring Warkentin, who was then a
        resident of California and has since move to Europe.  Warkentin had been
16        procured by PICOT while both resided in California.

17  [9/]    Though DBHS never owned the ASSETS, it was acting on behalf of PICOT
        and MANOS, who did.  MANOS, PICOT and Julia Blair, a Nevada resident,
18        were the only three members of DBHS at all times.  Blair held no ownership
        or equity interest, but tended to the administrative aspects.

19        By signing the NDA, which called for application of Nevada law and venue,
        WESTON acknowledged his awareness that there were substantial aspects
20        of MANOS' and PICOT'S efforts regarding the ASSETS centered outside
        of Michigan.  The NDA [PDM, Ex. "A"] provided, inter alia, that:

22        ~    "All Proprietary Information will remain the exclusive property of
              the Disclosing Party, and [WESTON] will have no rights, by license or
23              otherwise, to use the Proprietary Information ..." [¶ 4].

24        ~    WESTON was obligated to hold the "Proprietary Information in
              strict confidence as a fiduciary" [¶ 2.1].

25        ~    WESTON could not disclose proprietary information learned "prior

26                                                    (continued...)

---

1    In May 2010, ADP HOLDINGS, LTD., a California corporation based near

2  Sacramento, signed wanted to form a joint venture which would get a license for the ASSETS.

3  APD committed to advance of money for further development of the ASSETS, but wanted a

4  demonstration.  PDM, ¶¶ 31, 32; BP, ¶¶ 14, 15.  In June 2010, again under MANOS'

5  direction, WESTON traveled to Sacramento to install prototypes on ADP'S vehicles for the

6  demonstration.  PDM, ¶¶ 31, 32; BP, ¶¶ 14, 15.  [10/]

7  _____

8    [9/](...continued)
        or subsequent to the Effective Date of this Agreement" until at least
9        February 2015 [¶ 6].

10    ~    WESTON could "not reverse engineer any such Proprietary
            Information or, except as strictly and expressly permitted herein,
11           copy the same" [¶ 2.v].

12    ~    "[WESTON] will notify [DBHS] in writing immediately upon the
            occurrence of any such unauthorized release or other breach of
13           which it is aware" [¶ 7].

14    ~    "Immediately upon ... a request by [DBHS] at any time ... [WESTON]
            will turn over to [DBHS] all Proprietary Information of [DBHS] and all
15           documents or media containing any such Proprietary Information
            and any and all copies or extracts thereof ... [¶ 3].

16  DBHS was dissolved in October 2011.  At the time of dissolution, PICOT
    and MANOS were managers of DBHS.  Pursuant to NRS 86.541, the
17  dissolution conferred upon PICOT and MANOS the status of trustees for
    the members of DBHS in order to take action "on behalf of and in the name
18  of" DBHS.  As noted in Ghiorzi v. Whitewater Pools & Spas, Inc., 2011
    U.S. Dist. LEXIS 70139, 8-9 (D. Nev. June 28, 2011):
19

20  The dissolution of a limited-liability company does not impair any remedy
    or cause of action available to or against it or its managers or members
21  arising before its dissolution and commenced within 2 years after the date
    of the dissolution. A dissolved company [*9] continues as a company for
22  the purpose of prosecuting and defending suits, actions, proceedings..."
    N.R.S. 86.505.

23    [10/]    By the time of his trip to Sacramento, WESTON knew that PICOT had
            procured ADP as a result of PICOT'S California based efforts.  While
24           WESTON was assisting MANOS in the demonstration, ADP suggested to
            MANOS and PICOT that the proposed joint venture create a research,
25           development, and marketing facility for the ASSETS in a building it had

26                                                              (continued...)

27  _____

28

1    All of WESTON's travel expenses for his trips to California presentations were paid by

2  MANOS and PICOT.   In addition, over time starting in June 2010, WESTON was paid at least

3  $42,500 by or at the direction of PICOT and MANOS.  At WESTON'S request, PICOT sent

4  one such payment of $10,000 from California to WESTON for his spent there in June 2010.

