THOMAS M. BOEHM [SBN 63888]
LAW OFFICE OF THOMAS M. BOEHM
2 North Santa Cruz Avenue, Suite 211
Los Gatos, CA 95030-5900

TELEPHONE:   408.998.8899
FACSIMILE:   408.998.4848
EMAIL:       BOEHMTM@GMAIL.COM

ATTORNEY FOR PLAINTIFFS,
BERNARD PICOT and PAUL DAVID MANOS

MTN TO DISMISS.OPPO.TMB.MAY 8 2010.wpd

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERNARD PICOT and PAUL DAVID MANOS,<br><br>Plaintiffs,<br><br>v.<br><br>DEAN D. WESTON, and DOES 1 through 15, inclusive,<br><br>Defendants.<br>_____ | CASE NO.  5:12-CV-01939 EJD<br><br>DECLARATION OF THOMAS M. BOEHM IN OPPOSITION TO MOTIONS TO DISMISS FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER<br><br>Hearing date:  August 10, 2012<br>Hearing time:  9:00 am<br>Dept:          Courtroom 4, 5th Floor<br>Judge:         Hon. Edward J. Davila |

I, THOMAS M. BOEHM, declare as follows:

1    I am an adult natural person, a resident of Santa Clara County, California, a licensed California attorney with my office in Los Gatos, and the attorney for

---

**PICOT v WESTON, 5:12-CV-01939 EJD**
DECLARATION OF THOMAS M. BOEHM
IN OPPOSITION TO MOTIONS TO DISMISS
FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . . . . . .    Page 1 of 3 pages.

PLAINTIFFS in this action.

2   I make this Declaration in opposition to the motions pending before this Court brought by DEAN WESTON ["WESTON"] to dismiss the action for lack of personal jurisdiction and venue and to transfer this case to the Eastern District of Michigan.

3   I have an ongoing attorney-client relationship with PLAINTIFFS and, in the course of it have acted as an attorney for PLAINTIFFS:

3.1   A few years ago in regard to matters entirely unrelated to the subject of this suit (and involving only plaintiff PICOT);

3.2   In June 2011 in regard to matters between PLAINTIFFS and ADP HOLDINGS, LTD., a California corporation based near Sacramento, which was represented by counsel from the Sacramento area;

3.3   During the period of August to December 2011 in regard to agreement/s with Hydrogen Master Rights, Ltd. ["HMR"] for the sale of the technology which is involved in the action;

3.4   Beginning in March 2012 (and ongoing) in regard to claims by HMR that PLAINTIFFS had breached warranties in an agreement between PLAINTIFFS and HMR from December 2011 based on actions taken by WESTON; and,

3.5   As attorney of record for PLAINTIFFS in investigating the facts supporting and filing the State Court action before it was removed to this Court.

4   On May 7, 2012, I received from David T. Movius, attorney for HMR, a slightly redacted copy of the Declaration of Dean Weston dated March 14, 2012, which WESTON had provided to HMR. A true copy of that Declaration, as redacted by HMR, is attached hereto as EXHIBIT "A."

5   The purpose of the redaction is to protect HMR'S proprietary interest in the electrolyte described in the original and un-redacted version of EXHIBIT "A."

6   I am informed and believe and thereupon state that WESTON presently has an un-redacted copy of EXHIBIT "A."

I declare under penalty of perjury under the laws of the United States that the foregoing is true of my personal knowledge, that if called as a witness I could and would testify competently thereto, and that this declaration was executed at Los Gatos, California on May 8, 2012.

_____
THOMAS M BOEHM

4. On May 7, 2012, I received from David T. Movius, attorney for HMR, a slightly redacted copy of the Declaration of Dean Weston dated March 14, 2012, which WESTON had provided to HMR. A true copy of that Declaration, as redacted by HMR, is attached hereto as EXHIBIT "A."

5. The purpose of the redaction is to protect HMR'S proprietary interest in the electrolyte described in the original and un-redacted version of EXHIBIT "A."

6. I am informed and believe and thereupon state that WESTON presently has an un-redacted copy of EXHIBIT "A."

I declare under penalty of perjury under the laws of the United States that the foregoing is true of my personal knowledge, that if called as a witness I could and would testify competently thereto, and that this declaration was executed at Los Gatos, California on May 8, 2012.

/s/ THOMAS M. BOEHM

---

PICOT v WESTON, 5:12-CV-01939 EJD
DECLARATION OF THOMAS M. BOEHM
IN OPPOSITION TO MOTIONS TO DISMISS
FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . . . . . . Page 3 of 3 pages.

