1   THOMAS M. BOEHM [SBN 63888]
    LAW OFFICE OF THOMAS M. BOEHM
2   2 North Santa Cruz Avenue, Suite 211
    Los Gatos, CA 95030-5900
3
    TELEPHONE:        408.998.8899
4   FACSIMILE:        408.998.4848
    EMAIL:            BOEHMTM@GMAIL.COM
5
    ATTORNEY FOR PLAINTIFFS,
6   BERNARD PICOT and PAUL DAVID MANOS
    MTN TO DISMISS.OPPO.BP.MAY 8 2010.FINAL.wpd
7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11
    BERNARD PICOT and          )     CASE NO.  5:12-CV-01939 EJD
12  PAUL DAVID MANOS,          )
                               )
13      Plaintiffs,            )
                               )
14  v.                         )     DECLARATION OF
                               )     PAUL DAVID MANOS
15  DEAN D. WESTON, and DOES 1 )     IN OPPOSITION TO MOTIONS TO
    through 15, inclusive,     )     DISMISS FOR LACK OF JURISDICTION
16                             )     AND VENUE AND TO TRANSFER
        Defendants.           )
17  _____ )    Hearing date:   August 10, 2012
                               )     Hearing time:   9:00 am
18                                   Dept:           Courtroom 4, 5th Floor
                                     Judge:          Hon. Edward J. Davila
19

20

21
        I, BERNARD PICOT, declare as follows:
22

23
    I       I am an adult natural person and a resident of the Santa Clara County,
24
    California.
25

26
27  DECLARATION OF BERNARD PICOT
    IN OPPOSITION TO MOTIONS TO DISMISS
28  FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . . . . Page 1 of 12 pages.

2    I make this Declaration in opposition to the motions pending before this Court brought by DEAN WESTON ["WESTON"] to dismiss the action for lack of personal jurisdiction and venue and to transfer this case to the Eastern District of Michigan.

3    In approximately March 2009, I contacted PAUL DAVID MANOS ["MANOS"] and asked him to evaluate a hydrogen based technology I had learned of then being promoted by Carey Hilton in Texas [the "HILTON TECHNOLOGY"].  I asked MANOS to assess and, if suitable, further develop the HILTON TECHNOLOGY while, from California, I would primarily tend to the business issues.  MANOS and I agreed each of us would enjoy an equal ownership interest if we were successful in this effort.

4    From the time I contacted MANOS through today, I have centered my activities with regard to this matter in and from California, though I have traveled to Michigan on occasion.

5    I knew that MANOS had asked WESTON to go to Texas to inspect the HILTON TECHNOLOGY but that, thereafter, MANOS was working on his own evaluation in Nevada.

6    After WESTON'S trip to Texas to observe the HILTON TECHNOLOGY, MANOS informed me that WESTON was engaged in an extensive effort to validate the HILTON TECHNOLOGY for the purpose of obtaining a license for it for himself and his business associate, Frank Joseph, under the name of an

1   entity called The Right Angle.  On July 19, 2009 I sent a proposed agreement

2   to WESTON and Joseph, numbering in excess of twenty [20] pages, in order to

3   define the relationships regarding the HILTON TECHNOLOGY between The

4   Right Angle and Carey Hilton, but WESTON never signed it.  I prepared this

5   agreement for signature by "The Right Angle, Dean Weston President."

6   WESTON never objected to me about this designation, which I understood to

7   be correct.

8

9   7    I was never in Michigan during 2009, though I did go there in 2010 for my

10   project with MANOS.  On those few occasions when I was in Michigan in

11   2010:

12         7.1        I met WESTON only in superficial circumstances of brief duration;

13                    and,

14         7.2        I was never alone with him; and,

15         7.3        I observed WESTON assisting MANOS under MANOS' direction

16                    in plainly unimportant tasks.

17

18   8    In about November 2009, DBHS LLC was created in Nevada to act as agent for

19   me and MANOS concerning the hoped for success of our venture.  MANOS,

20   Julia Blair, a Nevada resident, and I were the only three members of DBHS at

21   all times.   Blair held no ownership or equity interest, but tended to the

22   administrative aspects.  DBHS was dissolved in October 2011.

23

24   9    In about November 2009, MANOS told me that WESTON and Frank Joseph,

25   through The Right Angle, wanted to purchase a large number of units and

26

27   PICOT v WESTON, 5:12-CV-01939 EJD
DECLARATION OF BERNARD PICOT
IN OPPOSITION TO MOTIONS TO DISMISS

28   FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . . . .  Page 3 of 12 pages.

corresponding electrolyte fluid once MANOS had solved the remaining issues he was facing.  Accordingly, I created an invoice in the name of DBHS and sent it to WESTON in early December 2009.  A copy of the invoice is attached hereto as EXHIBIT "A."  WESTON never objected to me about this invoice, which I understood to have been correct but rendered infeasible once WESTON'S partner in The Right Angle, Frank Joseph, was convicted of Federal crimes in December 2009.

