THOMAS M. BOEHM [SBN 63888]
LAW OFFICE OF THOMAS M. BOEHM
2 North Santa Cruz Avenue, Suite 211
Los Gatos, CA 95030-5900

TELEPHONE:    408.998.8899
FACSIMILE:    408.998.4848
EMAIL:        BOEHMTM@GMAIL.COM

ATTORNEY FOR PLAINTIFFS,
BERNARD PICOT and PAUL DAVID MANOS

EX PARTE.DEFER RULE 26.OPPO.BRF.wpd

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERNARD PICOT and PAUL DAVID MANOS,<br><br>Plaintiffs,<br><br>v.<br><br>DEAN D. WESTON, and DOES 1 through 15, inclusive,<br><br>Defendants. | CASE NO.  5:12-CV-01939 EJD<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TO EX PARTE APPLICATION TO DEFER RULE 26 DISCLOSURES<br><br>Hearing date:  None [Ex Parte]<br>Hearing time:  None<br>Dept:          Courtroom 4, 5th Floor<br>Judge:         Hon. Edward J. Davila<br><br>Acton filed:   March 23, 2012<br>Trial date:    None |

I   INTRODUCTION

By ex parte application, DEFENDANT seeks an order delaying the parties' initial disclosures until after determination of his pending motions to dismiss (for lack of jurisdiction and venue) and to transfer. But, the application should be denied because: [1] DEFENDANT has invoked an improper procedure; [2] DEFENDANT has waited too long to make the

---

application while agreeing to and himself seeking advantage from the initial disclosures; [3] DEFENDANT fails to show good cause; and, [4] PLAINTIFFS would be prejudiced by delay.

2  ARGUMENT

2.1  Procedural Impropriety

PLAINTIFFS object to WESTON'S use of Civil Local Rule 7-11 to obtain an enlargement of the Rule 26 hold on discovery. WESTON should have used Civil Local Rule 6-3, which requires a supporting declaration setting forth "the substantial harm or prejudice that would occur if the Court did not change the time" [Civil Local Rule 6-3(a)(3)]. [1/]

2.2  Unjustified Delay

WESTON chose this Court over the Santa Clara County Superior Court, where PLAINTIFFS filed it on March 23, 2012. Having done so, WESTON has enjoyed the Rule 26 hold on discovery – and has known of the pending initial disclosure deadline since April 18, 2012 [Dkt 2. Order Setting Initial CMC and ADR Deadlines]. [2/] WESTON waited 2 months before seeking to delay those disclosures while he first sought to avail himself of the impending initial disclosures and agreed to a date for the initial disclosure conference, only to backtrack shortly thereafter. [SEE: Accompanying Decl. Of Boehm.]

The availment arose as follows: WESTON admits he signed a Non-disclosure Agreement [the "NDA"] in February 2010. [Dkt 23-1, ¶ 5] The NDA covers the information WESTON claims to have learned from MANOS – and which he disclosed to HMR, the buyer under the

---

[1/]  Had WESTON met the substantive requirements of Civil Local Rule 6-3, the Court could consider the application despite its incorrect grounding on Civil Local Rule 7-11. Ho v. Ernst & Young LLP, 2007 U.S. Dist. LEXIS 54034 (N.D. Cal. July 17, 2007). But, he has not and, as discussed below, that failure reveals a lack of "good cause."

[2/]  Had the action remained in State Court, PLAINTIFFS could have initiated discovery after the elapse of 20 days from the March 23, 2012 service of the Summons and Complaint on WESTON. See, for example, CCP § 2025.210(b) [depositions, which can be coupled with document requests].

---

1  CONTRACT. [3/]  On April 9, 2012, PLAINTIFFS' attorney wrote to WESTON requesting

2  compliance with the NDA.  WESTON ignored the request.  In a telephone conversation on

3  April 20, 2012, WESTON'S attorney stated that he would respond to the April 9th requests.

4  On June 4, 2012, PLAINTIFFS inquired when the response to the April 9th letter would come.

5  On June 5, 2012 counsel advised that he believed PLAINTIFFS lacked standing under the

6  NDA and continued [SEE: Accompanying Decl. Of Boehm, Ex. "B"]:

> Please provide all of the contract documentation between your clients and Hydrogen Master Rights, Ltd. so that I can determine whether your request is on behalf of parties who still have an interest in the agreement. **These documents will have to be disclosed in the initial disclosures required next month under Rule 26(a)(1) in any event, as your clients are making the claim that Mr. Weston interfered with the contract between them and Hydrogen Master Rights, Ltd.** [Emphasis added.] . . . . . [4/]

Contrary to these earlier actions, WESTON now seeks to delay the initial disclosures.

