1  THOMAS M. BOEHM [SBN 63888]
   LAW OFFICE OF THOMAS M. BOEHM
2  2 North Santa Cruz Avenue, Suite 211
   Los Gatos, CA 95030-5900
3
   TELEPHONE:        408.998.8899
4  FACSIMILE:        408.998.4848
   EMAIL:            BOEHMTM@GMAIL.COM
5
   ATTORNEY FOR PLAINTIFFS,
6  BERNARD PICOT and PAUL DAVID MANOS
   EX PARTE.DEFER RULE 26.OPPO.TMB.wpd
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11
   BERNARD PICOT and           )      CASE NO.  5:12-CV-01939 EJD
12 PAUL DAVID MANOS,           )
                               )
13     Plaintiffs,             )
                               )
14 v.                          )      DECLARATION OF
                               )      THOMAS M. BOEHM
15 DEAN D. WESTON, and DOES 1  )      IN OPPOSITION TO EX PARTE
   through 15, inclusive,      )      TO DEFER RULE 26 DISCLOSURES
16                             )
       Defendants.            )
17 _____ )      Hearing date:    None [Ex parte]
                               )      Hearing time:    None
18                                    Dept:            Courtroom 4, 5th Floor
                                      Judge:           Hon. Edward J. Davila
19
                                      Acton filed:     March 23, 2012
20                                    Trial date:      None

21

22     I, THOMAS M. BOEHM, declare as follows:

23

24  1      I am an adult natural person, a licensed California attorney, and the attorney for

25         PLAINTIFFS in this action.

26

27 _____
                    PICOT v WESTON, 5:12-CV-01939 EJD
   DECLARATION OF THOMAS M. BOEHM
28 IN OPPOSITION TO EX PARTE APPLICATION TO DEFER RULE 26 DISCLOSURES...... Page 1 of 4 pages.

2    I make this Declaration in opposition to the Ex Parte Application by DEAN D. WESTON ["WESTON"] to Defer Rule 26 Disclosures.

3    On April 9, 2012, I wrote to WESTON requesting compliance with the a Non-disclosure agreement he had signed.  A true copy of the letter is attached hereto as EXHIBIT "A."  WESTON did not respond to EXHIBIT "A" in any way.

4    I spoke to David Schwartz, WESTON'S attorney in this action, by telephone on April 20, 2012 and inquired about whether Mr. Schwartz knew of EXHIBIT "A."  Mr. Schwartz then stated that he did and that he would respond to the April 9th requests.

5    Because I had received no reply on the point from Mr. Schwartz, on June 4, 2012, I wrote to him asking when the response to the April 9th letter would come.

6    By letter dated June 5, 2012, a true copy of which is attached as EXHIBIT "B," Mr. Schwartz replied.

7    On June 6, 2012, I received an email from Mr. Schwartz, a true copy of which is attached as EXHIBIT "C."

8    By letter dated June 7, 2012 sent to Mr. Schwartz, a true copy of which is attached as EXHIBIT "D," I responded to EXHIBITS "B" and "C."

9   I have not received any response on the point from Mr. Schwartz after sending him EXHIBIT "D."

10   On June 14, 2012, I sent an email to Mr. Schwartz, a true copy of which is attached as EXHIBIT "E," seeking to set a time for the Rule 26 conference in this case.

11   By email dated June 20, 2012, a copy of which is attached as EXHIBIT "F," Liana Ignes Waite, Mr. Schwartz' assistant, confirmed the date for the Rule 26 conference.

12   Shortly after I received EXHIBIT "F," Mr. Schwartz asked that PLAINTIFFS stipulate to delaying the initial disclosures and, when that was not accepted by PLAINTIFFS, Mr. Schwartz presented this application.

13   In December 2011 Hydrogen Master Rights, Ltd. ["HMR"] agreed to acquire the technology which is involved in the action.

