1  THOMAS M. BOEHM [SBN 63888]
   LAW OFFICE OF THOMAS M. BOEHM
2  2 North Santa Cruz Avenue, Suite 211
   Los Gatos, CA 95030-5900
3
   TELEPHONE:     408.998.8899
4  FACSIMILE:     408.998.4848
   EMAIL:         BOEHMTM@GMAIL.COM
5
   ATTORNEY FOR PLAINTIFFS,
6  BERNARD PICOT and PAUL DAVID MANOS
   IDS.RULE 26.wpd
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11
    BERNARD PICOT and           )   CASE NO.  5:12-CV-01939 EJD
12  PAUL DAVID MANOS,            )
                                 )
13       Plaintiffs,             )
                                 )   PLAINTIFFS' INITIAL DISCLOSURE
14  v.                           )   STATEMENT
                                 )
15  DEAN D. WESTON, and DOES 1   )
    through 15, inclusive,       )
16                               )
                                 )
17       Defendants.             )
    _____    )
18

19

20

21

22

23

24

25

26

27
    _____
    **PICOT v WESTON, 5:12-CV-01939 EJD**
28  **PLAINTIFFS' INITIAL DISCLOSURE STATEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Page 1 of 19**

1  PLAINTIFFS, BERNARD PICOT and PAUL DAVID MANOS, through their attorney
2 of record herein, hereby produce documents, identify witnesses, and list their calculation of
3 damages pursuant to FRCivP 26(a)(1):

4

5  I   DOCUMENTS

6  PLAINTIFFS are producing electronic copies [pursuant to agreement for such mode of
7 production] of those certain documents designated as "PICOT/MANOS 000001" through
8 "PICOT/MANOS 006625" inclusive.

9  Those documents produced with the legend "CONFIDENTIAL" placed vertically in or near
10 the right margin are so designated under the Court approved form entitled "STIPULATED
11 PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE
12 CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS," as modified and agreed to
13 by the parties [the "PROTECTIVE ORDER"].

14  If a document in this initial production is once marked "CONFIDENTIAL" but appears
15 more than once in the production, all further iterations of such document/s are intended as
16 "CONFIDENTIAL" and the production thereof without such marking, if such occurs, was
17 inadvertent.

18  Production of the materials marked "CONFIDENTIAL" is made on the express condition
19 that the parties [and those third persons described in the PROTECTIVE ORDER who may
20 obtain access to the produced materials] have agreed to be bound in contract by the
21 PROTECTIVE ORDER <u>whether or not it is ultimately approved or modified by the Court</u>.

22
23
24
25
26 //
27

2   WITNESSES

PLAINTIFFS anticipate the following witnesses may be used to support PLAINTIFFS' claims in this action by giving evidence in the generally described respective subject areas:

2.1   BERNARD PICOT   c/o of his attorney of record

Oral and documentary evidence concerning: PICOT'S scientific, technological, and business experience up to and from and after March 1, 2009; roles of PICOT and MANOS in regard to evaluating, owning, developing, protecting, promoting, licensing, and selling the hydrogen-related technology promoted by Carey Hilton [the "HILTON TECHNOLOGY"] and, then, that developed by MANOS [the "ASSETS"]; PICOT'S interaction with WESTON, including that concerning collaboration by WESTON with Carey Hilton, Frank Joseph, The Right Angle, and others concerning exploitation of the HILTON TECHNOLOGY and/or the ASSETS for the benefit of WESTON [cf., qua claimed owner with PICOT and MANOS or claimed developer of the ASSETS], payments to WESTON and Ralph Keller at the direction of MANOS and PICOT or other/s in regard to the ASSETS and the HILTON TECHNOLOGY, and/or whether PICOT entered into an agreement with WESTON for ownership of and/or payment of a share of the proceeds from sale or licensing of the HILTON TECHNOLOGY or the ASSETS; whether and, if so, when and how, WESTON incurred and/or was promised repayment of $800,000± of expenses in regard to the ASSETS; technological and commercial viability of the HILTON TECHNOLOGY and the ASSETS; agreement/s with and payments by IBKE and ADP Holdings regarding the ASSETS and WESTON'S knowledge thereof; sale of the ASSETS to HMR and claims by HMR

1 alleging breach of warranty and/or contract by PICOT and MANOS
2 based on actions taken and assertions made by WESTON; WESTON'S
3 demands and threats seeking to extract money from MANOS and
4 PICOT, to discover and expose secrets about PICOT in order to compel
5 him to pay money, and to ruin MANOS and PICOT if they did not pay
6 WESTON $250,000; damages from acts, etc. of WESTON that
7 interfered with and disrupted the sales agreement with HMR; the tolling
8 agreement with HMR.

