IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERNARD PICOT and PAUL DAVID MANOS,<br><br>Plaintiffs,<br>v.<br><br>DEAN D. WESTON and DOES 1 through 15, inclusive,<br><br>Defendants. | CASE NO. 5:12-cv-01939-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION (DOC. 9).** |

Plaintiff Bernard Picot, a resident of Santa Clara County, California, and Plaintiff Paul David Manos, a resident of Nevada, have filed a two-count Complaint against Defendant Dean D. Weston, a resident of Waterford, Michigan (Doc. 1, Ex. A). The Plaintiffs seek a declaration that Weston is not entitled to any payments under a contract between Picot, Manos, and a Delaware company called HMR Hydrogen Master Rights, Ltd., (Count I). The Plaintiffs further allege that Weston tortiously interfered with that contract and seek monetary damages (Count II).

The case was originally filed in the Superior Court of the State of California in and for the County of Santa Clara, and was removed to this Court on April 18, 2012 (Doc. 1). Weston has moved to dismiss the case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) (Doc. 9). Alternatively, he has moved to transfer the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a) (Doc. 10). Both motions are of a type that may be supported and opposed by the submission of affidavits and other documentary evidence without converting to a Rule 56 motion for summary judgment.[1] The Parties have taken advantage of

---

[1] See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) ("The court may consider evidence presented in affidavits to assist it in its determination [of personal jurisdiction over a defendant]."); Bryant v. Mattel, Inc., 2010 WL 3705668 at * 16 (C.D. Cal. Aug. 2, 2010) ("In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside the pleadings."); Charter Oak Fire Ins. Co. v. Interstate Mechanical, Inc., 2012 WL 1357674 at * 6 (D. Or. Mar. 29, 2012) ("In deciding a motion under 12(b)(3), the court is not required to accept the truth of the plaintiff's allegations, . . . and may consider facts outside the parties pleadings without thereby

1

that opportunity.

The issues have been fully briefed (Docs. 13-16, 23-24), and oral argument was heard on August 2, 2012. The motions are ripe for disposition. Upon due consideration and for the reasons that follow, Weston's motion to dismiss for lack of personal jurisdiction will be granted, and the motions to dismiss for improper venue and to transfer will be denied as moot.

## I.

## **The Facts**

Weston resides in Waterford, Michigan. He has a Michigan corporation, Engineering Interests, Inc., with its sole office located in Sterling Heights, Michigan. Weston's business activities are related to the development and exploitation of various technologies for the automobile industry. Neither he nor his corporation have ever done business in California or employed any agents or employees in the state.

Weston and Manos have known each other since approximately November 2005, and have previously worked together on projects to develop metal coating technology and water filtration systems for motor vehicles. Manos and Picot began working together in March 2009 to evaluate a technology being promoted by Carey Hilton in Texas (the "Hilton Technology").[2] Manos asked Weston to travel to Texas in 2009 to inspect the Hilton Technology, and Manos paid Weston's travel expenses. Manos later evaluated the Hilton Technology himself while in Nevada. By the Fall of 2009, Manos determined that the Hilton Technology was unworkable and he began exploring a new approach.

On February 1, 2009, Weston and Manos met in Michigan. Weston contends that during this meeting, he and Manos reached an oral agreement whereby Weston would work to develop technology for the adaption of a hydrogen fuel cell and an electrolyte for use in automobiles and trucks (the "Technology"), in exchange for which Weston would receive a one-third interest in the proceeds from any sale of the Technology, and well as $20,000 per month going forward, to reimburse Weston for his

---

converting the motion into a constructive motion for summary judgment.") (citing Argueto v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996); RFG Corp. v. Audio Data Video Enterprises, LLC, 2008 WL 5001382 at * 2 (E.D. Cal. Nov. 24, 2008) ("Moreover, a court may consider matters outside the pleadings to decide a Fed. R. Civ. P. 12(b)(3) motion without converting it to a summary judgment motion.").

[2]The precise nature of the Hilton Technology is not made clear in the motion papers, but it can be assumed that it is the same type of technology at issue in this case.

2
CASE NO.
TITLE

expenses in developing, testing, soliciting, and marketing the Technology. Weston further claims that during this February 1, 2009 meeting Manos represented that he had the authority to act on behalf of Picot with respect to this oral agreement. Weston contends that he subsequently met with both Manos and Picot in Michigan on February 1, 2010 and that both Plaintiffs at that time re-confirmed the terms of the oral agreement, including all payments to be made to Weston.