5  PDM, ¶¶ 27, 28, 35, 36; BP, ¶¶ 10, 12, 18, 19.

6    ADP did not complete its full funding commitment.  So, Dan Heindrichs and Darrell

7  Smith, both residents of California and both principals of ADP, met in San Jose, California on

8  January 19, 2011 with PICOT, MANOS, and Coats and orally terminated ADP'S relationship

9  to the ASSETS.  PDM, ¶¶ 37-38; BP,  ¶¶ 21-22.  [11/]

10    In April 2011, IBKE, by then controlled by Coats and Carl Le Souef, a resident of

11  Australia, obtained an expanded license agreement for the ASSETS, enlarging the earlier

12  territory to the entire world.  Payments under this expanded license were paid to or for the

13  benefit of MANOS and PICOT in Nevada and California.  BP, ¶¶ 25-26.  Then, at the

14  invitation of  Coats and Le Souef, negotiations for the sale of the ASSETS to an entity to be

15  formed and controlled by Coats and Le Souef began in July and were begun and pursued

16

17    [10/](...continued)

18       already located near Sacramento.  PICOT and MANOS expressed their
         interest in doing so – and, WESTON told the principals of ADP that he

19       wanted to work there for the joint venture.  PDM, ¶¶ 33-34; BP, ¶¶ 16-
         17.

20       In ADP'S effort to attract capital to meet its funding commitment for the

21       anticipated joint venture, ADP arranged a "Skype" presentation regarding
         the ASSETS.  The presentation was originated from California in the Fall of

22       2010 and WESTON participated [from Michigan] with Dan Heindrichs of
         ADP [from California].  BP, ¶ 20.

23    [11/]   In February and March 2011, $20,000± was paid by PICOT and MANOS

24       from Nevada and California accounts to ADP in California to effectuate the
         unwinding of ADP'S involvement.  And, in May and June 2011, there were

25       further activities, all based in California, to finalize the disassociation from
         ADP, which involved separate California attorneys for each side, who

26       worked here.  PDM, ¶¶ 39-40; BP,  ¶¶ 23-24.

27

1   through August and September 2011 by PICOT, largely from California and with the assistance

2   of counsel in California.  After these talks stalled, the parties convened in Los Angeles to

3   finalize them.  Impasses were mediated there by Joseph Dunn, a resident of Los Gatos,

4   California.  The CONTRACT was signed in Los Angeles, California and became effective

5   December 12, 2011.  PDM, ¶¶ 43-44; BP, ¶¶ 27-28.

6           February 8, 2012, WESTON sent an email to MANOS [PDM, ¶ 49 and Ex. "B"

7   thereto] stating, in part:

8           … I know you said that you and [PICOT] are fighting and [PICOT] is forcing you
            to take my share out of yours but we can fight him on that as you were the
9           managing member of DBHS when this all occurred.  **I am sure there are
            several things out there that [PICOT] would not like public and would help
10          the cause if he knew all the facts.**  [Emphasis added.]

11  MANOS forwarded this email to PICOT in California.  PDM, ¶ 49.  Then, WESTON called

12  MANOS on the phone and demanded $250,000 from him and PICOT right away or WESTON

13  would "do everything in his power to destroy" both of them.  PDM, ¶¶ 50-51.

14          WESTON signed a declaration for HMR, dated March 14, 2012, stating he obtained

15  the electrolyte formula from MANOS in August 2009.  HMR stopped payments under the

16  CONTRACT.  TMB, ¶¶ 4-6 and Ex. "A" thereto.  Next, a Michigan attorney for WESTON

17  sent an email to MANOS and PICOT suggesting that, if they paid WESTON, WESTON would

18  put the CONTRACT he  knew he had disrupted "back on line."  PDM, ¶ 52 and Ex. "C"

19  thereto; BP, ¶ 31.  PLAINTIFFS then filed the action in State Court.

20  2       ARGUMENT

21      2.1     The Jurisdictional Motion

22              2.1.1  The Legal and Procedural Criteria for Finding Jurisdiction

23                      2.1.1.1      Types of Jurisdiction

24          There are two types of personal jurisdiction:  general and specific.  <u>Boschetto v.</u>

25  <u>Hansing</u>, 539 F.3d 1011,1016 (9th Cir. 2008).  PLAINTIFFS contend only that WESTON is

26

27  _____

28  <u>PICOT v WESTON</u>, 5:12-CV-01939 EJD
    **MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
    FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE.. . . . . . . . . . . . . . . . Page 12 of 24**

1  subject to specific personal jurisdiction.