## PICOT v WESTON, 5:12-CV-01939 EJD

# EXHIBIT "A"

to
DECLARATION OF THOMAS M. BOEHM
IN OPPOSITION TO MOTIONS
TO DISMISS FOR
LACK OF JURISDICTION AND VENUE
AND TO TRANSFER

## Declaration of Dean Weston

I, Dean Weston, am a competent adult with personal knowledge of following facts:

1. In or around March 2009 I was asked by David Manos and Bernard Picot for my help in designing, building, testing and investing in a new form of hydrogen fuel cell technology they had heard of being marketed by Cary Hilton of Texas.

2. Manos and Picot indicated that they had formed a partnership to either buy the technology from Hilton or to build their own hydrogen fuel cell if they were unable to come to terms with Hilton. Manos and Picot asked me to join their partnership and invest in the hydrogen business in exchange for a 33% ownership share and 33% of the revenues. Manos referred to us, Manos, Picot and Weston as the 3 amigos and no matter what happens it is just us and no one else in the partnership. It was Manos' goal to give up no stock to outsides other than the three of us and get someone else to assume all the liability for the hydrogen cell through a sale of the technology. We came too agreed upon numbers as to how much is enough for Manos and I and at that time it was $10,000,000.00 net each.

3. Over the course of twenty four months I invested and had Manos accrue as promised over $800,000.00 in expenses representing my life's savings and that would be reimburse up and above my 33% share in the company.

4. **Ralph Keller** and I dedicated our full-time efforts to designing and testing hydrogen fuel cells for cars and trucks, in several instances putting our lives in jeopardy under the direction of Manos. Our hydrogen breakthrough centered around a particular electrolyte comprised of ████████████████████

that Manos disclosed to us in or around August 2009. We called the electrolyte ███ internally. For many months, Ralph and I mixed the electrolyte using the formula Manos disclosed to us to obtain different "amp" fluids to test on various hydrogen fuel cell designs.

5. In an effort to find an engineer to help us improve the fuel cell technology, Manos met with Dr. Pravansu Mohanty, an expert in plasma coatings, mechanical engineering, and fuel cell technologies. Dr. Mohanty agreed to work with us to improve and verify our fuel cell and electrolyte formula.

6. Starting in the summer of 2011, Manos began avoiding my phone calls and emails asking about the status of the hydrogen fuel cell development. When I finally was able to speak with Manos, he told tell me "nothing was happening and the project was probably dead" and he would let me know if and when they received any money relating to the hydrogen fuel cell technology.

7. In or around October 2011, Manos told me that he had agreed to sell the rights to the hydrogen fuel cell and the electrolyte chemistry for millions of dollars based on mile stones achieved by the buyers. The pay off for us would possible come somewhere down the line. Manos told me that he would get me all the details and keep me informed. I tried to contact Manos and Picot for months after hearing this news, but was unable to reach them. As a result, I retained legal counsel and demanded repayment of my investment and my promised 33% of the revenues.

8. After speaking to Manos in December 2011, and not getting any answers I contacted Dr Mohanty and met with him on Friday, December 30, 2011 to ask him if he knew what was going on with Manos and Picot and the sale of the hydrogen technology. Dr. Mohanty told me that he was uncomfortable with the whole situation and that I should speak to Manos and Picot and get the details from them.

9. While with Dr. Mohanty, I disclosed to him that I knew the electrolyte formula. In response, Dr. Mohanty asked me to tell him the formula, which I did. I told Dr. Mohanty that it was now obvious to me that I had been cheated by Manos and Picot and that I intended to take whatever legal action is available to me to receive my share of the hydrogen fuel cell and electrolyte technology revenues.

10. In early January 2012, after sending him an email demanding payment of my 33% share, Manos told me he had received some "expense money, nothing big" from the buyers of the hydrogen technology. He told me he had spoken to Picot and Picot told Manos he (Manos) would have to pay me my 33% out of his (Manos') portion. Manos went on to say that he and Picot are not getting along and Manos told me he now realized that "Picot was not the guy he thought he was".

11. To this day, Manos and Picot have not paid me my 33% share of the revenue for the hydrogen fuel cell technology that I am owed **[or reimbursed me for most of the expenses I incurred working with them.]**.

(Signature Page to Follow)

FURTHER DECLARANT SAYETH NAUGHT.

I declare under penalty of perjury that the foregoing is true and correct

Date: 3-14-12

*[signature]*
Dean Weston