10    At my and MANOS' request and at our expense, WESTON traveled to Southern California in about January 2010, where he stayed for approximately a week, to assist MANOS in a demonstration to Peter Warkentin, who lived in that area.  Warkentin had been procured by me from my activities in California as a potential purchaser or licensee.

11    The Warkentin demonstration was also attended by MANOS, me and:

11.1    Russ Reeder, a business colleague of Warkentin's and another resident of California; and,

11.2    Peter Mueller, a California resident, who worked for Brabus USA of Irvine, California, and independently tested the prototype at the invitation of Messrs. Warkentin and Reeder as part of the demonstration.

12    Warkentin was favorably impressed by the demonstration in Southern California and asked that another demonstration be conducted in Mexico for a prospect of his there.   Warkentin agreed to pay for the travel expenses for the

1   demonstration in Mexico, so MANOS and I consented and MANOS asked

2   WESTON to travel to Mexico to conduct the requested demonstration there

3   pursuant to Warkentin's request.  WESTON did so and was paid by or at the

4   direction of Warkentin.

5

6   13   MANOS asked me to provide him with a non-disclosure agreement [the

7   "NDA"] to be signed by WESTON, which I did under the name of DBHS.

8

9   14   As a result of my ongoing efforts in and from California, I procured ADP

10   HOLDINGS, LTD., a California corporation based near Sacramento ["ADP"].

11   In May 2010, ADP proposed a joint venture which would obtain a license to

12   exploit the hydrogen technology and wanted a demonstration.

13

14   15   In June 2010, again at MANOS' and my request, WESTON traveled to the

15   Sacramento, California area to install prototypes on ADP'S vehicles for the

16   requested demonstration.

17

18   16   While WESTON was assisting MANOS in the demonstration to ADP, ADP

19   suggested to me and MANOS that the joint venture it had proposed should

20   create a research, development, and marketing facility for the project in a

21   building it had already located near Sacramento.  MANOS and I each expressed

22   an interest in doing so.

23

24   17   When he heard this discussion, WESTON told the principals of ADP that he

25   wanted to work at that California location for the joint venture.

26

PICOT v WESTON, 5:12-CV-01939 EJD

27   DECLARATION OF BERNARD PICOT
IN OPPOSITION TO MOTIONS TO DISMISS
28   FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . . . . . Page 5 of 12 pages.

18    WESTON'S travel expenses for his trips to California for the Warkentin and ADP presentations were paid by or at the direction of me and/or MANOS.

19    From June 2010 through July 2011, WESTON was paid at least $42,500 by or at the direction of MANOS and me in exchange for his work and any related expenses he may have incurred, exclusive of travel expenses.   Knowing of WESTON'S request for money, I personally mail a check for $10,000 from California in June 2010 to pay for his time in the ADP demonstration.

20    In the Fall of 2010, WESTON participated from Michigan in a "Skype" presentation of a prototype to a prospect in China arranged by or for the benefit of ADP and originating from California, where Dan Heindrichs, a principal of ADP, was located.

21    WESTON was aware that ADP was advancing money based on its May 2010 commitment, but never claimed to me that he was entitled to any portion of that money.

22    Because ADP did not complete its full funding commitment, Dan Heindrichs and Darrell Smith, both residents of California and both principals of ADP, met in San Jose, California on January 19, 2011 with me, MANOS and Tracy Coats and orally terminated ADP'S relationship.

23    By check dated February 23, 2011, from California I caused DBHS to pay $10,000 to ADP relating to the termination.

24    In May and June 2011, Thomas M. Boehm, a California attorney, represented MANOS and me in certain issues that arose then between us and ADP.  Mr. Boehm's fees were paid from California.

25    In April 2011, IBKE, an entity controlled by Tracy Coats and Carl Le Souef, a resident of Australia, obtained an expanded license agreement for the cells and fluid MANOS had developed in his venture with me, enlarging the territory to the entire world.

26    WESTON knew that payments were being made under the IBKE license, but never claimed to me that he was entitled to any portion of that money.

27    I was also represented by Mr. Boehm in regard to the sale of the cells and fluid to an entity to be formed and controlled by Tracy Coats and Carl Le Souef. Again, Mr. Boehm's fees for this service were paid from California.