    2.3    No Good Cause

Though WESTON acknowledges that FRCivP, Rule 6(b) requires that he demonstrate "good cause" [Dkt 27, page 2, lines 9-10] – as does Civil Local Rule 6-3(a)(3) – he fails to provide any.  He offers merely a contention in his brief that compliance with the initial disclosures will be "invasive" if it comes before determination of his pending motions [Dkt 27,

---

[3/]  The NDA [SEE: Accompanying Decl. Of Boehm, Attachment to letter identified there as Ex. "A"] called for application of Nevada law and venue and provided, inter alia, that:

~ "[WESTON] will notify [DBHS] in writing immediately upon the occurrence of any such unauthorized release or other breach of which it is aware" [¶ 7].

~ "Immediately upon ... a request by [DBHS] at any time ... [WESTON] will turn over to [DBHS] all Proprietary Information of [DBHS] and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof ..." [¶ 3].

[4/]  On June 7, 2012 PLAINTIFFS sent a response [SEE: Accompanying Decl. Of Boehm, Ex. "D"].  But, WESTON has still failed to reply to the April 9th requests, thus prolonging PLAINTIFFS' inability to resolve matters with HMR and increasing their damages.

1  page 1, line 24-page 2, line 2].

2  But, whether or why this contention is correct is not established. Indeed, irrespective of
3  the outcome of WESTON'S motions, the dispute between the parties will be litigated – here,
4  in Nevada, or in Michigan – and the initial disclosures will be useable in any of these venues.

5    2.4    Prejudice

6  WESTON points to no harm to him from proceeding with the initial disclosures, which will
7  be "invasive" whenever they occur. And, though WESTON does not seem eager to get to
8  the merits of this case – which is curious since, if he were correct about the ORAL
9  AGREEMENT, doing so would hold financial gains for him – PLAINTIFFS are, since they are
10 being harmed by delay. As shown by the opposition to the pending motions [Dkt 15 and its
11 Ex. "A"], WESTON gave HMR his Declaration stating:

> [¶ 1] In or around March 2009 ... [¶ 2] Manos and Picot asked me to join their partnership and invest in the hydrogen business in exchange for a 33% ownership share and 33% of the revenues. ... [¶ 3] Over the course of twenty four months I invested and had Manos accrue as promised over $800,000 in expenses representing my life's savings and that would be reimburse [sic] up and above my 33% share in the company. ... [¶ 4] Our hydrogen breakthrough centered around a particular electrolyte comprised of [REDACTED] that Manos disclosed ... in or around August 2009. ... [¶ 11] To this day [March 14, 2012], Manos and Picot have not paid me my 33% share of the revenue ... **[or reimbursed me for most of the expenses I incurred working with them.]** [Emphasis in original]

HMR promptly asserted PLAINTIFFS had breached warranties in the CONTRACT concerning disclosure and ownership of the technology. PLAINTIFFS seek the initial disclosures to establish – as soon as reasonably practical – that the warranties were not breached. In this way, they would be able to mitigate damages from WESTON'S actions, another aspect that should be of interest to WESTON.

WESTON has already identified percipient witnesses in support of his transfer motion. [Dkt 10-1.] Thus, he only needs now to disclose documentary materials, including, inter alia, those relating to:

~ The supposed creation and terms of the ORAL AGREEMENT, including his

communications with PLAINTIFFS and others regarding it;

~ Whether he developed the technology;

~ Whether he incurred $800,000 in "expenses;" and,

~ His justification, if any, for his admitted interference with the CONTRACT. [5/]

3  CONCLUSION

WESTON'S application should be denied.

DATED:  June 24, 2012          /S/ THOMAS M. BOEHM
_____
THOMAS M. BOEHM
Attorney for PLAINTIFFS, BERNARD PICOT and PAUL DAVID MANOS

---

[5/]  Prompt initial disclosures are especially warranted in this action since serious contradictions have already arisen in WESTON'S evidence. For example, inconsistencies exist as to whether:

~ <u>PICOT entered into the ORAL AGREEMENT in Michigan in 2009</u>

WESTON has abandoned his own initial testimony after reviewing "some documents" [Dkt 23-1, ¶ 6].

~ <u>WESTON developed the electrolyte</u>

WESTON has signed conflicting declarations [Dkt 10-1, ¶ 8 ("I, Dean Weston, developed the Technology" defined by WESTON at Dkt 10-1, ¶ 3 to include the electrolyte) versus Dkt 15, ¶ 4, Ex. "A" at its ¶ 4 ("Manos disclosed" the electrolyte to WESTON)].

~ <u>WESTON accrued $800,000 in expenses</u>

On September 16, 2010 WESTON sent an email to MANOS containing a list of $89,000 of expenses, saying "**this takes care of everything to date as far as DBHS and the old DLB issues**." But, as expressly conceded in the email, only $12,000 of the expenses were related to the hydrogen technology; the remaining $77,000 concerned "DLB," an unrelated, prior matter [accompanying Decl. Of MANOS, ¶¶ 2-3 and its Ex. "A"].

---