14   Almost immediately after WESTON provided HMR with his March 14, 2012 declaration [Dkt 15, Ex. "A"], HMR claimed that PLAINTIFFS had breached warranties in the purchase and sale agreement based upon the WESTON declaration.

15   In view of the unresolved issues in this litigation, HMR is currently not paying amounts otherwise due or falling due under the sales agreement.

PICOT v WESTON, 5:12-CV-01939 EJD

DECLARATION OF THOMAS M. BOEHM
IN OPPOSITION TO EX PARTE APPLICATION TO DEFER RULE 26 DISCLOSURES. . . . . .  Page 3 of 4 pages.

1   16   PLAINTIFFS seek the initial disclosures from WESTON in order to establish –

2         as soon as reasonably practical – that the warranties were not breached.

3

4        I declare under penalty of perjury under the laws of the United States that the foregoing

5   is true of my personal knowledge, that if called as a witness I could and would testify

6   competently thereto, and that this declaration was executed at Los Gatos, California on June

7   24, 2012.

8

9

10                                    THOMAS M BOEHM

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**DECLARATION OF THOMAS M. BOEHM**
28   **IN OPPOSITION TO EX PARTE APPLICATION TO DEFER RULE 26 DISCLOSURES...... Page 4 of 4 pages.**

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "A"

**to**
**DECLARATION OF THOMAS M. BOEHM**
**IN OPPOSITION TO EX PARTE APPLICATION**
**TO DEFER RULE 26 DISCLOSURES**

The Law Offices Of

# THOMAS M. BOEHM

2 North Santa Cruz Avenue
Suite 211
Los Gatos, California 95030-5900

Telephone:  408.998.8899                                    Facsimile:   408.998.4848

E-Mail: BOEHMTM@GMAIL.COM

SKYPE:  BOEHMTM

---

April 9, 2012

DEAN D. WESTON
3594 LAKESHORE DR
WATERFORD MI 48329-2280

    Re:    NON-DISCLOSURE AGREEMENT

Dear Mr. Weston,

As you know, I represent BERNARD PICOT and PAUL DAVID MANOS.  I write to you concerning the NON-DISCLOSURE AGREEMENT you signed with DBHS LLC ["DBHS"] on or about February 1, 2010 [the "NDA"].  DBHS was acting on behalf of Messrs. Picot and Manos in regard to the NDA, a copy of which is enclosed for your easy reference.

The NDA protects a broad range of information and provides in pertinent part [$^{1/}$], where the term "Receiving Party" refers to you:

//

---

    $^{1/}$    By here setting forth only selected portions of the NDA I do not mean to exclude or diminish any other part.

DEAN D. WESTON
April 9, 2012
Page 2 of 4

Re:   NON-DISCLOSURE AGREEMENT

---

2.      The Receiving Party's Obligations.

The Receiving Party agrees:

(i)      to hold the Disclosing Party's Proprietary Information **in strict confidence as a fiduciary** and to take all reasonable precautions to protect such Proprietary Information (including, without limitation, all precautions that the Receiving Party employs with respect to its most confidential materials);

(ii)     except as strictly and expressly permitted herein, not to divulge any such Proprietary Information or any information derived therefrom to any third person;

(iii)    not to make any use whatsoever at any time of such Proprietary Information except to evaluate the Proprietary Information internally and directly in connection with the Purpose; ...

(v)      not reverse engineer any such Proprietary Information or, except as strictly and expressly permitted herein, copy the same.

3.      Return of Proprietary Information.

**Immediately** upon ... a request by the Disclosing Party at any time ... **the Receiving Party will turn over to the Disclosing Party all Proprietary Information of the Disclosing Party and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof** ...