2.2 PAUL DAVID MANOS c/o of his attorney of record

Oral and documentary evidence concerning: MANOS' scientific, technological, and business experience up to and from and after March 1, 2009; MANOS' relationship with WESTON prior to and from and after March, 2009; roles of PICOT and MANOS in regard to evaluating, owning, developing, protecting, promoting, licensing, and selling the HILTON TECHNOLOGY and the ASSETS; MANOS' interaction with WESTON, including that concerning collaboration by WESTON with Carey Hilton, Frank Joseph, The Right Angle, and others concerning exploitation of the HILTON TECHNOLOGY and/or the ASSETS for the benefit of WESTON [cf., qua claimed owner with PICOT and MANOS or claimed developer of the ASSETS], payments to DEAN WESTON and Ralph Keller at the direction of MANOS and PICOT and other/s in regard to the ASSETS and the HILTON TECHNOLOGY, whether MANOS entered into an agreement with WESTON for ownership of and/or payment of a share of the proceeds from sale of the HILTON TECHNOLOGY or the ASSETS; whether MANOS disclosed the formula for the electrolyte [included in the ASSETS] to WESTON; WESTON'S

| | | |
|---|---|---|
| 1 | | execution of a non disclosure agreement [the "NDA"]; technological and |
| 2 | | commercial viability of the HILTON TECHNOLOGY and the ASSETS; |
| 3 | | whether and, if so, when and how, WESTON incurred and/or was |
| 4 | | promised repayment of $800,000± of expenses in regard to the |
| 5 | | ASSETS; agreement/s with and payments by IBKE and ADP Holdings |
| 6 | | regarding the ASSETS and WESTON'S knowledge thereof; sale of the |
| 7 | | ASSETS to HMR and claims by HMR alleging breach of warranty and/or |
| 8 | | contract by PICOT and MANOS based on actions taken and assertions |
| 9 | | made by WESTON; WESTON'S demands and threats seeking to extract |
| 10 | | money from MANOS and PICOT, to discover and expose secrets about |
| 11 | | PICOT in order to compel him to pay money, and to ruin MANOS and |
| 12 | | PICOT if they did not pay WESTON $250,000; damages from acts, etc. |
| 13 | | of WESTON that interfered with and disrupted the sales agreement with |
| 14 | | HMR; the tolling agreement with HMR; WESTON'S admission that |
| 15 | | MANOS had not disclosed the formula for the electrolyte to WESTON. |
| 16 | 2.3 | DEAN D. WESTON  c/o of his attorney of record |
| 17 | | Oral and documentary evidence concerning: WESTON'S scientific, |
| 18 | | technological, and business experience up to and from and after March |
| 19 | | 1, 2009; WESTON'S relationship with MANOS prior to and from and |
| 20 | | after March, 2009; roles of PICOT and MANOS in regard to owning, |
| 21 | | developing, protecting, promoting, licensing, and selling the HILTON |
| 22 | | TECHNOLOGY and, then, the ASSETS; interaction and/or collaboration |
| 23 | | by WESTON with Carey Hilton, Frank Joseph, The Right Angle, and |
| 24 | | others concerning exploitation of the HILTON TECHNOLOGY and/or |
| 25 | | the ASSETS for the benefit of WESTON [cf., qua claimed owner with |
| 26 | | PICOT and MANOS or claimed developer of the ASSETS], including |
| 27 | | |
| 28 | PICOT v WESTON, 5:12-CV-01939 EJD<br>PLAINTIFFS' INITIAL DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5 of 19 | |