Manos and Picot dispute these assertions and claim that they developed the Technology, that Weston never performed anything other than very minor marketing and testing, and that they never entered into an oral contract with Weston to pay him anything. What is not disputed, however, is that Manos and Picot did travel to Michigan to meet with Weston on these two occasions.

Weston contends that he performed under this oral contract until 2011, working approximately 20 to 70 hours each week. He used his Sterling Heights, Michigan office to develop, market test, and showcase the Technology, solicited investors, and/or purchasers, and brought in $450,000 in investments. Weston further claims that Manos and Picot worked out of Weston's Michigan office in connection with the Technology, and that potential buyers of the Technology included General Motors, Chrysler, Hummer, and Penske Automotive (all located in Michigan). In contrast, Manos and Picot claim they had very minor interactions with Weston, and assert that they never worked out of Weston's Michigan office.

While the Parties dispute the extent to which Weston worked on the Technology, and with Manos and Picot, the Parties agree that Weston performed the vast majority of his tasks in Michigan, Ohio, and places _other than_ California. It is undisputed that Weston traveled to California on only two occasions. The first was in January 2010 to assist Manos in a demonstration of the Technology to Peter Warkentin, a potential client who at the time resided in California. Warkentin later paid for Weston to travel to Mexico to conduct a demonstration for another potential investor. The second of Weston's trips to California occurred in June 2010, when Manos and/or Picot paid for Weston to travel to Sacramento to conduct a demonstration and install prototypes of the Technology on vehicles owned by

3
CASE NO.
TITLE

ADP Holdings, Ltd., ("ADP") a California corporation.[3]  Manos estimates that he has paid Weston at least $50,000 for his work and to reimburse expenses.

On September 12, 2010, Weston met with Tracy Coats, a majority owner of HMR Hydrogen Master Rights, Ltd., ("HMR"), a Delaware company with offices in Cleveland, Ohio, and a potential purchaser of the Technology. The meeting took place in Dearborn, Michigan, during which Weston conducted a presentation of the Technology. Weston claims that he met with Coats a second time in Ohio, and on a third unspecified occasion, Weston and Coats – while both were in Dearborn, Michigan – participated in an online Skype presentation to a potential investor in China.

Starting in August 2011, Manos and Picot entered into negotiations with Coats and Carl Le Souef, a resident of Australia and part owner of HMR, for HMR to purchase the Technology. The negotiations were successful and the contract was executed in Los Angeles, California, with an effective date of December 12, 2011. Weston claims that in October 2011, Manos told Weston during a phone conversation that the Technology had been sold and that there might be a payoff for Weston sometime in the future. Weston further claims that in March 2012, Coats informed Weston that HMR had purchased the Technology for $35 million and that Manos and Picot and each already received $1.1 million from the sale. Manos and Picot do not dispute these statements.

While Manos and Picot cryptically state in their declarations that payments under the HMR sales agreement were "paid to or for the benefit of Manos and Picot in Nevada and California" (Doc. 13, p. 11), during oral argument, counsel for the Plaintiffs stated in response to a question from the Court that the payments were sent from Carl Le Souef to intellectual property trusts located in Australia and Wyoming. While Picot may have been withdrawing from the accounts while he resided in California, the facts establish that no payments were ever made directly into any account located in California.

On February 8, 2012, Weston sent an email to Manos inquiring about his share of the proceeds from the sale to HMR, and offering to drop his share to 20% in order to resolve any disputes expeditiously. Weston also offered to help Manos fight Picot – ostensibly to obtain a higher share of

---

[3] Picot and Manos had negotiated with ADP to form a joint venture to obtain a license for the Technology. Weston was aware of the joint venture and had informed the principals of ADP that he wanted to work with them. It appears that the joint venture only lasted for a few months, and was terminated on January 19, 2011.

4
CASE NO.
TITLE

the profits. Manos forwarded this email to Picot in California, but there is no evidence establishing whether Manos or Picot ever responded. Manos claims that a short time later, Weston called him and demanded $250,000 immediately, and threatened to "destroy" both Manos and Picot if he was not paid.[4]

Weston admits having several communications with Coats in 2010 and 2011 concerning the Technology, the HMR sales contract, and Weston's "concerns about that transaction." (Doc. 9-1, ¶ 7). At some point between March 14, 2012 and May 7, 2012, Weston submitted to HMR a declaration, which he signed under penalty of perjury and dated as of March 14, 2012. (Doc. 15, Ex. A). The declaration detailed Weston's oral contract with Manos and Picot, stated that Weston knew the electrolyte formula,[5] and that to date, Manos and Picot had refused to pay Weston his 1/3 share from the proceeds of the sale of the Technology to HMR. Once HMR received this declaration, it ceased making any payments under the sales contract.