2         2.1.1.2         Propriety of Specific Jurisdiction

3         In diversity, personal jurisdiction is proper if permitted by the forum state's law – if it

4  does not violate federal due process. <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th

5  Cir. 2006). California CCP § 410.10 is consistent with federal due process. <u>Schwarzenegger</u>

6  <u>v. Fred Martin Motor Co</u>., 374 F.3d 797, 801 (9th Cir. 2004). Specific personal jurisdiction

7  exists where: (1) the defendant purposefully availed himself of the privilege of doing business

8  in the forum <u>or</u> purposefully directed his activities at residents of the forum state or the forum

9  state itself; (2) the claim arises out of or relates to those activities; and (3) personal jurisdiction

10  is reasonable. <u>Schwarzenegger</u>, supra, at 802.

11         2.1.1.3         Burdens of Proof and Evidentiary Criteria

12         The plaintiff bears the burden to establish jurisdiction [<u>Menken v. Emm</u>, 503 F.3d

13  1050, 1056 (9th Cir. 2007)] and must show the first two prongs of the above test at the risk

14  of a finding of no jurisdiction [<u>Schwarzenegger</u>, supra, 374 F.3d at 802]. If these elements

15  are shown, the burden shifts to defendant to present a <u>compelling</u> case that the exercise of

16  jurisdiction would not be reasonable. <u>Menken</u>, supra, 503 F.3d at 1057.

17         If the motion is decided on declarations, plaintiff need only make a prima facie showing.

18  <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1127 (9th Cir. 2010); <u>Ballard</u>

19  <u>v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995); <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94

20  F.3d 586, 588 (9th Cir. 1996). Where not controverted, the allegations of plaintiff's

21  complaint are taken as true. <u>AT&T</u>, supra, 94 F.3d at 588. Conflicts in the parties' affidavits

22  must be resolved in a plaintiff's favor. <u>Doe v. Unocal Corp</u>., 248 F.3d 915, 922 (9th Cir.

23  2001). [12/]

24  ─────────────────────────

25         [12/]    WESTON'S declarations on these motions contradicted by the showing by
          PICOT and MANOS – and by WESTON himself. In his Declaration

26                                                                                      (continued...)

27  ─────────────────────────

1        2.1.2  Jurisdiction for the Intentional Tort Claim

2        Jurisdiction for intentional tort claims is determined by the "effects" test of <u>Calder v.</u>

3  <u>Jones</u>, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)); <u>Dole Food, Inc.</u>

4  <u>v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002).  Under this test the defendant must have

5  allegedly:  (1) committed an intentional act, (2) expressly aimed at the forum state or a resident

6  there, (3) causing harm defendant knows is likely in the forum state.  <u>Mavrix Photo, Inc. v.</u>

7  <u>Brand Techs., Inc.</u>, 2011 U.S. App. LEXIS 16326, 21-22 (9th Cir. Cal. 2011).

8        2.1.2.1        Purposeful Availment or Direction

9        By itself, an intentional tort can satisfy all three requirements if the act is aimed at a

10  resident of the state or has effects in the state.  <u>Data Disc, Inc. v. Systems Technology</u>

11  <u>Associates, Inc.</u>, 557 F.2d 1280, 1288 (9th Cir. Cal. 1977).  The defendant need not be

12  physically present in California when committing the tort.  As pointed out in <u>Haisten v. Grass</u>

13  <u>Valley Medical Reimbursement Fund, Ltd.</u>, 784 F.2d 1392 (9th Cir. 1986), in <u>Calder v. Jones</u>

14  the Supreme Court determined that jurisdiction was proper over a defendant whose only

15  "contact" with the forum state was the "purposeful direction" of an out-of-forum act having

16  an effect in the forum.  Purposeful direction is satisfied "when the defendant is alleged to have

17  engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

18  of the forum state."  <u>Dole Food Co., Inc. v. Watts</u>, supra, 303 F.3d 1104, 1111 (9th Cir.