28    In furtherance of the talks with Coats and Le Souef, in December 2011 I attended meetings with MANOS, Coats and Le Souef in Los Angeles.  Impasses in the discussions were mediated there by Joseph Dunn, a resident of Los Gatos, California.  MANOS, I and the principals of HMR signed the final version of the sales agreement in Los Angeles, California and it became effective December 12, 2011 [the "CONTRACT"].

29    At all times when I was in WESTON'S presence in Michigan or California:

      29.1      I believed WESTON was acting for his own advantage in working

1        with MANOS with the hope of interesting one of WESTON'S

2        contacts in the technology;

3    29.2    WESTON was subject to the direction of MANOS;

4    29.3    WESTON never said or did anything to make me think he was not

5        acting for his own benefit as described or that he expected a share

6        of the profits from the project MANOS and I were engaged on.

7

8    30    I have never told WESTON that:

9    30.1    He was entitled to or would receive an ownership interest in the

10        hydrogen project MANOS and I were engaged in under any

11        circumstances;

12    30.2    He was entitled to or would receive a share in or portion of the

13        profits from the sale or license of the hydrogen project MANOS

14        and I were engaged in; or,

15    30.3    He was entitled to or would receive $20,000 per month for his

16        efforts in assisting MANOS or for such expenses as he might incur

17        in regard thereto.

18

19    31    On March 20, 2012, I received an email indicating that it originated from

20        William Dobreff, who identified himself as a Michigan attorney for WESTON.

21        A copy of this email is attached as EXHIBIT "C" to the accompanying

22        DECLARATION OF PAUL DAVID MANOS IN OPPOSITION TO MOTIONS

23        TO DISMISS FOR LACK OF JURISDICTION AND VENUE AND TO

24        TRANSFER.

25    //

26    _____

27    **DECLARATION OF BERNARD PICOT**
    **IN OPPOSITION TO MOTIONS TO DISMISS**
28    **FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER.** . . . . . . . . . . . . . . . . . . . . **Page 8 of 12 pages.**

32    As a direct result of the actions by WESTON in asserting the oral agreement he insists I entered into with him and by his actions in asserting to HMR that MANOS disclosed the formula for the electrolyte to him in August 2009:

    32.1    HMR has stopped payments under the CONTRACT, which were benefitting me in California; and,

    32.2    I have incurred and paid attorney's fees in California to seek resolution of the matter with HMR and disprove that WESTON obtained the formula as he maintains or is entitled to a share of the payments under the CONTRACT otherwise coming to me here.

33    In addition to the parties to this action and those listed in the accompanying DECLARATION OF PAUL DAVID MANOS IN OPPOSITION TO MOTIONS TO DISMISS FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER, the following individuals are expected to provide evidence as indicated below:

| INDIVIDUAL | RESIDENCE | EXPECTED EVIDENCE |
|---|---|---|
| 33.1 Conchita Franco-Serri | California | Discussions with me in California regarding the possibility of a license for the technology in Latin America. |
| 33.2 Bill Black | California | Discussions with me in California regarding the possibility of an early stage investment in the technology. |
| 33.3 Stephanie Wedge | California | Discussions with me in California regarding the possibility of an early stage investment in the technology. |

| | | | | |
|---|---|---|---|---|
| 1 | 33.4 | Nathan Cocozza | California | Discussions with me in California regarding the possibility of a vertical license for California. |
| 4 | 33.5 | Dino Peccaro | California | Discussions with me in California regarding the possibility of use of the technology by PG&E. |
| 7 | 33.6 | Justin Garcia | California | Discussions with me in California regarding the introductions to others to advance the project. |
| 10 | 33.7 | Nick Saifan | California | Discussions with me in California regarding the possibility of investing in and promoting the technology in the middle east and to the US government. |
| 15 | 33.8 | Russ Reeder | California | Oral and documentary concerning: Discussions with me, in part in California, regarding the possibility of investing in and promoting the technology in the European countries. |
| 21 | 33.9 | Carey Hilton | Texas | Discussions with me regarding the possibility of investment in or licenses for the HILTON TECHNOLOGY and observations on WESTON'S role in Texas and, later, |

**DECLARATION OF BERNARD PICOT**
**IN OPPOSITION TO MOTIONS TO DISMISS**
**FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . . . . Page 10 of 12 pages.**

1    at the Roush testing paid for by
2    WESTON and/or Frank Joseph.

3    33.10  Tracy Coats    Ohio        Oral and documentary concerning:
4                                      Roles of PICOT and MANOS in
5                                      regard to developing, promoting,
6                                      licensing, and selling the technology;
7                                      interaction   with   WESTON
8                                      concerning claims that MANOS
9                                      disclosed the formula for the
10                                     electrolyte to WESTON; claims of
11                                     breach of warranty by PICOT and
12                                     MANOS under the contract with
13                                     HMR.