7.      Remedies.

The Receiving Party acknowledges and agrees that, due to the unique nature of the Disclosing Party's Proprietary Information, there can be no adequate remedy at law for any breach of its obligations hereunder, that any such breach may allow the Receiving Party or third parties to unfairly compete with the Disclosing Party resulting in irreparable harm to the Disclosing Party, and therefore, that upon any such breach or any threat thereof, the Disclosing Party shall be entitled to

DEAN D. WESTON
April 9, 2012
Page 3 of 4

Re:    NON-DISCLOSURE AGREEMENT

---

injunctive or other appropriate equitable relief, without the posting of a bond, in addition to whatever remedies it might have at law and to be indemnified by the receiving Party from any loss or harm, including, without limitation, attorneys' fees, in connection with any breach or enforcement of the Receiving Party's obligations hereunder or the unauthorized use or release of any such Proprietary Information. The Receiving Party will notify the Disclosing Party in writing immediately upon the occurrence of any such unauthorized release or other breach of which it is aware.

As you may also know:

~    Messrs. Picot and Manos were the sole members of DBHS throughout its existence;

~    DBHS was dissolved in October, 2011; and,

~    At the time of dissolution, Messrs. Picot and Manos were managers of DBHS.

Pursuant to NRS 86.541, the dissolution conferred upon Messrs. Picot and Manos the status of trustees for the members of DBHS in order to take action "on behalf of and in the name of" DBHS.

Accordingly, demand is herewith made that:

1.    You immediately upon turn over to DBHS, in care of this office, all Proprietary Information covered by the NDA and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof;

2.    Provide written notice, again in care of this office, of any unauthorized release of Proprietary Information covered by the NDA or other breach of the NDA of which you are aware; and,

DEAN D. WESTON
April 9, 2012
Page 4 of 4

      Re:    NON-DISCLOSURE AGREEMENT

---

3.    Hereafter maintain the Proprietary Information covered by the NDA in strict confidence as a fiduciary and take all reasonable precautions to protect such Proprietary Information.

Thank you.

Very truly yours,

THOMAS M. BOEHM

cc:    CLIENTS
       DEAN D. WESTON. . . . . . . . . . . . . . . . VIA EMAIL TO: DEANDAVIDWESTON@YAHOO.COM



## MUTUAL NON DISCLOSURE AGREEMENT

This Mutual Nondisclosure Agreement ("*Agreement*") is entered into by and between DBHS LLC, a NEVADA Company with its principle place of business located at 107 Cypress Way Stateline NV 89449, (together with its subsidiaries and affiliates, "DBHS LLC"), and ___Dean David Weston_____ with its principal place of business located at 3594 Lakeshore Dr_____ (the "*Company*"), as of the date set forth above the parties' signatures (the "*Effective Date*").

### PRELIMINARY STATEMENT

DBHS LLC and the Company wish to exchange certain business and other information in the course of discussions regarding the potential strategic relationship between DBHS LLC and the Company (the "*Purpose*"). In consideration for the parties' discussions and any access that each of DBHS LLC and Company (each referred to as a "*Receiving Party*") has to the confidential and proprietary information of the other (each referred to as a "*Disclosing Party*"), each Receiving Party hereby agrees as follows:

### AGREEMENT

1.     **Information Covered.**  This Agreement shall apply to all information relating to the Disclosing Party's business, including, without limitation, computer programs, technical drawings, algorithms, names and expertise of employees and consultants, know-how, processes, ideas, inventions (whether patentable or not), schematics and other technical, business, financial, customer and product–

development plans, forecasts, strategies and information, to the extent previously, presently, or subsequently disclosed to the Receiving Party (the "*Proprietary Information*" of the Disclosing Party). "Proprietary Information" includes information that is disclosed by the Disclosing Party to the Receiving Party or that is otherwise learned by the Receiving Party in the course of its discussions or business dealings with, or its physical, telephonic or electronic access to the premises of, the Disclosing Party, and that has been identified as being proprietary and/or confidential or that by the nature of the circumstances surrounding the disclosure or receipt ought to be treated as proprietary or confidential. Notwithstanding the foregoing, and without granting any right or license, each Disclosing Party acknowledges and agrees that this agreement shall not apply to proprietary information that the Receiving Party can document through competent written evidence:

     (i)     is or (through no improper action or inaction by the Receiving Party or any affiliate, agent, consultant or employee of the Receiving Party) becomes generally known to the public;

     (ii)     was in its possession or known by it prior to receipt from the Disclosing Party; or

     (iii)     was rightfully disclosed to it by a third party without restrictions.