whether, when and how WESTON determined the technological and commercial viability of the HILTON TECHNOLOGY, payments to DEAN WESTON and Ralph Keller at the direction of MANOS and PICOT and other/s in regard to the ASSETS and the HILTON TECHNOLOGY, whether WESTON had agreement/s with anyone regarding the HILTON TECHNOLOGY or the ASSETS and/or an agreement with PICOT and MANOS for ownership and/or a portion of the proceeds from the sale or licensing of the ASSETS, whether and, if so, when and how, WESTON incurred and/or was promised repayment of \$800,000± of expenses in regard to the ASSETS, WESTON'S signing of the NDA, how WESTON learned the formula for the electrolyte, and whether, when, and to whom he revealed matters covered by the NDA and/or otherwise confidential due to his relationship with PICOT and MANOS; WESTON'S receipt of money from or at the direction of MANOS or PICOT, WESTON'S knowledge of the agreement/s with and payments by IBKE and ADP Holdings concerning and relating to the ASSETS, sale of the ASSETS to HMR, HMR'S allegations of breach of warranty and/or contract by PICOT and MANOS under the contract with HMR based upon actions taken and assertions made by WESTON; WESTON'S demands and threats seeking to extract money from MANOS and PICOT, to discover and expose secrets about PICOT in order to compel him to pay money, and to ruin MANOS and PICOT if they did not pay WESTON \$250,000; acts by or at the direction of WESTON which interfered with and disrupted the sales agreement with HMR, including revelation of the formula for the electrolyte and WESTON'S communications and agreements to/from and/or with HMR or its

principals/agents and declaration/s and information supplied by WESTON to HMR; assertions by WESTON that the ASSETS were deemed by HMR not to be commercially or technologically viable; WESTON'S motivation and intent in regard to the foregoing; and, WESTON'S credibility.

2.4 Julia Blair PO Box 1099, STATELINE, NV 89449

775.588.8125

Oral and documentary evidence concerning: The creation, structure, ownership, administration, and dissolution of DBHS LLC, A Nevada LLC; the creation, structure, ownership, and administration of SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, an intellectual property trust, and SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, an intellectual property trust; and, payments to DEAN WESTON and Ralph Keller at the direction of MANOS and PICOT.

2.5 Nedra K. David PO BOX 4335, STATELINE, NV 89449

775.588.1766

Oral and documentary evidence concerning: Payments to WESTON by and at the direction of MANOS and PICOT.

2.6 Tiffany Brunello PO BOX 1112, ZEPHYR COVE, NV 89448

775.450.1244

Oral evidence concerning: WESTON'S telephonic threat to ruin MANOS and PICOT if they did not pay $250,000.

2.7 Robert L. Campbell c/o DAVID T. MOVIUS, ESQ., MACDONALD HOPKINS, 600 Superior Avenue, Suite 2100, Cleveland, OH 4114

216.348.5400

| | | |
|---|---|---|
| 1 | | Oral evidence concerning: Consultations on and assessments of the ASSETS for HMR. |
| 2 | | |
| 3 | 2.8  Joseph Dunn | PO BOX 462, ORINDA, CA 94563 |
| 4 | | 408.887.3377 |
| 5 | | Oral evidence concerning: Role in contract negotiations between PICOT and MANOS, on the one hand, and HMR, Carl Le Souef, and Tracy Coats, on the other hand, in Los Angeles. |
| 8 | 2.9  Dan Heinrich | 2377 GOLD MEADOW WAY, SUITE 100, GOLD RIVER, CA 95670 |
| 10 | | 916.859.0602 |
| 11 | | Oral and documentary evidence concerning: The California based negotiation for a proposed joint venture concerning the hydrogen process, the terms of that proposed joint venture, the location and substance and effect of the activities of ADP in raising and paying money in order to obtain a joint venture for the technology. Confirmation of ADP'S intention to open a research and marketing facility in California and WESTON'S role in demonstrations of the technology in California and his expressed willingness to work in California for the joint venture. |
| 19 | 2.10  Darrel Smith | Last known address and contact information through Dan Heinrich. |
| 21 | | Oral and documentary evidence concerning: The California based negotiation for a proposed joint venture concerning the hydrogen process, the terms of that proposed joint venture, the location and substance and effect of the activities of ADP in raising and paying money in order to obtain a joint venture for the technology. Confirmation of ADP'S intention to open a research and marketing facility in California |

and WESTON'S role in demonstrations of the technology in California and his expressed willingness to work in California for the joint venture.