Manos and Picot received an email dated March 20, 2012 from William Dobreff, Weston's attorney in Michigan, demanding that Manos and Picot honor the terms of their oral agreement with Weston, and make all payments immediately. Dobreff stated that failure to make these payment would result in Weston filing suit against both Manos and Picot. While the Court has not been made aware of any causes of action filed by Weston, the present lawsuit was filed on March 23, 2012.

## II.

## **The Governing Law**

A motion to dismiss for lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2), and a district court's determination whether to exercise personal jurisdiction is a question of law. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). See also Dole Food, Inc. V. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). Where, as here, the

---

[4] Neither Manos nor Picot ever paid Weston the requested $250,000.

[5] Manos and Picot contend that Weston also informed University of Michigan Professor Pravansu Mohanty, who had been working with all of the Parties on the Technology, that Manos had disclosed the electrolyte formula to Weston.

5

CASE NO.
TITLE

motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). A "prima facie" showing means that the plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003); Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995). Uncontroverted allegations in the plaintiff's complaint must be taken as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). Although the plaintiff cannot simply rest on the bare allegations of the complaint, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. Schwarzenegger, 374 F.3d at 800.

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, "is coextensive with federal due process requirements, [so] the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger, 374 F.3d at 800-01. Federal due process requires that a nonresident defendant have "certain minimum contacts" with the forum state of such a nature that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)). This constitutional test may be satisfied by showing that (1) the defendant has "substantial" or "continuous and systematic" contacts with the forum state – *i.e.* "general jurisdiction," or (2) there is a strong relationship between the defendant's forum contacts and the cause of action – *i.e.* "specific jurisdiction." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th Cir. 1986). See also Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995).

Personal jurisdiction must be present for "each claim asserted against a defendant." Action Embroidery Corp. v. Atlanta Embroidery, Inc., 368 F.3d 1174, 1180-81 (9th Cir. 2004). However, a court may "assert pendent personal jurisdiction over a defendant with respect to a claim . . . so long as

6
CASE NO.
TITLE

1 it arises out of a common nucleus of operative facts with a claim in the same suit over which the court
2 does have personal jurisdiction." Id. at 1180.

### III.

### **There Is No Specific Jurisdiction Over Weston**

The Plaintiffs assert only specific jurisdiction over Weston as to each claim.[6] For a court to have specific personal jurisdiction over a non-resident defendant, a three-part test must be satisfied: (1) the defendant must have purposefully directed specific activities toward the forum state; (2) the plaintiff's claim must arise out of or relate to those specific forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Schwarzenegger, 374 F.3d at 802. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1985) (citing International Shoe Co., 326 U.S. at 319, 66 S. Ct. at 159).

A.  The Declaratory Judgment Claim.

In Count I of their Complaint, Manos and Picot assert that Weston is claiming a right to a one-third share in the profits from the sale of the Technology to HMR, as well as salary/expense reimbursement payments in the amount of $20,000 per month from March 2009 going forward. Manos and Picot further allege that Weston is making these demands based on a purported oral contract between the Parties although Manos and Picot assert that no such contract ever existed. They request a declaratory judgment both that no oral contract exists, and that Weston is not entitled to any payments under the HMR sales contract.

The Plaintiffs have failed to satisfy the first two prongs of the specific jurisdiction test as to this claim. The Plaintiffs' declaratory judgment claim centers on whether an oral contract was formed between the Parties. All of the evidence submitted concerning that issue clearly establishes that all relevant events occurred solely in Michigan. Weston avers in his declaration that Manos and Picot traveled to Michigan on at least two occasions in 2009 and 2010, and that during those visits, the oral

---

[6] Because the Court concludes that it lacks personal jurisdiction over Weston as to either claim, the Court need not consider whether pendent personal jurisdiction exists.

7

CASE NO.
TITLE

agreement to pay Weston was formed. Although Manos and Picot aver that no such agreement was formed, they do not dispute that they traveled to Michigan on these and other occasions, nor do they dispute that they engaged in communications with Weston during these visits. While the content of these conversations may be contested, the fact remains that they occurred in Michigan, not California. Moreover, Manos and Picot have not presented any evidence that any additional conversations, (in person or over the phone), emails, or any other communications that may be relevant to the question of whether an oral contract exists, took place in California.