19  2002)."In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his

20  activities' at the forum state, applying an 'effects' test that focuses on the forum in which the

21  _____

22  [12]/(...continued)
        supporting transfer, WESTON defines the term "Technology" to include
23      the electrolyte [¶ 3] and then declares, "¶ 8. I, Dean Weston, developed
        the Technology ..." But, in his March 2012 declaration to HMR [TMB, ¶¶
24      4-6, and Ex. "A" thereto] he swore to the contrary:

25          ¶ 4.   ... Our hydrogen breakthrough centered around a particular
                   electrolyte ... **that Manos disclosed to [WESTON] in or around**
26                 **August 2009** [emphasis added].

27  _____

1   defendant's actions were felt, whether or not the actions themselves occurred within the forum."

2   Yahoo! Inc. v. La Ligue Contre le Racisme, 433 F.3d 1199, 1206 (9th Cir. Cal. 2006)

3   (quoting Schwarzenegger, 374 F.3d at 803. [13/]

4        Here, WESTON acted intentionally when he:  [i] Falsely told Dr. Mohanty and then

5   HMR that MANOS had disclosed the electrolyte formula to him; [ii] Threatened to find and

6

7   [13/]   A single forum state contact or effect suffices if the claim arises out of it.  In
8   Metropolitan Life Insurance Co. v. Neaves, 912 F.2d 1062 (9th Cir.
    1990), jurisdiction existed over an Alabama resident who mailed a letter to
9   an insurance company representing that she was entitled to a payment that
    belonged to a California resident.  There it was irrelevant where the letter
10  was dispatched from; in sending the letter, the defendant "was purposefully
    defrauding [plaintiff] in California." Id., at 1065.

11  Brainerd v. Governors of the University of Alberta, 873 F.2d 1257 (9th
12  Cir. 1989), held jurisdiction existed over Canadian residents who made
    statements that defamed one they knew resided in the forum.  Even though
13  defendants had not initiated the calls, their statements "for the very purpose
    of having their consequences felt in the forum state." Id. at 1259-60.

14  In Bancroft & Masters, Inc v. Augusta Nat'l Inc., 223 F.3d 1082, 1088
15  (9th Cir. 2000), overruled in part on other grounds by Yahoo! Inc. v. La
    Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir.
16  2006) (en banc), jurisdiction was based on two letters sent by the
    defendant, from Georgia, contending that plaintiff was improperly using its
17  domain name. One letter was sent to Network Solutions, Inc. ("NSI") in
    Virginia.  NSI was then the sole registrar of domain names. The other, a
18  cease and desist letter, was sent to the plaintiff in California, who there
    sought a declaratory judgment.  Jurisdiction was grounded on the prima
19  facie showing that the letters were intended to trigger NSI's dispute
    resolution procedures, to interfere wrongfully with plaintiff's use of its
20  domain name, and to misappropriate that name for ANI's own use.  223
    F.3d at 1087.

21  The purposeful sending of emails as part of the commission of a tort "are
22  sufficient to satisfy the intentional acts prong of the effects test." MJG
    Enters. v. Cloyd, 2010 U.S. Dist. LEXIS 102579 (D. Ariz. Sept. 23,
23  2010).

24  See also: Gordy v. Daily News, L.P., 95 F.3d 829, 833 (9th Cir. 1996)
    (specific jurisdiction in light of "targeting" of the plaintiff, who was a forum
25  resident); and, Lake v. Lake, 817 F.2d 1416, 1422-23 (9th Cir. 1987)
    (specific jurisdiction where defendant performed foreign acts for the
26  purpose of having consequences in the forum state).

27

expose secrets about PICOT to obtain money; and, [iii] Threatened to ruin MANOS and PICOT if they did not pay $250,000. [14/] WESTON'S intentional actions, even if undertaken outside of California, were aimed at MANOS in Nevada and PICOT in California, where he knew they resided.  PDM, ¶¶ 6, 10.  Dole Food Co., Inc. v. Watts, supra, 303 F.3d 1104, 1111 (9th Cir. 2002) [jurisdiction where conduct targeted a known resident of the forum].