14   33.11  Carl Le Souef  Australia   Oral and documentary concerning:
15                                      Same as for Coats.

16   33.12  Rodney Adler   Australia   Oral and documentary concerning:
17                                      His role in collaborating with Le
18                                      Souef in funding license agreement.

19
20
21
22
23
24
25   //
26

27   **PICOT v WESTON, 5:12-CV-01939 EJD**
     **DECLARATION OF BERNARD PICOT**
     **IN OPPOSITION TO MOTIONS TO DISMISS**
28   **FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER.** . . . . . . . . . . . . . . . . . . . **Page 11 of 12 pages.**

1    33.13  Gary Nicholson        China                Discussions  with  me  regarding  the

2                                                       ADP and IBKE.

3

4        I declare under penalty of perjury under the laws of the United States that the foregoing

5    is true of my personal knowledge, that if called as a witness I could and would testify

6    competently thereto, and that this declaration was executed at San Jose, California on May

7    8, 2012.

8

9

10

11

12                         _____
                           BERNARD PICOT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   DECLARATION OF BERNARD PICOT
     IN OPPOSITION TO MOTIONS TO DISMISS

28   FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. . . . . . . . . . . . . . . . . .  Page 12 of 12 pages.

| | | | |
|---|---|---|---|
| 1 | 33.13   Gary Nicholson | China | Discussions with me regarding the |
| 2 | | | ADP and IBKE. |

I declare under penalty of perjury under the laws of the United States that the foregoing is true of my personal knowledge, that if called as a witness I could and would testify competently thereto, and that this declaration was executed at San Jose, California on May 8, 2012.

BERNARD PICOT

DECLARATION OF BERNARD PICOT
IN OPPOSITION TO MOTIONS TO DISMISS
FOR LACK OF JURISDICTION AND VENUE AND TO TRANSFER. .................... Page 12 of 12 pages.

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "A"

**to**
**DECLARATION OF BERNARD PICOT**
**IN OPPOSITION TO MOTIONS**
**TO DISMISS FOR**
**LACK OF JURISDICTION AND VENUE**
**AND TO TRANSFER**



**David Manos <dmanos55@gmail.com>**

## invoice against purchase order
1 message

**Bernard Picot** <bpicot@suntco.com>                                          Tue, Dec 1, 2009 at 3:22 PM
Reply-To: bpicot@suntco.com
To: Dean Weston <deandavidweston@yahoo.com>
Cc: David Manos <dmanos55@gmail.com>, bpicot@suntco.com

Dean,

Please find the invoice related to your verbal purchase order

I would need your business address to complete it

Let me know if this agreeable to you

Best,


**Bernard Picot**

President & Founder

SUNTCO

3940 Valley Avenue

Pleasanton, CA 94566

925 494 9100 fax

bpicot@suntco.com

www.suntco.com

408.607.5600 Cell

*Excellence is the result of caring more than others think is wise, risking more than others think is safe,*
*dreaming more than others think is practical, and expecting more than others think is possible....*



RIGHT ANGLE MATERIAL INVOICE - DECEMBER 1ST 2009.docx
26K



Invoice # 0000010014/ December 1, 2009

**DBHS CORPORATION**
PO BOX 2736
STATELINE, NV 89449

| Phone: (1) 408 607 5600 |
| Fax: (1) 925 484 9100 |

To:                                          Ship to (if different address):
**THE RIGHT ANGLE**
Dean Weston
[Customer
[Customer

| Line Item | Description | List Price | Transfer Price | Qty | Amount |
|-----------|-------------|-----------|----------------|-----|--------|
| 1 | HYDROSTEIN X2TE8XL | **$5,000.00** | $2,750.00 | 2,000 | **$5,500,000.00** |
| 2 | HYDROSTEIN FLUID | **$39.95** | $20.00 | 100,000 | **$2,000,000.00** |
|   |  |  |  |  |  |
|   |  |  |  |  |  |
|   |  |  |  |  |  |
|   |  |  |  |  |  |
|   |  |  |  |  |  |

|  | | Subtotal | $7,500,000.00 |
|--|--|----------|---------------|
|  | | Tax | $000.00 |
|  | | Total Due | $7,500,000.00 |

1. Make all checks payable to: **DBHS LLC**
2. Upfront payment in full is required for DBHS to initiate the manufacturing process
3. First delivery of 200 units will occur within 90 days upon clearing of the check
4. 400 units will be then shipped every months until completion

THANK YOU FOR YOUR BUSINESS!