2.     **The Receiving Party's Obligations**. The Receiving Party agrees:

     (i)     to hold the Disclosing Party's Proprietary Information in strict confidence as a fiduciary and to take all reasonable precautions to protect such Proprietary Information (including, without limitation, all precautions that the Receiving Party employs with respect to its most confidential materials);

     (ii)     except as strictly and expressly permitted herein, not to divulge any such Proprietary Information or any information derived therefrom to any third person;

     (iii)     not to make any use whatsoever at any time of such Proprietary Information except to evaluate the Proprietary Information internally and directly in connection with the Purpose;

(iv)    not to remove or export from the United States or reexport any such Proprietary Information or any direct product thereof, except in compliance with, and with all licenses and approvals required under applicable U.S. and foreign export laws and regulations, including, without limitation, those of the U.S. Department of Commerce; and

(v)    not reverse engineer any such Proprietary Information or, except as strictly and expressly permitted herein, copy the same.

The Receiving Party may make disclosures required by court order *provided that* Receiving Party uses best efforts to limit disclosure and to obtain confidential treatment or a protective order and has promptly notified the Disclosing Party in writing (which notice must include, without limitation, a copy of the order and identification of the information to be so disclosed) and allowed the Disclosing Party to participate in the proceeding.   The Receiving Party will restrict the possession, knowledge and use of the Proprietary Information of the Disclosing Party to its employees, consultants, lawyers and entities controlled by or controlling it (collectively, "Personnel") that have a legitimate "need to know" such Proprietary Information in connection with the Purpose.  The Receiving Party will ensure that its Personnel comply with this Agreement and Receiving Party will be liable for any breach of this Agreement by its Personnel and will promptly notify the Disclosing Party of any such breach.

3.    **Return of Proprietary Information.**  Immediately upon (i) the decision by either party not to enter into the strategic relationship comprising the Purpose, or (ii) a request by the Disclosing Party at any time (which will be effective if actually received or three days after it is mailed by registered or certified U.S. mail, postage prepaid and return receipt requested, to the Receiving Party's address herein), the Receiving Party will turn over to the Disclosing Party all Proprietary Information of the Disclosing Party and all documents or media containing any such Proprietary Information and any and all copies or extracts thereof; provided that Disclosing Party shall, upon the written request from Receiving Party, provide the Receiving Party with a copy of any such Proprietary Information that is the subject of a claim or action by a court of competent jurisdiction, in order to assist such Receiving Party with regard to such claim or action, provided that the Receiving Party shall remain subject to its obligations under this Agreement, including without limitation its obligation to maintain the confidentiality of such Proprietary Information.

4.      No Required Disclosure or Transaction.  The Receiving Party understands that nothing herein (i) requires the disclosure of any Proprietary Information of the Disclosing Party, which shall be disclosed, if at all, solely at the option of the Disclosing Party (in particular, but without limitation, any disclosure is subject to compliance with export control laws and regulations), or (ii) requires the Disclosing Party to proceed with any proposed transaction or relationship in connection with which Proprietary Information may be disclosed. All Proprietary Information will remain the exclusive property of the Disclosing Party, and the Receiving Party will have no rights, by license or otherwise, to use the Proprietary Information except as expressly provided herein.

5.      Confidentiality of Agreement and Purpose.  Except to the extent required by law, neither party shall disclose the Purpose, the existence or subject matter of the negotiations with respect to the Purpose, or this Agreement without the prior written consent of the other party.

6.      Confidentiality Period.  This Agreement is intended to cover Proprietary Information disclosed or received by either party prior or subsequent to the Effective Date of this Agreement.  Unless otherwise earlier terminated, this Agreement will automatically expire three (3) years from the Effective Date; provided that each party's obligations hereunder with respect to the other party's Proprietary Information disclosed or received prior to termination or expiration will survive for two (2) additional years following the expiration or termination of this Agreement.