2.11  Gary Nicholson     Q Technologies China LTD, Beijing, China
                         nicholsongary1@yahoo.com

Oral and documentary evidence concerning: roles of PICOT, MANOS, Coats, and Mohanty in regard to evaluating, owning, developing, protecting, promoting, licensing, and selling the ASSETS; technological and commercial viability of the ASSETS; agreement/s with and payments by IBKE and ADP Holdings regarding the ASSETS.

2.12  Peter Warkentin    Believed reachable c/o John J. Stifter, Stifter Law Corp, 1181 Puerta del Sol Ste 100, San Clemente CA 92673
                         949-388-8228

Oral and documentary evidence concerning: The California based demonstration of the technology and the negotiation for a proposed commercialization of the technology through Warkentin's company and the terms of that effort; Confirmation of Warkentin's request to have another demonstration in Mexico and his payment of WESTON'S travel expenses to do so.

2.13  Russ Reeder        Believed reachable c/o John J. Stifter, Stifter Law Corp, 1181 Puerta del Sol Ste 100, San Clemente CA 92673
                         949-388-8228

Oral and documentary evidence concerning: Discussions regarding the possibility of investing in and promoting the technology in the European countries.  See also, description of evidence from Peter Warkentin.

2.14  Peter Mueller      Last known contact information: c/o Brabus USA, 1711 McGaw Avenue, Irvine, CA 92614

1  949.229.1770
2  Oral and documentary evidence concerning: The demonstration and
3  testing of the hydrogen prototype for Warkentin and WESTON'S role as
4  assistant to MANOS for that purpose.

5  2.15  Tyler Dick        PO BOX 11913, ZEPHYR COVE, NV 89448
6                          775.233.2008
7  Oral evidence concerning: installation of units and use of iron oxide in
8  air intake units; and, admission by DEAN WESTON that he did not learn
9  the formula for the electrolyte from PAUL DAVID MANOS.

10 2.16  Billy Macchetti   PO Box 11913, Zephyr Cove, NV 89448
11                         775-339-1100
12 Oral and documentary evidence evidence concerning: Contact with
13 Kingsbury Automotive and evaluating units and making other contacts
14 through December 2009.

15 2.17  Shaun Thomas      Kingsbury Automotive and Supplies, 180 Shady Lane,
16                         Stateline, NV 89449
17                         775-588-2441
18 Oral and documentary evidence evidence concerning: installation of
19 electrical and hydrogen cell units from approximately June 2009 through
20 November 2009.

21 2.18  Anne Thomas       Kingsbury Automotive and Supplies, 180 Shady Lane,
22                         Stateline, NV 89449
23                         775-588-2441
24 Oral and documentary evidence evidence concerning: installation of
25 electrical and hydrogen cell units from approximately June 2009 through
26 November 2009.

27

| | | |
|---|---|---|
| 2.19 | Spencer Thomas | Kingsbury Automotive and Supplies, 180 Shady Lane, Stateline, NV 89449 |
| | | 775-588-2441 |
| | | Oral and documentary evidence evidence concerning: installation of electrical and hydrogen cell units from approximately June 2009 through November 2009. |
| 2.20 | Shaun Thomas, Jr. | Kingsbury Automotive and Supplies, 180 Shady Lane, Stateline, NV 89449 |
| | | 775-588-2441 |
| | | Oral and documentary evidence evidence concerning: installation of electrical and hydrogen cell units from approximately June 2009 through November 2009. |
| 2.21 | Bill Simonson | PBS Nolwood Chemicals, 1900 Harper Avenue, Detroit, MI 48213 |
| | | 313-903-3371; 800-284-9735 |
| | | Oral and documentary evidence concerning: Orders for chemicals. |
| 2.22 | Douglas Linman, PHD | Pleasanton, CA |
| | | (925) 344-2024 |
| | | Oral evidence concerning: Viability of the ASSETS. |
| 2.23 | Conchita Franco-Serri | Palo Alto, CA |
| | | (650) 207-5073 |
| | | Oral evidence concerning: Discussions regarding the possibility of a license for the technology in Latin America. |
| 2.24 | Bill Black | San Jose, CA |
| | | (408) 761-1969 |
| | | Oral evidence concerning: Discussions regarding the possibility of an |