Manos and Picot concede that if a contract was formed, it was not formed in California. They instead focus on Weston's two trips to California in January and June of 2010, and argue that these trips establish that Weston attempted to perform under the terms of the contract, and, therefore, purposely carried on activities related to the oral agreement to California. Yet the Plaintiffs' own declarations belie this argument. Manos and Picot both declared, under penalty of perjury, that the work Weston conducted in California on these two occasions was extremely minor, and was not part of any alleged oral agreement. Rather, Manos and Picot averred that Weston's work in California was merely "side work" for which Weston was separately compensated. See Doc. 16, ¶¶ 20-21, 27, 32, 35-36. It is disingenuous to simultaneously argue that Weston's visits to California were not part of any oral contract (thereby relieving Manos and Picot of any potential liability to Weston for 1/3 of the sales proceeds from the HMR sales contract), while also arguing that these same trips constituted performance under the oral contract for purposes of establishing personal jurisdiction.

Moreover, the evidence submitted concerning any alleged performance under the oral contract overwhelmingly establishes that the performance - if any - took place almost entirely in Michigan and Ohio. Two short trips to California to perform discrete tasks at the request of Manos, which Manos and Picot claim were not related to any oral agreement, are simply not sufficient to establish that Weston purposely directed any activities to California. Further, to the extent Weston has attempted to enforce the alleged oral contract, those attempts originated in Michigan, and targeted a Nevada resident.[7]

---

[7] Weston emailed Manos in Nevada seeking his share of the HMR sales contract, and subsequently telephoned Manos in Nevada demanding payment. (Doc. 16, ¶¶ 49-51, Ex. B). In addition, Weston's Michigan attorney, Bill Dobreff, emailed both Manos and Picot on March 20, 2012, demanding that the Plaintiffs pay Weston under the terms of the alleged oral contract (Doc. 16, Ex. C).

8
CASE NO.
TITLE

Simply put, there is nothing before the Court to suggest that anything relating to the existence – or non-existence – of any oral agreement between Manos, Picot, and Weston took place in California.[8] If anything, Weston's contacts with California as to this claim appear to have been random, fortuitous, or attenuated, see e.g. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985). As such, the Court finds, as a matter of law, that Weston did not intentionally direct any specific activities towards California with respect to the existence of an oral contract. The Court further finds that the Plaintiffs' claim for declaratory judgment does not arise out of activities Weston specifically directed towards California. The Plaintiffs have failed to establish their prima facie case and the Court therefore lacks personal jurisdiction over Weston with respect to the declaratory judgment claim.[9]

B. The Tortious Interference Claim.

In Count II, Manos and Picot allege that Weston tortiously interfered with their sales contract with HMR, resulting in HMR ceasing all payments under the contract and causing harm to Manos and Picot in the form of lost profits.

To establish personal jurisdiction over a non-resident defendant in a tort claim, a plaintiff generally must show that the defendant "expressly aimed" his tortious conduct at the forum state. Calder v. Jones, 465 U.S. 783, 789, 104 S. Ct. 1482, 1487 (1984). A plaintiff must show that the defendant committed an intentional act, expressly aimed that act at the forum state, and thereby caused harm that the defendant knew would likely be suffered in the forum state. See Calder, 465 U.S. at 788–90; 104 S. Ct. at 1486-87; CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1111 (9th

---

While one of the recipients of the email was a resident of California (Picot), this lone demand letter is not sufficient to create personal jurisdiction over Weston in California. See Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1208 (9th Cir. 2006); Jacobsen v. Katzer, 2006 WL 3000473 at * 5 (N.D. Cal. Oct. 20, 2006).

[8]While it is undisputed that the HMR sales contract was executed in California, Manos and Picot cannot rely on that agreement to establish personal jurisdiction over Weston as it is equally undisputed that Weston was in no way involved in the negotiations and/or formation of that contract.

[9]This declaratory judgment claim centers around the existence/enforcement of an oral contract. In breach of contract cases, the Ninth Circuit inquires "whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s] [a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). For the reasons discussed above, the Plaintiffs cannot satisfy this standard as well. There is simply insufficient evidence that Weston purposefully availed himself of conducting activities or consummating any contract in California.

9
CASE NO.
TITLE

1 Cir. 2004). "In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities'
2 at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions
3 were felt, whether or not the actions themselves occurred within the forum." Yahoo! Inc. v. La Ligue
4 Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (citations omitted).