Of course, WESTON caused harm in California that he knew was likely to be suffered here.  The harm is twofold:  payments due under the CONTRACT have been disrupted and PLAINTIFFS' have incurred attorney's fees in California to deal with the matter.  PDM, ¶ 54; BP, ¶ 32. [15/]  Both these damages are foreseeable and jurisdictionally significant harm suffered by PLAINTIFFS in the forum.  Brayton, supra, 606 F.3d at 1131. [16/]

It is not disruptive of jurisdiction in this Court that some of the injury has befallen MANOS in Nevada.  In Yahoo! Inc. v. La Ligue Contre Le Racisme, supra, 433 F.3d 1199, 1206-1207 (9th Cir. Cal. 2006), the Ninth Circuit eliminated what may have been an earlier requirement that the "brunt" of the harm must have been felt in the forum state:

> We take this opportunity to clarify our law and to state that the "brunt" of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.

---

[14/] "Intentional" here is that to perform an act, not subjective intent to accomplish a particular result.  Schwarzenegger, supra, 374 F.3d at 806.

[15/] These attorney's fees include those for proving that WESTON does not properly have the formula for the electrolyte so as to demonstrate there was no breach of warranty under the CONTRACT.  Even had PICOT and MANOS retained a non-California attorney, their fees would be coming out of a California "pocket" and constitute injury here.

[16/] As the Ninth Circuit held in Brayton: "... it was foreseeable that [plaintiff] would be harmed by infringement of its copyright, including harm to its business reputation and goodwill, and decreased business and profits. It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] was known to reside."  See, also Fiore v. Walden, 657 F.3d 838, 854 (9th Cir. Nev. 2011) ["The delay in returning the funds to [plaintiffs] in Las Vegas caused them foreseeable harm in Nevada."].

---

### 2.1.2.2     The Tort Claim Relates to WESTON'S Forum-related Activities

The Ninth Circuit determines whether the claim arises out of the forum-related activities under the "but for" test.  Menken v. Emm, supra, 503 F.3d 1050, 1058 (9th Cir.2007). PLAINTIFF'S would not have suffered injury "but for" WESTON'S forum-related acts.  PDM, ¶ 54; BP, ¶ 32.

### 2.1.2.3     Jurisdiction Over WESTON Is Reasonable

The exercise of jurisdiction must be reasonable.  However, as noted in Ziegler v. Indian River County, 64 F.3d 470, 476 (9th Cir. Cal. 1995), "Once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable." See, also, Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir. Cal. 1991).  Though this presumption may be rebutted, the burden is upon WESTON to present a compelling case that jurisdiction would be unreasonable.  To discharge this burden, WESTON must demonstrate that litigating here would be "so gravely difficult and inconvenient" that it puts him at "a severe disadvantage" in comparison to PLAINTIFFS.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  The Court considers seven "reasonableness" factors [See Bancroft, supra, 223 F.3d at 1088]:  (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

### 2.1.2.3.1     WESTON'S Purposeful Availment

This factor is like purposeful direction/availment in the determination whether jurisdiction exists [Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988)], and is given "no weight" if the defendant purposefully directed his activities to the forum [Corporate Inv. Bus. Brokers v. Melcher, 824 F.2d 786, 790 (9th Cir. 1987)].

### 2.1.2.3.2    WESTON'S Burden to Defend Here

The burden on WESTON to litigate in California is equal to that on PLAINTIFFS if forced to litigate in Michigan.  Hence, this factor favors WESTON because personal jurisdiction is primarily concerned with the defendant's burden.  <u>Ziegler v. Indian River County</u>, supra, 64 F.3d 470, 475 (9th Cir. Cal. 1995).