7.      Remedies.  The Receiving Party acknowledges and agrees that, due to the unique nature of the Disclosing Party's Proprietary Information, there can be no adequate remedy at law for any breach of its obligations hereunder, that any such breach may allow the Receiving Party or third parties to unfairly compete with the Disclosing Party resulting in irreparable harm to the Disclosing Party, and therefore, that upon any such breach or any threat thereof, the Disclosing Party shall be entitled to injunctive or other appropriate equitable relief, without the posting of a bond, in addition to whatever remedies it might have at law and to be indemnified by the Receiving Party from any loss or harm, including, without limitation, attorneys' fees, in connection with any breach or enforcement of the Receiving Party's obligations hereunder or the unauthorized use or release of any such Proprietary Information.  The Receiving Party will notify the Disclosing Party in writing immediately upon the occurrence of any such unauthorized release or other breach of which it is aware.

8.    Severability.  If any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid, or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect.

9.    Governing Law; Jurisdiction  This Agreement shall be governed by, and construed in accordance with, the laws of the State of NEVADA without regard to the conflicts of law provisions thereof.  DBHS LLC and the Company agree that all actions or proceedings related to this Agreement shall be litigated in the local, state, and federal courts located in the State of NEVADA.  DBHS LLC and the Company also each consent and submit to the jurisdiction of any local, state or federal court located within said county and state and consent to delivery and service of process by the means established in Section 10 below.

10.    Notices.  All notices required or desired to be given hereunder shall be deemed delivered when given by hand delivery, by nationally–recognized overnight courier service with tracking capabilities, or by registered or certified mail, return receipt requested, to the addresses set forth in the preamble to this Agreement, or such other addresses of which the parties may notify each other from time to time in accordance with this Section 10, and shall be effective upon receipt.

11.    Successors and Assigns.  This Agreement shall be binding on the parties and their successors and assigns, *provided that* the Receiving Party shall not assign any of its rights or obligations hereunder to any other party without the prior written consent of the Disclosing Party, but no such assignment shall relieve the assigning party of its obligations hereunder.   Notwithstanding the foregoing, DBHS LLC may assign this Agreement without the prior consent of the Company to an entity in connection with a merger, acquisition, reorganization or public offering of its securities.

12.    Legal Costs.  The prevailing party in any action to enforce this Agreement shall be entitled to its out–of–pocket and court costs and reasonable attorneys' fees.

13.   **Entire Agreement; Waiver.** This Agreement supersedes all prior discussions and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof.  No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in enforcing any right shall be deemed a waiver of such right.

In witness whereof, the parties have executed this Agreement as of the day and year set forth below.

Date _____ 2-1-10 _____

**DBHS LLC**                                    _____

By _____            By _____

Its _____            Its _____ Self _____

Print Name                                    Print Name

_____ Paul D. Manos _____            _____ Dean D. Weston _____

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "B"

**to**
**DECLARATION OF THOMAS M. BOEHM**
**IN OPPOSITION TO EX PARTE APPLICATION**
**TO DEFER RULE 26 DISCLOSURES**

Law Offices Of

# DAVID H. SCHWARTZ

601 California Street
Suite 1800
SAN FRANCISCO, CA 94108

Telephone (415) 399-9301
Facsimile  (415) 39909878
Email: dhs@lodhs.com

David H. Schwartz

LEGAL ASSISTANTS

Liana Ignes

Angeline O'Donnell

June 5, 2012

Thomas M. Boehm
Law Office of Thomas M. Boehm
2 North Santa Cruz Av. Ste. 211
Los Gatos, CA  95030-5900

**By mail and email**

    **Re:     Picot vs. Weston**

Dear Mr. Boehm:

    With respect to your inquiries of April 9, 2012 and June 4, 2012 regarding the non-disclosure agreement signed by Mr. Weston with DBHS, LLC, it is my understanding that as part of the transaction between your clients and Hydrogen Master Rights Ltd. this agreement was assigned to Hydrogen Master Rights, Ltd., and that your clients no longer have any standing to seek enforcement of the agreement.