1    early stage investment in the technology.

2    2.25   Stephanie Wedge   Pleasanton, CA

3    (925) 364- 4885

4    Oral evidence concerning:  Discussions regarding the possibility of

5    an early stage investment in the technology.

6    2.26   Nathan Cocozza   434 Park Avenue, San Jose, CA 95110

7    (408) 963-6868

8    Oral evidence concerning:  Discussions regarding the possibility of a

9    vertical license for California.

10   2.27   Dino Peccaro   San Jose, CA

11   (408) 654-2467 963-6868

12   Oral evidence concerning:  Discussions with me in California regarding

13   the possibility of use of the technology by PG&E.

14   2.28   Justin Garcia   San Jose, CA

15   (408) 679-3339

16   Oral evidence concerning:  Discussions regarding the introductions to

17   others to advance the project.

18   2.29   Nick Saifan   Huntington Beach, CA

19   (714) 366-0132

20   Oral evidence concerning:  Discussions regarding the possibility of

21   investing in and promoting the technology in the middle east and to the

22   US government; communications with WESTON.

23   2.30   Carey Hilton   Fort Worth, TX

24   (817) 307-1385

25   Oral and documentary evidence concerning: Discussions regarding the

26   possibility of investment in or licenses for the HILTON TECHNOLOGY

27

and observations on WESTON'S role in Texas and, later, in working with Frank Joseph and/or The Right Angle to profit himself from the HILTON TECHNOLOGY.

2.31   Tracy Coats   401 COUNTRYSIDE DRIVE, BROADVIEW HEIGHTS, OH 44147-3418

(440) 836-2150

Oral and documentary evidence concerning: Roles of Coats, PICOT and MANOS in regard to developing, promoting, licensing, and selling the technology; the creation, structure, ownership, administration, and dissolution of SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, an intellectual property trust, and SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, an intellectual property trust; agreement/s with and payments by IBKE and ADP Holdings regarding the ASSETS and WESTON'S knowledge thereof; relationship between IBKE, Coats, Le Souf, Adler, and HMR concerning the ASSETS; interaction and communications with WESTON concerning development, commercialization, licensing, sale, and protection of the ASSETS and claims by WESTON that WESTON owned any part of the ASSETS, that MANOS disclosed the formula for the electrolyte to WESTON, that WESTON was entitled to a share of profits from the sale of the ASSETS to HMR, that WESTON was entitled to be reimbursed by MANOS and PICOT for expenses WESTON claimed to have incurred of $800,000±, and/or otherwise involving the ASSETS, MANOS, and/or PICOT; claims by HMR alleging breach of warranty and/or contract by PICOT and MANOS under the sales agreement with HMR based upon claims of and information from WESTON;

communications and circumstances leading to and preceding HMR'S reliance on and use of agreements between WESTON and HMR and declaration of WESTON dated March 14, 2012 as a basis for communications by and at the direction of HMR to MANOS and PICOT regarding alleged breaches of the sales agreement and/or its warranties and the refusal by HMR to pay under the sales agreement, coupled with threats by HMR to sue based on the claims and declaration made by WESTON to HMR; the tolling agreement; communications with WESTON; viability of the ASSETS and enhancements, modifications, and improvements thereto from and after January 2010; "VALIDATION" of the ASSETS under the sales agreement by HMR; the state of commercialization of the ASSETS.