5        The Plaintiffs have failed to submit sufficient evidence to show that Weston expressly aimed his
6 actions at California – or at any individual resident of California. The alleged intentional acts taken by
7 Weston with respect to this claim are limited to: (1) Weston's communications with Coats about the
8 HMR sales contract and Weston's purported entitlement to a share of the profits; (2) Weston's
9 statements to University of Michigan Professor Pravansu Mohanty to the effect that Weston knew the
10 electrolyte formula; and (3) the March 14, 2012 declaration from Weston to HMR. All of these acts
11 originated in Michigan and were directed towards individuals and/or entities residing in either Michigan
12 or Ohio. None of these intentional acts were committed in California, or aimed at California. They
13 were aimed at Ohio entities.[10]

14        Manos and Picot hang their hat on the fact that when Weston engaged in these acts, HMR ceased
15 making payments under the HMR sales contract, and a resident of California (Picot) was no longer able
16 to enjoy the benefit of those payments. In other words, the Plaintiffs argue that Weston should have
17 known that HMR would stop paying under the contract, and that a resident of California would then
18 suffer harm sufficient to establish personal jurisdiction.

19        The evidence submitted simply does not support this argument. Manos and Picot admit that the
20 sales contract with HMR did not require payment to be made in California. In fact, the payments that
21 were made under the sales contract were transmitted to intellectual property trusts located in Australia
22 and Wyoming.[11] Thus, to the extent any harm was felt by Weston's actions, it would have been felt in
23 Australia and Wyoming. To be sure, Picot may have subsequently been unable to access these funds

---

[10] The Plaintiffs also cite to Weston's communications with Manos and Picot in early 2012 where Weston demanded his share of the proceeds under the HMR sales contract. First, these communications were directed solely to Manos - a resident of Nevada. Second, there is no evidence, and the Plaintiffs have made no argument, that these communications had any impact on the HMR sales contract, or influenced HMR to cease payments under the contract.

[11] It bears noting that neither Manos nor Picot have submitted a copy of the HMR sales contract, or explained where performance of the contract was to take place.

10
CASE NO.
TITLE

1 in California once payments ceased, but this collateral effect of Weston's actions in Michigan is far too
2 attenuated for the Court to hold that Weston deliberately directed actions at California, with the intent
3 that harm would occur in California. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir.
4 2006) (holding that to establish personal jurisdiction under Calder, "'something more' is needed in
5 addition to a mere foreseeable effect. . . . Thus, the determinative question is whether [the defendant's]
6 actions were 'something more' – precisely, whether his conduct was expressly aimed at California . . .
7 . .") (quoting Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). The
8 Court concludes that Weston's actions were not expressly aimed at California and, regardless of possible
9 foreseeable effect, are insufficient to establish jurisdiction.[12]

### III.

### Conclusion

Having found that the Court is without personal jurisdiction over Defendant Dean D. Weston as to both claims, his Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (Doc. 9) is GRANTED. The Plaintiffs have not argued as an alternative to dismissal to have this case transferred to any other district – indeed, they have opposed transfer throughout this litigation. The Defendant has also moved to dismiss for improper venue, and alternatively moved to transfer the case to the Eastern District of Michigan. However, it is the Plaintiffs' case, and the Plaintiffs may not wish to pursue the litigation elsewhere, or, if they do, they should have the option to choose the new forum. The Court will therefore decline to enter an order of transfer, and the Defendant's motions to dismiss for improper venue and to transfer to the Eastern District of Michigan (Docs. 9-10) are DENIED AS

---

[12] The cases cited by the Plaintiffs involved factual scenarios where the defendant directly targeted residents of California, or expressly intended to interfere with business operations in California. See, e.g., Yahoo! Inc., 433 F.3d 1199 (defendants filed lawsuit in France and obtained orders from the French court directing Yahoo! to perform significant acts in California); Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 233 F.3d 1082 (9th Cir. 2006) (defendant sent letter to internet domain registrar with express intent to interfere with plaintiff's California business operations); Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062 (9th Cir. 1990) (defendant made false representations to a California insurance company with the intent of having the California insurer issues benefits to the wrong beneficiary). See also Brainerd v. Governors of the University of Alberta, 873 F.2d 1257 (9th Cir. 1989) (defendant made defamatory statement about plaintiff to plaintiff's Arizona employer, thereby establishing personal jurisdiction in Arizona). Rather than support the Plaintiffs' position, these cases demonstrate that the Ninth Circuit requires "something more than just a foreseeable effect to conclude that personal jurisdiction is proper." Pebble Beach, 453 F.3d at 1158 (internal quotations omitted).

United States District Court
For the Northern District of California

MOOT. The Clerk is directed to enter judgment dismissing this case for lack of in personam jurisdiction, to terminate all other pending motions, and to close the file.

**IT IS SO ORDERED.**

Dated: August 20, 2012

_____
UNITED STATES DISTRICT JUDGE

CASE NO.
TITLE