### 2.1.2.3.3    Conflicts: California v Michigan

As noted in <u>Decker Coal Co. v. Commonwealth Edison Co</u>., 805 F.2d 834, 841 (9th Cir. Mont. 1986), the importance of "state sovereignty is minimal in light of the Supreme Court's indication that the personal jurisdiction requirement is a function of the individual liberty interest protected by the due process clause rather than federalism concerns," (citing <u>Insurance Corporation of Ireland v. Compagnie Des Bauxites De Guinee</u>, 456 U.S. 694, 702-03 n.10, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982)).   Any difference between California's and Michigan's substantive law on the tort of intentional interference with contract will be resolved through choice of law rules, not jurisdictional ones.  That this Court applies Michigan or California law "should not complicate or distort the jurisdictional inquiry." <u>Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.</u>, supra, 784 F.2d 1392, 1402 (9th Cir. Cal. 1986).  Thus, this factor favors the exercise of jurisdiction.

### 2.1.2.3.4    California's Interest in the Dispute

California has a strong interest in protecting its residents who are tortiously injured, even from afar.  <u>Sinatra v. National Enquirer, Inc</u>., supra, 854 F.2d 1191, 1200.  This factor weighs in favor of exercising jurisdiction.

### 2.1.2.3.5    Efficient Resolution

The Court here considers the location of the evidence and witnesses.  <u>Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1133 (9th Cir. Cal. 2003).  Evidence here is located in a number of places:  Germany, Mexico, Australia, China, California

Nevada, Texas, Michigan, and Ohio.  However, the "efficiency" factor "is no longer weighed heavily given the modern advances in communication and transportation."  <u>Wolf Designs, Inc. v. DHR & Co.</u>, 322 F. Supp. 2d 1065, 1074 (N.D. Cal. 2004).  This factor is of no particular advantage to any party and, thus, is most likely neutral.

### 2.1.2.3.6     Plaintiff's Interest in Relief

Though the Ninth Circuit does not value this factor highly [See <u>Dole Food</u>, supra, 303 F.3d at 1116] it weighs in PLAINTIFFS' favor.  PICOT is a California resident and all of his injury was suffered here.  He and MANOS have a pre-existing and continuing relationship with counsel here, already familiar with the CONTRACT and already involved in attempting to resolve matters with HMR in the wake of WESTON'S tort.  <u>Fiore v. Walden</u>, supra, 657 F.3d 838, 857 [plaintiffs' "continuing relationship" with local counsel among factors that made the forum "convenient and effective" for them].

### 2.1.2.3.7     An Alternative Forum

Michigan – or Nevada – would be an alternative forum for resolution of the parties' dispute.  In view of three jurisdictional locations for suit, this factor is neutral.

In summary, WESTON has failed to present a compelling case that defending here would be "so gravely difficult and inconvenient" that it puts him at "a severe disadvantage" in comparison to PLAINTIFFS.  <u>Burger King Corp.</u>, supra, 471 U.S. at 478.  The factors are fairly evenly balanced, indicating that jurisdiction is reasonable and should be exercised. [17]

### 2.1.3  Jurisdiction for the Declaratory Relief Claim

### 2.1.3.1     Purposeful Availment or Direction

The declaratory relief claim seeks a determination on WESTON'S assertion of the ORAL AGREEMENT, a contract.  For contract related claims, jurisdiction is present if the

---

[17] <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, supra, 328 F.3d 1122, 1134 (9th Cir.2003) ("balance is essentially a wash").  See also <u>Menken</u>, 503 F.3d at 1061 (discussing cases).

1   defendant has purposefully availed himself of the benefit off doing business in the forum. "The

2   requirement of 'purposeful availment' is based on the presumption that it is reasonable to

3   require a defendant who conducts business and benefits from his activities in a state to be

4   subject to the burden of litigating in that state as well." Brainerd v. Governors of the Univ. of

5   Alberta, supra, 873 F.2d 1257, 1259 (9th Cir. 1989).

6         Purposeful availment requires that the defendant have engaged in affirmative conduct

7   which allows or promotes the transaction of business within the forum state. Sher v. Johnson,

8   911 F.2d 1357, 1362 (9th Cir. 1990) (citing Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191,

9   1195 (9th Cir. 1988)). The test is met if "the defendant has taken deliberate action within the

10   forum state or if he has created continuing obligations to forum residents." Ballard, supra, 65

11   F.3d at 1498. Here, WESTON has done both. [18]

12         WESTON engaged in deliberate action to help MANOS and PICOT solicit business in

13   California from Warkentin and ADP, both California residents. [19] WESTON'S actions, from

14   which he benefitted, amount to purposeful availment.