    Please provide all of the contract documentation between your clients and Hydrogen Master Rights, Ltd. so that I can determine whether your request is on behalf of parties who still have an interest in the agreement. These documents will have to be disclosed in the initial disclosures required next month under Rule 26(a)(1) in any event, as your clients are making the claim that Mr. Weston has interfered with the contract between them and Hydrogen Master Rights, Ltd.

Very truly yours,

David H. Schwartz

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "C"

**to**
**DECLARATION OF THOMAS M. BOEHM**
**IN OPPOSITION TO EX PARTE APPLICATION**
**TO DEFER RULE 26 DISCLOSURES**



THOMAS M. BOEHM <boehmtm@gmail.com>

# Re DBHS

1 message

**David H Schwartz** <dhs@lodhs.com>                    Wed, Jun 6, 2012 at 4:10 PM
To: "Thomas M. Boehm (BOEHMTM@gmail.com)" <BOEHMTM@gmail.com>

Dear Mr. Boehm:

Further to your inquiry regarding the Mutual Non-Disclosure Agreement ("MNDA") with DBHS, in considering whether Mr. Weston should respond to your request, I would appreciate getting answers to the following questions as well:

1.  Did DBHS ever own the Technology that was transferred to HMR?  if so, why didn't it sell the Technology to HMR?

2.  Did your clients represent to HMR that DBHS never owned the technology?

3.  Did your  clients turn over the MNDA to HMR in connection with the sale, and if so, when?

Thank you.

Sincerely,

David H. Schwartz

Law Offices of David H. Schwartz

601 California Street, Suite 1800

San Francisco, CA  94108

PH:  (415) 399-9301

FAX: (415) 399-9878

EMAIL IS COVERED BY THE ELECTRONICS PRIVACY ACT, 18 U.S.C. SECTIONS 2510-2521, AND IS LEGALLY PRIVILEGED. THE INFORMATION CONTAINED IN THIS E-MAIL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. IF THE BODY OF THE MESSAGE INDICATES IT HAS BEEN SENT TO A CLIENT OF THE LAW OFFICES OF DAVID H. SCHWARTZ, THE INFORMATION CONTAINED IN THIS E-MAIL REPRESENTS ATTORNEY-CLIENT COMMUNICATIONS WHICH ARE PRIVILEGED. IN ANY EVENT, UNLESS OTHERWISE INDICATED, THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE CONFIDENTIAL TO THE PERSON TO WHOM IT IS ADDRESSED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE OR RETURN E-MAIL, AND DESTROY ALL COPIES OF THIS E-MAIL ON COMPUTERS AND SERVERS AVAILABLE TO YOU THANK YOU.

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "D"

**to**
**DECLARATION OF THOMAS M. BOEHM**
**IN OPPOSITION TO EX PARTE APPLICATION**
**TO DEFER RULE 26 DISCLOSURES**

The Law Offices Of

# THOMAS M. BOEHM

2 North Santa Cruz Avenue
Suite 211
Los Gatos, California 95030-5900

Telephone:  408.998.8899                    Facsimile:   408.998.4848

E-Mail : BOEHMTM@GMAIL.COM

SKYPE: BOEHMTM

---

June 7, 2012

DAVID SCHWARTZ. . . . . . . . . . . . . . . . .  VIA EMAIL ONLY TO:  DHS@LODHS.COM
601 California Street Ste 1800
San Francisco, CA 94108-2823

      Re:    PICOT v WESTON

Dear David,

      Your communications of this week indicate that Mr. Weston is considering "whether" he should respond to my clients' April 9th demand under the NDA and poses questions concerning "standing" and the possible assignment of the NDA to HMR under the sales CONTRACT.  These statements and inquiries are puzzling.