2.32  Carl Le Souef    Level 3, 2 Ross Place, South Melbourne VIC 3205, Australia
+61 (3) 9673 9673

Oral and documentary evidence concerning: Roles of Coats, PICOT and MANOS in regard to developing, promoting, licensing, and selling the technology; agreement/s with and payments by IBKE regarding the ASSETS; relationship between IBKE, Coats, Le Souf, Adler, and HMR concerning the ASSETS; interaction and communications with WESTON concerning claims by WESTON that WESTON owned any part of the ASSETS, that MANOS disclosed the formula for the electrolyte to WESTON, that WESTON was entitled to a share of profits from the sale of the ASSETS to HMR, that WESTON was entitled to be reimbursed by MANOS and PICOT for expenses WESTON claimed to have incurred of $800,000±, and/or otherwise involving the ASSETS, MANOS, and/or PICOT; claims by HMR alleging breach of warranty and/or contract by

| | | |
|---|---|---|
| 1 | | PICOT and MANOS under the sales agreement with HMR based upon claims of and information from WESTON; communications and circumstances leading to and preceding HMR'S reliance on and use of agreements between WESTON and HMR and declaration of WESTON dated March 14, 2012 as a basis for communications by and at the direction of HMR to MANOS and PICOT regarding alleged breaches of the sales agreement and/or its warranties and the refusal by HMR to pay under the sales agreement, coupled with threats by HMR to sue based on the claims and declaration made by WESTON to HMR; the tolling agreement; communications with WESTON; viability of the ASSETS and enhancements, modifications, and improvements thereto from and after January 2010; "VALIDATION" of the ASSETS under the sales agreement by HMR; the state of commercialization of the ASSETS. |
| 14 | 2.33 Rodney Adler | Believed reachable c/o DAVID T. MOVIUS, ESQ., MACDONALD HOPKINS, 600 Superior Avenue, Suite 2100, Cleveland, OH 4114 |
| 17 | | 216.348.5400 |
| 18 | | Oral and documentary evidence concerning: Roles of Coats, PICOT and MANOS in regard to developing, promoting, licensing, and selling the technology; agreement/s with and payments by IBKE regarding the ASSETS; relationship between IBKE, Coats, Le Souf, Adler, and HMR concerning the ASSETS; interaction and communications with WESTON concerning claims by WESTON that WESTON owned any part of the ASSETS, that MANOS disclosed the formula for the electrolyte to WESTON, that WESTON was entitled to a share of profits from the sale of the ASSETS to HMR, that WESTON was entitled to be reimbursed by |

MANOS and PICOT for expenses WESTON claimed to have incurred of $800,000±, and/or otherwise involving the ASSETS, MANOS, and/or PICOT; claims by HMR alleging breach of warranty and/or contract by PICOT and MANOS under the sales agreement with HMR based upon claims of and information from WESTON; communications and circumstances leading to and preceding HMR'S reliance on and use of agreements between WESTON and HMR and declaration of WESTON dated March 14, 2012 as a basis for communications by and at the direction of HMR to MANOS and PICOT regarding alleged breaches of the sales agreement and/or its warranties and the refusal by HMR to pay under the sales agreement, coupled with threats by HMR to sue based on the claims and declaration made by WESTON to HMR; the tolling agreement; communications with WESTON; viability of the ASSETS and enhancements, modifications, and improvements thereto from and after January 2010; "VALIDATION" of the ASSETS under the sales agreement by HMR; the state of commercialization of the ASSETS.

2.34 Pravansu Mohanty c/o DAVID T. MOVIUS, ESQ., MACDONALD HOPKINS, 600 Superior Avenue, Suite 2100, Cleveland, OH 4114
216.348.5400