15         WESTON also created "continuing obligations" to PICOT, a forum resident. WESTON

16   admits in describing the respective duties under the ORAL AGREEMENT he urges, MANOS

17   and PICOT were to search for funding and attempt to market the Technology to a purchaser.

---

19   [18]   It is fair to view where WESTON performed the claimed ORAL AGREEMENT since evidence of performance of a contract in the forum

20   frequently qualifies as an invocation of the forum's benefits and protections. Schwarzenegger v. Fred Martin Motor Co., supra, at 801-802.

21   [19]   WESTON traveled to California twice, once for the Warkentin

22   demonstration and once for the one for ADP – staying here on each occasion for approximately a week – and once to Mexico to further advance

23   the Warkentin affair. WESTON requested and received both compensation and travel expenses from California residents for his service in and affecting

24   business here. And, he offered to work in California for the joint venture proposed with ADP. From Michigan, WESTON participated in ADP'S

25   "Skype" presentation reaching ADP'S prospect in China, which included ADP'S personnel from California and would have had an effect in California

26   had it borne fruit as hoped by the participants.

---

"... my role was ... to arrange for ... testing, assist in fundraising, and assist in marketing. [WESTON Dismissal Decl., para 13, emphasis added.]  Thus, WESTON admits "continuing obligations" to "assist" a forum resident.  [20/]  If we assume that the ORAL AGREEMENT was not formed, as MANOS and PICOT contend, the "economic reality" [Haisten, supra, 784 F.2d at 1398] of WESTON'S activities shows his continuing obligations to MANOS and PICOT and his extensive involvement with California in pursuit.  [21/]

### 2.1.3.2        The Declaratory Relief Claim Relates to Forum-related Activities

PLAINTIFF'S would not have suffered injury from WESTON'S assertion of the ORAL AGREEMENT "but for" WESTON'S forum-related acts, which included foreseeable effects here – from the mere claiming of the existence of the ORAL AGREEMENT, part performance of it in and payment for it from California, and improper efforts to enforce or gain advantage by use of the asserted ORAL AGREEMENT directed into California.

### 2.1.3.3        Jurisdiction Over WESTON Is Reasonable

Jurisdiction is presumptively reasonable in view of WESTON'S purposeful availment.

---

[20/]    Even if MANOS initially reached out to WESTON, WESTON still purposely availed himself of the forum when he created a continuing relationship and obligations with PICOT, a California resident.  See, Bcs & Assocs. Bus. Consulting Servs. v. Essentia Health, 2010 U.S. Dist. LEXIS 28423, 9-12 (D. Ariz. Mar. 24, 2010) ["Defendants' argument that they did not take a deliberate action because Plaintiff solicited them does not effect the determination of purposeful availment."].

[21/]    Some courts have applied the Calder "effects" test even though the claim arose from contract.  Hence, one who enters into an agreement which he knows will have an effect in the forum state purposely avails himself of the privilege of acting in the forum state.  See Calder v. Jones, supra, 465 U.S. at 789-90, 104 S. Ct. at 1487; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781, 104 S. Ct. 1473, 1481, 79 L. Ed. 2d 790 (1984).  This view has been applied in this Circuit.  See, e.g., Language Line Servs., Inc. v. Language Servs. Assoc., LLC, No. C 10-02605 JW, 2010 U.S. Dist. LEXIS 134160, 2010 WL 5115671, at *3 (N.D. Cal. Dec. 9, 2010) (using the "effects" test where a plaintiff brought both contract and tort claims because [*11] the focus of the plaintiff's complaint was on the defendant's tortious conduct).

---

1  <u>Ziegler v. Indian River County</u>, supra, at 476.   Again here, WESTON does not have a

2  compelling case that jurisdiction is unreasonable.