      In the context of the pending motions, Mr. Weston claims to have learned the formula to the electrolyte from Mr. Manos in August 2009 and admits that he entered into the NDA in February 2010.  The NDA provides that it covers information learned before its signing and that Mr. Weston is bound, as a fiduciary, until at least 2015 regarding what he claims to have received from Mr. Manos.

      In view of Mr. Weston's assertion that he did not "wrongfully" interfere with the CONTRACT, he must have had a justification in his mind for violating the obligations and prohibitions of the NDA.

      But, that justification could not have been a possible assignment of the NDA to HMR under the sales CONTRACT because, by his own declarations on the current motions, Mr.

DAVID SCHWARTZ. . . . . . . . . . . . . . . VIA EMAIL ONLY TO:  DHS@LODHS.COM
June 7, 2012
Page 2 of 3

     Re:   PICOT v WESTON

---

Weston:

     [a]    States that Mr. Manos told him laconically only of the existence of the CONTRACT in October 2011;

     [b]    Admits he did not know the terms of the CONTRACT when he went to see Dr. Mohanty in December 2011 – and that Dr. Mohanty did not discuss those terms with him – though he nonetheless announced then that he knew the formula to the electrolyte;

     [c]    Implies that he began communicating with Mr. Coats of HMR regarding the CONTRACT only in February 2012; and,

     [d]    States he had not seen the CONTRACT, even as late as April 2012.

     Thus, Mr. Weston cannot belatedly justify his breach of the NDA by pointing to a possible assignment of which he clearly was unaware when he acted. [1/]

     If Mr. Weston's justification for dishonoring the NDA was that he developed the technology himself, which he also swore, any possible assignment of the NDA is irrelevant – but, one must question why Mr. Weston signed the NDA at all.

     If Mr. Weston's justification for breaching the NDA was his discovery that DBHS had been dissolved in November 2011, an assignment of the NDA would, again, not be pertinent since Mr. Weston only learned of the dissolution in January 2012 at the earliest –

---

     [1/]    Moreover, the NDA provides [at its ¶ 11] that it may not be assigned without Mr. Weston's consent, which he knows he never gave.  And, Mr. Weston entered into a separate agreement with HMR in March 2012 obligating him to maintain the confidentiality of what he claims to have learned from Mr. Manos.  This new agreement would have been unnecessary had HMR succeeded to the NDA.

DAVID SCHWARTZ. . . . . . . . . . . . . . . . VIA EMAIL ONLY TO:  DHS@LODHS.COM
June 7, 2012
Page 3 of 3

     Re:   PICOT v WESTON

---

and said so in an email to Tracy Coats in February 2012.  [2/]

    At any rate, the NDA was not assigned to HMR, though HMR has been made aware of it.  And, as indicated in the opposition to the jurisdiction motion, DBHS was merely an agent for Messrs. Picot and Manos.

    In my clients' view, Mr. Weston should promptly comply with the demands of the April 9th letter since his failure to do so would constitute further and continuing violation of the NDA – and cause additional harm to my clients.

    I look forward to early compliance by Mr. Weston with the demands of the April 9th letter, which I will conclude is not forthcoming if not received by the end of next week.

    Thank you.

Very truly yours,

THOMAS M. BOEHM

LTR.JUN 7 2012.DHS.wpd
CC:    CLIENTS

---

[2/]   I attach a copy of the email and its enclosure for your reference.

**Movius, David**

| | |
|---|---|
| **From:** | Tracy Coats <tracy.coats@att.net> |
| **Sent:** | Wednesday, May 02, 2012 3:42 PM |
| **To:** | Movius, David |
| **Subject:** | Fwd: |
| **Attachments:** | DBHS LLC.docx |

Begin forwarded message:

**From:** Dean Weston <deandavidweston@yahoo.com>
**Date:** February 7, 2012 3:50:27 AM EST
**To:** Tracy Coats <tracycoats@profitcatapult.com>
**Reply-To:** Dean Weston <deandavidweston@yahoo.com>

Tracy, noticed that DBHS LLC has been dissolved.