Oral and documentary evidence concerning: Roles of PICOT and MANOS in regard to developing, promoting, licensing, and selling the technology; agreement/s with and payments by IBKE regarding the ASSETS; relationship between IBKE, Coats, Le Souf, Adler, and HMR concerning the ASSETS; interaction and communications with WESTON concerning WESTON'S competence in science and technology underlying ASSETS, claims by WESTON that WESTON owned any part

of the ASSETS, that MANOS disclosed the formula for the electrolyte to WESTON, that WESTON was entitled to a share of profits from the sale of the ASSETS to HMR, that WESTON was entitled to be reimbursed by MANOS and PICOT for expenses WESTON claimed to have incurred of $800,000±, and/or otherwise involving the ASSETS, MANOS, and/or PICOT; claims by HMR alleging breach of warranty and/or contract by PICOT and MANOS under the sales agreement with HMR based upon claims of and information from WESTON; communications and circumstances leading to and preceding HMR'S reliance on and use of agreements between WESTON and HMR and declaration of WESTON dated March 14, 2012 as a basis for communications by and at the direction of HMR to MANOS and PICOT regarding alleged breaches of the sales agreement and/or its warranties and the refusal by HMR to pay under the sales agreement, coupled with threats by HMR to sue based on the claims and declaration made by WESTON to HMR; communications with WESTON; viability of the ASSETS and enhancements, modifications, and improvements thereto from and after January 2010; "VALIDATION" of the ASSETS under the sales agreement by HMR; the state of commercialization of the ASSETS.

3  DAMAGES

PLAINTIFFS' presently seek damages consisting of:

    3.1    The amounts, but for the actions of WESTON, payable to or for the benefit of MANOS and PICOT pursuant to that certain AGREEMENT FOR SALE OF CERTAIN ASSETS [the "AGREEMENT"], the effective date of which is December 12, 2011, made by and between HYDROGEN MASTER

RIGHTS, LTD., a Delaware corporation, qua BUYER, and Paul David Manos, Bernard Picot, SIGNIFICAN GLOBAL ENERGY INTELLECTUAL PROPERTY TRUST, Julia Blair, Trustee, an intellectual property trust, and SIGNIFICAN AUSTRALIA ENERGY INTELLECTUAL PROPERTY TRUST, Julia Blair, Trustee, an intellectual property trust, qua SELLER.  These damages are continuing.  As presently known, these damages consist of the following:

    3.1.1    TWO HUNDRED THOUSAND DOLLARS [$200,000] initially due March 12, 2012 pursuant to ¶ 8.3.2.2 of the AGREEMENT; and,

    3.1.2    ONE MILLION THREE HUNDRED THOUSAND DOLLARS [$1,300,000] initially due June 9, 2012 pursuant to ¶ 8.3.2.2 of the AGREEMENT.

    3.2    The amounts payable for attorney's fees, costs, and expenses incurred to mitigate damages caused by WESTON'S interference with and disruption of the sales agreement with HMR and to establish that, despite WESTON'S communications to HMR to the contrary, PLAINTIFFS have not breached warranties in the AGREEMENT concerning ownership or knowledge of the formula to the electrolyte included in the assets sold thereunder.  These damages are continuing and may come to include attorney's fees, costs, and expenses in litigating with HMR if such litigation ensues.

    3.3    Punitive damages in an amount determined by the trier of fact.

DATED: July 24, 2012    /S/ THOMAS M. BOEHM
                              THOMAS M. BOEHM
                              Attorney for PLAINTIFFS, BERNARD PICOT and PAUL DAVID MANOS

| | |
|---|---|
| 1 | **AFFIDAVIT OF SERVICE** |
| 2 | I, THOMAS M. BOEHM, declare: |
| 3 | I am a citizen of the United States and a resident of the County of Santa Clara, California. I am over the age of eighteen (18) years. My business address is 2 North Santa Cruz Avenue, Suite 211, Los Gatos, California 95030-5900. |
| 4 | |
| 5 | On July 24, 2012, I served electronic copies of: |
| 6 | PLAINTIFFS' Initial Disclosure of Documents Pursuant to FRCivP 26(a)(1) |
| 7 | Designated as "PICOT/MANOS 000001" through "PICOT/MANOS 006625" inclusive. |
| 8 | on the following persons in the manner indicated: |
| 9 | DAVID H. SCHWARTZ. . . . . . . . . . [ATTORNEY FOR DEFENDANT, DEAN D. WESTON] VIA EMAIL TO:   DHS@LODHS.COM |
| 10 | |
| 11 | I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed at LOS GATOS, CALIFORNIA on July 24, 2012. |
| 12 | |

THOMAS M. BOEHM