3                              2.1.3.3.1      WESTON'S Purposeful Availment

4  This factor is of "no weight" in view of WESTON'S purposeful availment.

5                              2.1.3.3.2      WESTON'S Burden to Defend Here

6  As it did with the tort claim, this factor favors WESTON.

7                              2.1.3.3.3      Conflicts: California v Michigan

8  As with the tort claim, this factor favors the exercise of jurisdiction.

9                              2.1.3.3.4      California's Interest in the Dispute

10  California has a strong interest in adjudicating claims based on the existence and/or

11  breach of a contract supposedly made with, inter alia, a California resident – and which, if

12  made, was partially performed here – by both sides – and touches California in a significant

13  way. [22/]  This element weighs in favor of exercising jurisdiction.

14                              2.1.3.3.5      Efficient Resolution

15  As it was under the tort analysis, this factor is neutral.

16                              2.1.3.3.6      Plaintiff's Interest in Relief

17  California is an effective forum for PLAINTIFFS to address all the claims.

18                              2.1.3.3.7      An Alternative Forum

19  Michigan or Nevada are alternative forums, which weighs in favor of jurisdiction.

20

21  [22/]     WESTON'S conduct in advancing the ORAL AGREEMENT included at
22  least two extortionate acts directed at PICOT in California.

23  California's strong policy of protecting its residents from such contract-
    related behavior finds expression in its recognition of a claim for civil
    extortion based on California Penal Code § 523 [extortion occurs
24  regardless whether the plaintiff paid any money] and § 524 [which prohibits
    "attempts, by means of any threat . . . to extort money or other property
25  from another"].  <u>TaiMed Biologics, Inc. v. Numoda Corp.</u>, 2011 U.S. Dist.
    LEXIS 48863, 15-17 (N.D. Cal. Apr. 28, 2011).
26

27

1    As with the tort claim, WESTON fails to present a compelling case that defending here

2  would be unreasonable.

3    2.1.3.4    Pendent Jurisdiction

4    Under pendent jurisdiction, if jurisdiction exists on one claim, jurisdiction over another

5  claim which arises out of a common nucleus of operative facts is proper. <u>Action Embroidery

6  Corp. v. Atlantic Embroidery Inc</u>., 368 F.3d 1174, 1180 (9th Cir. 2004). Here, the tort and

7  declaratory relief counts are inextricably intertwined. [23/]

8    2.2    The Venue Motion

9    As noted in <u>Skillnet Solutions, Inc. v. Entm't Publs, LLC</u>, 2012 U.S. Dist. LEXIS 28087

10  (N.D. Cal. Mar. 2, 2012):

11    Venue in federal court is governed by 28 U.S.C. § 1391. ... Following removal
      from state court, however, courts have held that Section 1391 does not apply.
12    ... This is because removal, if proper, automatically satisfies federal venue
      requirements. Under the removal statute, venue is proper if removal is to the
13    district in which the state action was pending and the federal court has
      jurisdiction. ... This is true regardless of whether venue was proper in the state
14    court to begin with. ... A defendant who properly removes to federal court
      therefore meets the venue requirements of § 1441, in effect canceling any
15    improper venue objection under Fed. R. Civ. P. 12(b)(3). ... [Footnotes
      omitted.]

16  Because WESTON removed this action from State Court, venue in this District is proper.

17

18

19

20

21

22  //

23

24    [23/]  <u>CE Distrib., LLC v. New Sensor Corp</u>., 380 F.3d 1107, 1113-1114 (9th
          Cir. Ariz. 2004), citing <u>Channell v. Citicorp Nat'l Svcs., Inc</u>., 89 F.3d 379,
25        385 (7th Cir. 1996) (noting that for purposes of pendent jurisdiction, only
          a "loose factual connection between the claims" is required.
26

27

28

3          CONCLUSION

PLAINTIFFS have established a prima facie case for specific personal jurisdiction. WESTON has not presented a "compelling case" that jurisdiction would be unreasonable. Venue is proper in this District.  Hence, WESTON'S motion to dismiss for lack of personal jurisdiction and for improper venue should both be denied.

DATED:          May 9, 2012                    _/S/_ THOMAS M. BOEHM

                                               _____
                                               THOMAS M. BOEHM
                                               Attorney for PLAINTIFFS, BERNARD PICOT
                                               and PAUL DAVID MANOS