Dean

HMR 00017



ANNUAL REPORT

## DBHS LLC

*This information is current as of January 18, 2012.*

| | | | |
|---|---|---|---|
| Entity Name: | **DBHS LLC** | | |
| Status: | Dissolved | File Date: | 11/19/2009 |
| Entity Type: | Domestic Limited-Liability Company | File Number: | E0603842009-2 |
| | | | |
| Annual List Due: | 11/30/2011 | List Fees Due: | $125.00 (Estimate) |
| Managed By: | Managers | Expires On: | |
| Entity Age: | 2 Years, 3 Months | | |

Registered Agent:   Corporation Services Of America

276 Kingsbury Grade Suite 104
Stateline, NV 89449

No Par Shares:                                        Capital Amount:

**Manager**

Bernard Picot
Po Box 3600
Stateline, NV 89449

**Manager**

Julia A Blair
Po Box 3600
Stateline, NV 89449

**Manager**

Paul David Manos
Po Box 3600
Stateline, NV 89449

Change My P

Previous Entity                              Search Entities                              Ne

Copyright © 2008-2012 · Inenvi, Inc. · All rights reserved.                    Terms Of Use

HMR 00018

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "E"

**to**
**DECLARATION OF THOMAS M. BOEHM**
**IN OPPOSITION TO EX PARTE APPLICATION**
**TO DEFER RULE 26 DISCLOSURES**



THOMAS M. BOEHM <boehmtm@gmail.com>

## PICOT v WESTON

1 message

**THOMAS M. BOEHM** <boehmtm@gmail.com>                                      Thu, Jun 14, 2012 at 1:38 PM
Reply-To: BOEHMTM@gmail.com
To: "DAVID H. SCHWARTZ" <DHS@lodhs.com>
Bcc: Bernard Picot <bpicot@suntco.com>, DAVE MANOS <dmanos55@gmail.com>

DAVID,

PLS LET ME KNOW WHEN YOU ARE AVAILABLE FOR THE RULE 26 CONFERENCE IN THIS CASE.

I WILL BE IN SAN FRANCISCO FRIDAY OF NEXT WEEK.  IF THAT IS CONVENIENT, WE CAN DO IT IN YOUR OFFICE FRIDAY AFTERNOON.

TOM


THOMAS M. BOEHM

Law Office of THOMAS M. BOEHM

2 North Santa Cruz Av Ste 211

Los Gatos, CA  95030-5900  USA


T:          + 408 998 8899
F:          + 408 998 4848
M:          + 408 781 7810
SKYPE:      BOEHMTM
E:          **BOEHMTM@GMAIL.COM**


This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

<u>PICOT v WESTON</u>, 5:12-CV-01939 EJD

# EXHIBIT "F"

**to**
**DECLARATION OF THOMAS M. BOEHM**
**IN OPPOSITION TO EX PARTE APPLICATION**
**TO DEFER RULE 26 DISCLOSURES**



THOMAS M. BOEHM <boehmtm@gmail.com>

# Picot v. Weston -- Meet and Confer 6/26/12
1 message

**Liana J Ignes** <LJI@lodhs.com>                    Wed, Jun 20, 2012 at 4:24 PM
To: "BOEHMTM@GMAIL.COM" <BOEHMTM@gmail.com>
Cc: David H Schwartz <dhs@lodhs.com>

Mr. Boehm,


You and David will meet at our office next Tuesday, June 26 at 10:30 a.m.  David will notify you late Monday afternoon should his case proceed to trial on June 26, and in that event, you offered to meet and confer by phone on Monday evening.


Thank you.


Sincerely,


Liana Ignes Waite, Legal Assistant to David H. Schwartz

Law Offices of David H. Schwartz

601 California Street, Suite 1800

San Francisco, CA  94108


PH:   (415) 399-9301

FAX: (415)  399-9878