```
  1                IN THE UNITED STATES DISTRICT COURT

  2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

  3                        SAN JOSE DIVISION

  4
      PICOT, ET AL,                    )   CV-12-1939-EJD
  5                                     )
                      PLAINTIFF,        )   SAN JOSE, CALIFORNIA
  6                                     )
              VS.                       )
  7                                     )   AUGUST 2, 2012
      WESTON,                           )
  8                                     )
                      DEFENDANT.        )   PAGES 1-23
  9   _____      )

 10

 11                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE WM. TERRELL HODGES
 12                UNITED STATES DISTRICT JUDGE

 13

 14   A P P E A R A N C E S:

 15

 16   FOR THE PLAINTIFF:     LAW OFFICE OF THOMAS M. BOEHM
                             BY:  THOMAS BOEHM
 17                          2 NORTH SANTA CRUZ AVE, STE 211
                             LOS GATOS, CA 95030
 18

 19

 20   FOR THE DEFENDANT:     LAW OFFICE OF DAVID H. SCHWARTZ
                             BY:  DAVID SCHWARTZ
 21                          ONE MARKET PLAZA
                             STEUART TOWER, STE 1600
 22                          SAN FRANCISCO, CA 94105

 23

 24

 25   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
```

```
 1     SAN JOSE, CALIFORNIA                      AUGUST 2, 2012

 2                      P R O C E E D I N G S

 3            (WHEREUPON, COURT CONVENED AND THE FOLLOWING

 4     PROCEEDINGS WERE HELD:)

 5            THE COURT:  THE NEXT AND LAST CASE IS THAT OF PICOT

 6     AND MANOS AGAINST WESTON.

 7            MR. BOEHM:  GOOD AFTERNOON, JUDGE.  THOMAS BOEHM FOR

 8     PLAINTIFFS.

 9        WE ARE, OF COURSE, OPPOSING THE MOTION.

10            MR. SCHWARTZ:  DAVID SCHWARTZ APPEARING FOR DEFENDANT

11     DEAN WESTON, YOUR HONOR.

12            THE COURT:  LET ME HEAR FROM THE PLAINTIFF FIRST WITH

13     RESPECT TO THIS MOTION TO DISMISS FOR LACK OF PERSONAL

14     JURISDICTION.

15        THE DEFENSE HAS BROUGHT EVIDENCE AND I'VE READ THE

16     DECLARATIONS OF MR. MANOS AND MR. PICOT WHICH YOU SUBMITTED

17     ABOUT THIS JURISDICTIONAL ISSUE.

18        IT APPEARS MR. WESTON MADE TWO TRIPS TO CALIFORNIA ON TWO

19     DIFFERENT OCCASIONS, EACH ABOUT A WEEK IN DURATION.

20        IT'S NOT CLEAR TO ME EXACTLY HOW HIS ENDEAVORS ON THOSE

21     TWO OCCASIONS RELATED TO THE TORTIOUS INTERFERENCE THAT'S

22     CLAIMED IN THE CASE.  BUT NEVERTHELESS HE CAME TO CALIFORNIA

23     TWICE.

24        WHAT ELSE HAS MR. WESTON DONE?  LET ME BE A BIT MORE

25     GENERAL BEFORE I RESPOND TO YOUR SPECIFIC QUESTION.
```

1      OUR COMPLAINT WAS PLED IN STATE COURT WHERE THE PLEADING

2    REQUIREMENTS ARE SLIGHTLY MORE LENIENT.

3      THERE'S ONE FOR DECLARATORY RELIEF THAT MY CLIENTS TAKE

4    UP THE POSITION THAT THE ORAL AGREEMENT THAT MR. WESTON

5    CONTENDS FOR DOES NOT EXIST.

6      AND SECONDLY, THERE'S THE TORT CLAIM OF INTERFERENCE WITH

7    THE SALES AGREEMENT, AN ENTIRELY DIFFERENT CONTRACT, MY CLIENTS

8    ENTERED LAST YEAR THAT WE REFERRED TO IN THE BRIEFS THAT

9    REFERRED TO HMR HYDROGEN MASTER RIGHTS.

10      NOW IF YOU LOOK AT JURISDICTION UNDER EITHER OF THOSE

11    CLAIMS, IT'S APPROPRIATE FOR THE DECLARATORY RELIEF CLAIM IF

12    MR. WESTON HAS PURPOSELY AVAILED HIMSELF OF THE PRIVILEGE OF

13    DOING BUSINESS IN CALIFORNIA OR IF HE HAS IN THE ALTERNATIVE,

14    ENTERED INTO A CONTINUING OBLIGATIONS WITH A CALIFORNIA

15    RESIDENT.

16      NOW WHEN WE LOOK AT THE DECLARATORY RELIEF CLAIM A BIT

17    FURTHER, THE TRIPS TO CALIFORNIA ARE IMPORTANT TO THE

18    DECLARATORY RELIEF CLAIM NOT BECAUSE BY THEMSELVES THEY CREATE

19    THE CONTRACT THAT WESTON IS ADVOCATING, BUT BECAUSE THEY SHOW A

20    CONTINUING RELATIONSHIP, ONGOING OBLIGATIONS.

21      IF THE TRIER OF FACT ULTIMATELY WERE TO FIND THAT THE

22    ORAL AGREEMENT EXISTS, MR. WESTON WOULD BE FOUND TO HAVE

23    PERFORMED IT IN SUBSTANTIAL PART HERE IN CALIFORNIA.

24      IF ON THE OTHER HAND THE TRIER OF FACT DETERMINES THAT

25    THERE IS NO SUCH CONTRACT, JURISDICTION WOULD STILL LIE HERE

1    BECAUSE THE UNDERLYING OBLIGATIONS THAT CAME OUT OF A SEPARATE

2    RELATIONSHIP BETWEEN THE PARTIES, THAT IS WE, AS WE POINT OUT

3    IN THE OPPOSITION PAPERS AND IN THE DECLARATIONS, MR. WESTON

4    DID HAVE A RELATIONSHIP WITH BOTH OF THE PLAINTIFFS THAT DID

5    SPECIFICALLY CONCERN FROM ROUGHLY NOVEMBER OR DECEMBER OF 2009

6    GOING FORWARD, WORKING ON THIS HYDROGEN RELATED TECHNOLOGY.

7           SO HIS ACTIONS FIRST IN JANUARY OF 2010 TO GO TO SOUTHERN

8    CALIFORNIA IN JUNE OF 2010 TO COME TO SACRAMENTO WHICH OF

9    COURSE IS NORTHERN CALIFORNIA, BEAR DIRECTLY ON BOTH THE

10   EXISTENCE AND IF IT EXISTS THE PERFORMANCE OF THE ORAL

11   AGREEMENT THAT HE CONTENDS FOR AND THAT MY CLIENTS ARE SEEKING

12   A DECLARATION DOES NOT EXIST.

13          THEY DO NOT -- THOSE TRIPS DO NOT RELATE TO I CONCEDE

14   THEY DO NOT SUPPORT JURISDICTION FOR THE INTENTIONAL TORT WHICH

15   MR. WESTON COMMITTED FROM MICHIGAN, BUT THERE THE TEST IS

16   DIFFERENT.

17          THERE THE TEST IS WHETHER OR NOT MR. WESTON KNOWING THAT

18   IT WOULD CAUSE HARM IN CALIFORNIA TO A CALIFORNIA RESIDENT

19   ENGAGED IN AN INTENTIONAL ACTION DECIDED TO DISRUPT THE HMR

20   SALES AGREEMENT.  AND CLEARLY HE DID.

21          AND WHAT WE'RE DEALING WITH ON THIS MOTION OF COURSE THE

22   STANDARD OF PROOF OR THE LEVEL OF PERSUASION IS MERELY THAT OF

23   A PRIMA FACIE CASE.  THAT IS IF THE ALLEGATIONS, THE TESTIMONY,

24   THE CONTENTIONS OF THE PLAINTIFFS ARE BELIEVED, DULY

25   ESTABLISHED THAT THERE WAS A SUFFICIENT MINIMUM CONTACTS WITH

1   CALIFORNIA TO PERMIT IT TO BE REASONABLE FOR THIS COURT TO

2   EXERCISE JURISDICTION.

3           THE FIRST TWO PARTS OF THOSE I DISCUSSED.  ONCE THOSE ARE

4   FULFILLED EITHER AS TO THE TORT OR AS TO THE CONTRACT CLAIM,

5   THEN THE CONCEPT OF PENDING JURISDICTION COMES IN AND SAYS,

6   WELL, THESE TWO CLAIMS ARE SO CLOSELY RELATED THAT IF

7   JURISDICTION EXISTS FOR EITHER ONE BUT NOT THE OTHER, THE ONE

8   FOR WHICH IT DOESN'T EXIST CAN BE TRIED IN THE SAME ACTION

9   UNDER THE CONCEPT PENDING JURISDICTION.

10          ONCE THOSE TWO ELEMENTS ARE ESTABLISHED AS WE BELIEVE

11  THEY HAVE BEEN YOUR HONOR THEN THE BURDEN SHIFTS TO MR. WESTON

12  TO MAKE A CONVINCING AND COMPELLING CASE THAT IT WOULD BE

13  UNREASONABLE FOR HIM TO HAVE TO DEFEND HERE.

14          AND WE BELIEVE THAT HE HAS NOT DONE THAT, HE HAS NOT COME

15  CLOSE.

16          GOING BACK FOR A MOMENT TO DISCUSS A LITTLE BIT FURTHER

17  THE NOTION OF THE PRIMA FACIE CASE, IF THERE ARE CONFLICTS IN

18  THE DECLARATIONS ABOUT ANY OF THE FACTS THAT WOULD IF TRUE

19  SUPPORT JURISDICTION, RESOLUTION OF THOSE CONFLICTS GOES IN

20  FAVOR OF THE PLAINTIFFS IN AN AND A FINDING OF JURISDICTION

21  SHOULD BE UPHELD.

22          WE HAVE A NUMBER OF VERY SIGNIFICANT CONFLICTS WHICH

23  HOPEFULLY I'VE ADEQUATELY POINTED OUT IN THE BRIEF AND I WON'T

24  GO THROUGH THEM.

25          BUT ONE OF PARTICULAR IMPORTANCE TODAY IN LIGHT OF

1  YOUR HONOR'S QUESTION IS THAT IS UNDER EITHER THE PURPOSEFUL

2  AVAILMENT WHICH IS THE CONTRACT ANALYSIS OR THE EFFECTS TEST

3  WHICH IS THE TORT ANALYSIS, THE COURT HAS TO ANALYZE WHETHER OR

4  NOT THERE WAS FORESEEABLE HARM CAUSED IN THE FORUM JURISDICTION

5  BY THE DEFENDANT EVEN FROM AFAR.

6          THE COURT:  WELL, LET ME ASK ABOUT THAT FOR A MOMENT.

7       THE CLAIM OF TORTIOUS INTERFERENCE WITH RESPECT TO THE I

8  THINK YOU CALLED IT THE SALES AGREEMENT OR SEAMS CONTRACT,

9  WHERE WAS THAT AGREEMENT TO BE PERFORMED?

10      WE ARE NOT TOLD IN THE PAPERS, AS FAR AS I CAN SEE, ANY

11  OF THE DETAILS OF WHAT THAT AGREEMENT PROVIDED FOR OR REQUIRED.

12  DID IT REQUIRE PAYMENTS TO BE MADE IN CALIFORNIA?

13          MR. BOEHM:  WELL, IT DIDN'T REQUIRE THEM, YOUR HONOR,

14  BUT MR. PICOT WAS A RESIDENT OF CALIFORNIA AT THE TIME OF THE

15  EXECUTION OF THAT AGREEMENT.

16      THE OTHER PARTIES TO -- AND HE WAS TO RECEIVE PAYMENTS IN

17  CALIFORNIA.  THE OTHER PARTIES TO THAT AGREEMENT, THAT IS THE

18  BUYER OF HYDROGEN MASTER RIGHTS, HMR, IS A NEWLY CREATED

19  DELAWARE CORPORATION IT WAS CREATED IN AUGUST OF LAST YEAR

20  SPECIFICALLY TO BE THE BAYER UNDER THIS ENTITY.

21      THE PRINCIPLES BEHIND IT ARE AN INDIVIDUAL BY THE NAME OF

22  CARL LASOUVE, I BELIEVE I'M PRONOUNCING THAT CORRECTLY, WHO IS

23  A RESIDENT OF AUSTRALIA.

24      ANOTHER PRINCIPAL IS A GENTLEMAN MENTIONED IN THE BRIEFS

25  BY THE NAME OF TRACEY COATES.  MR. COATES IS A RESIDENT OF

1    OHIO.  THE CONTRACT WAS NEGOTIATED IN CALIFORNIA, IT WAS SIGNED

2    IN CALIFORNIA.  WHERE IT IS TO BE PERFORMED ON THE BUYER'S SIDE

3    IN TERMS OF THE VARIOUS OBLIGATIONS THAT THEY HAVE UNDERTAKEN

4    IN THAT AGREEMENT IS NOT SPECIFIED.  IT'S ENTIRELY UP TO THEM,

5    IT COULD BE ANYWHERE.

6         THEY ARE NOT TIED TO PERFORM ANY OF THEIR OBLIGATIONS AND

7    ANY PARTICULAR LOCALE.  WHAT THEY ARE REQUIRED TO DO IS WHEN

8    THEY MEET CERTAIN MILESTONES IF YOU WILL, THEY HAVE TO MAKE

9    PAYMENTS.  SOME OF THOSE MILESTONES ARE MEASURED BY CALENDAR,

10   OTHERS ARE MEASURED BY PROGRESS.

11           THE COURT:  WELL, THAT WAS PRECISELY MY QUESTION.

12        WHERE AND TO WHOM WERE THOSE PAYMENTS REQUIRED TO BE MADE

13   UNDER THE TERMS OF THE CONTRACT?

14           MR. BOEHM:  THEY WERE COMING, YOUR HONOR, TO TWO

15   SEPARATE INTELLECTUAL PROPERTY TRUSTS.

16        ONE SPECIFICALLY CREATED FOR THE BENEFIT OF MR. MANOS.  AND

17   THE OTHER ONE SPECIFICALLY CREATED FOR THE BENEFIT OF

18   MR. PICOT.

19        IN BOTH INSTANCES THE INTELLECTUAL PROPERTY TRUSTS WERE

20   BASICALLY PASS-THROUGH'S WHERE EACH RESPECTIVE BENEFICIARIES OF

21   EACH TRUST WILL RECEIVE THE MONEY IN THEIR PLACE OF RESIDENCE.

22           THE COURT:  WHERE WERE THOSE TRUSTS ESTABLISHED?

23           MR. BOEHM:  IN WYOMING AND AUSTRALIA.        BUT

24   THE JURISDICTION OF THE CREATION OF THE TRUST DOESN'T AFFECT

25   WHERE THE MONEY WENT WHICH IS THE IMPORTANT THING HERE.

1            AND WHEN MR. WESTON DISRUPTED THE SALES AGREEMENT WITH

2     HMR, THE PAYMENTS THAT WERE COMING TO MR. PICOT IN CALIFORNIA

3     AND THE PAYMENTS THAT WERE COMING TO MR. MANOS IN NEVADA

4     STOPPED.

5            SO THAT'S THE HARM AT LEAST AS TO MR. PICOT IN

6     CALIFORNIA, THAT'S THE HARM IN THE JURISDICTION THAT WAS

7     FORESEEABLE UNDER THE CALDER EFFECTS TEST BY REASON OF

8     MR. WESTON DOING WHAT HE DID, WE CONTEND HE GAVE A FALSE

9     DECLARATION TO HMR IN WHICH HE ASSERTED THAT HE HAD RECEIVED

10    THE SECRET TO THE FORMULA THAT'S ESSENTIAL TO THE TECHNOLOGY

11    THAT WAS SOLD.

12           HE HAD RECEIVED THAT INFORMATION ABOUT THE SECRET FORMULA

13    FROM MR. MANOS WHEN IN FACT THAT IS NOT TRUE.  THEN HE ASSERTED

14    THE ORAL AGREEMENT TO HMR WHICH WE CONTEND DOESN'T EXIST

15    CLAIMING THAT HE WAS AN OWNER AND ENTITLED TO THE HAIR OF MONEY

16    THAT DISRUPTED THE MONEY FLOW TO THIS JURISDICTION.

17               THE COURT:  WELL, IT MAY BE A FINE LEGAL ISSUE THERE

18    AS TO WHETHER OR NOT ASSUMING THERE WAS A TORTIOUS INTERFERENCE

19    WHICH CAUSED A BREACH OF THE CONTRACT, WHETHER THAT BREACH

20    OCCURRED WHEN PAYMENT WAS NOT MADE TO THE TRUST THAT YOU

21    MENTIONED IN WYOMING AND AUSTRALIA.

22           AND THE FACT THAT MR. PICOT WAS INJURED AT THE END OF THAT

23    CHAIN MAY NOT BE LEGAL SIGNIFICANCE WITH RESPECT TO THE

24    QUESTION OF THE INVOLVEMENT OF MR. WESTON IN THE AFFAIRS OF THE

25    CALIFORNIA.  THAT'S THE ONLY REASON I ASKED THAT.

1          MR. BOEHM:  JUDGE, IF I MAY COMMENT ON YOUR

2   OBSERVATION, THE PASSAGE OF MONEY THROUGH THE TRUST WAS

3   BASICALLY -- MAY BE CALLED AN EVENT, BUT IT WAS NOT A

4   SIGNIFICANT EVENT.

5          THE MONEY WAS DESTINED FOR MR. PICOT IN CALIFORNIA AND THE

6   ORDINARY COURSE OF THE SALES AGREEMENT HMR WOULD HAVE PAID

7   MONEY WHICH WOULD HAVE COME TO CALIFORNIA.

8          THE RESPONSE IN THE REPLY BRIEF AS TO THE FACT THAT

9   MR. PICOT HAS BEEN DAMAGED IN CALIFORNIA WHICH IS

10  JURISDICTIONALLY SIGNIFICANT HARM, IS THAT, WELL, WE HAVEN'T

11  CITED A CASE TO YOUR HONOR THAT SAYS WHEN YOU HAVE LESS MONEY

12  TO SPEND IN CALIFORNIA THAT THAT'S DAMAGED SOMEHOW.

13         BUT THAT'S EXACTLY WHAT DAMAGE IS.  HAVING LESS MONEY

14  MEANS YOU'RE DAMAGED.

15         NOW THE OTHER PART OF THE HARM THAT I WOULD LIKE TO POINT

16  OUT TO YOU THAT DOES OCCUR IN CALIFORNIA, IS SOME OF THE DAMAGE

17  TO MR. PICOT AND MR. MANOS FLOWING FROM MR. WESTON'S TORT IS

18  THE IDEA THAT NOW MY CLIENTS ARE REQUIRED TO PROVE TO HMR THAT

19  MR. WESTON'S ASSERTIONS OF OWNERSHIP AND KNOWLEDGE OF FORMULA

20  ARE FALSE.

21         SO THAT WE ARE NOT IN THE POSITION OF BEING IN BREACH OF

22  THE SALES AGREEMENT OR AT LEAST THE WARRANTIES AND IN THE SALES

23  AGREEMENT.  SO THE ATTORNEY'S FEES THAT ARE BEING INCURRED ARE

24  BEING INCURRED PARTLY IN CALIFORNIA.

25         NOW, CONCEIVABLY MY CLIENTS COULD HAVE HIRED AN ATTORNEY

1    IN MICHIGAN.  THEY COULD HAVE BROUGHT THE SUIT IN MICHIGAN, BUT

2    THE HARM WOULD BE FELT IN CALIFORNIA AT LEAST IN TERMS OF THE

3    TWO ELEMENTS WE KNOW ABOUT TODAY IN WAY OF DAMAGE WHICH IS THE

4    LACK OF PAYMENTS FROM HMR AND THE EXPENDITURE OF ATTORNEY'S

5    FEES THAT'S BEING APPROXIMATELY CAUSED BY THIS TORT IN ORDER TO

6    SET THINGS RIGHT WITH HMR AND SHOW THAT THOSE WARRANTIES WERE

7    IN BREACH.

8         THOSE ATTORNEYS FEES ARE COMING IN SUBSTANTIAL PART FROM

9    CALIFORNIA AGAIN THAT'S ANOTHER COMPONENT OF THE JURISDICTIONAL

10   HARM.

11        BUT BEFORE YOUR HONOR ASKED HIS QUESTION THE POINT I WAS

12   GOING TO MAKE IS ON THE PRIMA FACIE LEVEL WE HAVE SHOWN THIS

13   KIND OF HARM.

14        THE ARGUMENT IS THAT WELL, LEGALLY A LACK OF MONEY ISN'T

15   DAMAGE BUT IN FACT IT IS.  IT'S ALSO ACTUALLY CONCEDED

16   FACTUALLY BECAUSE IN THE COMPLAINT IN STATE COURT ACTION WE

17   ALLEGE THAT THE DAMAGE OCCURRED IN CALIFORNIA AND WAS

18   APPROXIMATELY CAUSED BY MR. WESTON'S TORT.

19        ALSO IN THE DECLARATIONS OF MR. PICOT ON THE MOTION WE

20   FACTUALLY SET OUT THOSE DAMAGES.  AND THESE TWO, THE ALLEGATION

21   IN THE COMPLAINT AND THE FACTUAL SHOWING BY MR. PICOT ARE NOT

22   REBUTTED OR CONTROVERTED, AND THEREFORE THE COURT MUST TAKE

23   THOSE AS ACCEPTED.

24        THE OTHER POINT I WANTED TO MAKE ON THE DAMAGE ISSUE IS

25   THAT IN THE NINTH CIRCUIT THE LAW FOLLOWS THE RULE THAT ONLY A

```
 1    PART OF THE HARM HAS TO OCCUR HERE.  NOT ALL OF IT.  SOME OF IT

 2    CAN OCCUR IN OTHER JURISDICTIONS.  SOME OF IT HERE OCCURRED IN

 3    NEVADA TO MR. MANOS.

 4         BUT THE NINTH CIRCUIT IS VERY, VERY CLEAR THAT AS LONG AS

 5    THERE IS HARM HERE, THE BRUNT OF THE HARM DOES NOT HAVE TO

 6    OCCUR HERE.  NOT THE MAJORITY, NOT ALL OF IT, NOT EVEN AS THE

 7    CASE IS USED, THE WORD BRUNT.

 8         SO WHAT YOU HAVE IS AN INTENTIONAL TORT PERPETRATED FROM

 9    MICHIGAN WITH KNOWLEDGE THAT IT WOULD CAUSE DAMAGE TO MR. PICOT

10    IN CALIFORNIA WHICH IT HAS IN FACT DONE, AND THAT MAKES OUT A

11    JURISDICTION FOR THE TORT CLAIM.

12              THE COURT:  ALL RIGHT.

13         LET ME HEAR FROM THE DEFENSE, IT'S A DEFENSE MOTION, THEN I

14    WILL HEAR FROM THE PLAINTIFF.

15              MR. SCHWARTZ:  THANK YOU, YOUR HONOR.

16              THE COURT:  WHAT DO YOU SAY TO THE POINT THAT THERE'S

17    BEEN AN INTENTIONAL TORT HERE THAT CAUSED HARM TO MR. PICOT IN

18    CALIFORNIA SO THE THAT LONG ARM JURISDICTION WOULD BE AVAILABLE

19    UNDER INTERNATIONAL PROGENY OF ALL THE JURISDICTIONAL ISSUES.

20              MR. SCHWARTZ:  WELL, IN THE NINTH CIRCUIT, IN THE

21    CASES ATTEMPTING TO INTERPRET AND UNDERSTAND THE SUPREME COURT

22    DECISION IN CALDER, THE NINTH CIRCUIT HAS REPEATEDLY SAID THAT

23    THE EFFECTS PART OF THIS TEST SHOULD NOT BE GIVEN PROMINENCE.

24    AND THE ISSUE WAS THE CONDUCT TARGETED THAT THE FORUM STATE,

25    NOT WHERE THEY ARE FORESEEABLE EFFECTS OCCURRING IN THE FORUM
```

1    STATE.

2        SO IN MJG ENTERS VERSUS CLOYD CITED BY THE PLAINTIFF, 210

3    U.S. DISTRICT COURT LEXUS 102579 IT'S A DISTRICT COURT CASE, IT

4    SAID ACTS THAT HAVE MERELY FORESEEABLE EFFECTS IN A FORUM STATE

5    ARE INSUFFICIENT.

6        THE PEBBLE BEACH DECISION OF THE NINTH CIRCUIT THE COURT

7    SAID HOWEVER, REFERRING TO THE CALDER TEST AS AN EFFECTS TEST

8    CAN BE MISLEADING.

9        FOR THIS REASON WE HAVE WARNED COURTS NOT TO FOCUS TOO

10   NARROWLY ON THE TEST'S THIRD PRONG, THE EFFECTS PRONG HOLDING

11   THAT SOMETHING MORE "IS NEEDED IN ADDITION TO A MERE

12   FORESEEABLE EFFECT."

13       NOW, WHAT IS THE CONDUCT THAT'S IN THE PAPERS BEFORE THE

14   COURT?

15       THE CONDUCT IN THE PAPERS BEFORE THE COURT RELATING TO

16   THE TORTIOUS INTERFERENCE CLAIM IS THAT MR. WESTON SPOKE WITH

17   INDIVIDUALS IN MICHIGAN AND POSSIBLY IN OHIO, ONE OF THEM BEING

18   A PRINCIPAL AT HMR.  AND BY DISCUSSING THAT HE CAUSED HMR TO

19   STOP PAYMENTS BEING MADE.

20       THERE'S NOTHING IN THE RECORD ABOUT WHERE THE PAYMENTS

21   ARE TO BE MADE OR THERE'S A REQUIREMENT FOR THEM TO BE MADE IN

22   CALIFORNIA OR ANY PLACE ELSE.  WE'VE HEARD FROM COUNSEL THAT

23   THEY WERE TO BE MADE TO FOREIGN TRUSTS WHICH THEN DISTRIBUTED

24   THEM.

25       BUT I WANT TO POINT OUT THAT IF MR. PICOT OR FOR THAT

1  MATTER, MR. MANOS HAD A HOUSE IN FLORIDA AND WERE USING SOME OF

2  THIS MONEY TO FURNISH THIS HOUSE OR PAY ITS MORTGAGE, WOULD

3  THAT, AND NOW THEY DON'T HAVE THAT MONEY, WELL THEN THERE WOULD

4  BE AN EFFECT IN FLORIDA.  WOULD THAT VEST PERSONAL JURISDICTION

5  IN FLORIDA ON THIS CASE?  IT'S ADMITTED IT WOULD NOT.

6       AND THAT'S A PURELY VOLUNTARY ACT ON THE PART OF

7  PLAINTIFFS TO DECIDE WHERE THEY INTEND THEIR MONEY.

8       THE SAME IS TRUE AS TO THIS ISSUE THAT THEY'VE HIRED A

9  CALIFORNIA ATTORNEY.  THERE'S NOTHING IN THESE FACTS THAT

10  SUGGESTS THAT THEY WERE COMPELLED TO PURSUE ANY CLAIMS OR ANY

11  LEGAL RESPONSE BY HIRING AN ATTORNEY IN CALIFORNIA.

12       PRESUMABLY THEY WOULD, THE ISSUES WOULD BE TO HIRE AN

13  ATTORNEY IN MICHIGAN WHERE MR. WESTON RESIDES OR PERHAPS OHIO

14  WHERE HMR IS HEADQUARTERED.

15       I UNDERSTAND THAT THE CONTRACT HAS ITS OWN JURISDICTION

16  AND VENUE CLAUSE WHICH I BELIEVE IS IN NEW JERSEY, BUT THEY

17  DON'T PRESENT ANY EVIDENCE TO THE COURT AS TO WHY THIS

18  NECESSITATED THE EXPENDITURE OF LEGAL COSTS OR ANYTHING ELSE IN

19  CALIFORNIA.

20       AND PARTICULARLY, THEY SHOW NO CONDUCT BY MR. WESTON

21  TARGETING CALIFORNIA.  THE ONLY DIRECT CONDUCT BY MR. WESTON

22  AGAINST ANY OF THE PLAINTIFFS IS THAT E-MAIL TO MR. MANOS WHO

23  IS IN NEVADA AND A TELEPHONE CALL TO MR. MANOS WHO LIVES IN

24  NEVADA.

25       SO EVEN MR. -- THE ALLEGED CONTACT BY MR. WESTON IS

1  SUPPOSEDLY DIRECTLY, THREATENING TO THE PLAINTIFFS, WAS

2  DIRECTED AT A DIFFERENT STATE.

3         THE COURT:  LET'S TURN FOR A MINUTE TO COUNSEL'S

4  ARGUMENT ABOUT THE CLAIM FOR DECLARATORY RELIEF WITH RESPECT TO

5  THE EXISTENCE OR NONEXISTENCE OF AN ORAL CONTRACT WHICH THE

6  COMPLAINT ALLEGES IS BEING CLAIMED BY MR. WESTON AND THE

7  EVIDENCE THAT HE TRAVELLED TO CALIFORNIA ON TWO OCCASIONS.

8      COUNSEL SAYS IN THE ACTIVITY THAT WOULD CONSTITUTE IF THE

9  CONTRACT EXISTED, PARTIAL PERFORMANCE OF, THAT WOULD BE

10  SUFFICIENT, THEN FORMAL BASIS FOR ASSERTING PERSONAL

11  JURISDICTION OVER MR. WESTON WITH RESPECT TO THE DECLARATORY

12  JUDGMENT CLAIM?

13         MR. SCHWARTZ:  WELL, I WOULD SUBMIT NOT, YOUR HONOR.

14      THE RECORD BEFORE YOU IS UNDISPUTED THAT WHATEVER

15  CONVERSATIONS OCCURRED, THAT EITHER GAVE RISE TO AN ORAL

16  CONTRACT OR FELL SHORT OF CREATING AN ORAL CONTRACT, OCCURRED

17  IN MICHIGAN.

18      THE ONLY PHYSICAL CONTACT THAT THEY POSIT AGAINST

19  MR. WESTON WHICH HE AGREES HE DID, IS THAT HE TRAVELLED TO

20  CALIFORNIA TO INSTALL A DEMONSTRATION OF THE TECHNOLOGY IN A

21  VEHICLE FOR SOMEONE WHO DID NOT ULTIMATELY INVEST IN THIS

22  TECHNOLOGY.  HE DID IT TWICE AND NEITHER OF THEM BECAME

23  PARTICIPANTS IN THIS TECHNOLOGY.  THEY DIDN'T -- THEY ENDED UP

24  AS INVESTORS OR PURCHASERS.

25      MOST SIGNIFICANTLY, IN MR. PICOT'S DECLARATION HE SAYS

1    THAT MR. WESTON CAME TO CALIFORNIA ON BOTH OCCASIONS AT THE

2    REQUEST OF MR. PICOT AND MR. MANOS.

3          IN OTHER WORDS, THEY SAID WE NEED YOU TO COME OUT HERE TO

4    DO THIS.  AND HE CAME OUT HERE AND HE DID THAT.  AND THE

5    QUESTION I WOULD SUBMIT IS THAT IS NOT PURPOSEFUL AVAILMENT OF

6    CALIFORNIA.

7          MR. WESTON DID NOT COME TO CALIFORNIA, SIT DOWN WITH

8    MR. MANOS AND MR. PICOT AND SAY OKAY, LET'S MAKE A DEAL, LET'S

9    FORM A CONTRACT, LET'S FORM AN ENTITY, LET'S DO THIS AND THAT

10   IN CALIFORNIA THEN RUN BACK TO MICHIGAN AND SAY, YOU CAN'T

11   TOUCH ME BECAUSE I'M IN MICHIGAN.

12         IF HE PURPOSEFULLY ENTERED INTO THE BUSINESS CONTRACT IN

13   CALIFORNIA, THAT WOULD BE ONE THING.  BUT HERE HE'S JUST

14   RESPONDING TO THEIR REQUEST, AND THEY PAID HIM TO COME OUT

15   HERE.

16         SO IN FACT, HIS PAYMENT UNDER THEIR VERSION OF THE EVENTS

17   DOESN'T AMOUNT TO ANYTHING.  AND IT IS NOT PART OF THE CLAIM

18   THAT HE'S SEEKING BECAUSE HE'S BEEN COMPENSATED FOR THAT

19   INDEPENDENT OF WHAT HE CONTENDS IS THE CONTRACT.

20         SO I WOULD SUBMIT THAT THAT DOES NOT MEET THE LEVEL OF

21   PURPOSEFUL AVAILMENT NECESSARY TO POSIT PERSONAL JURISDICTION.

22         THE PLAINTIFFS CONCEDE THAT THIS WHOLE ISSUE HAS TO DO

23   WITH WHETHER A SPECIFIC LIMITED JURISDICTION.  IN OTHER WORDS,

24   WHETHER HIS CONDUCT IN CONNECTION WITH THE SPECIFIC CLAIMS IS

25   SUFFICIENT TO GIVE JURISDICTION HERE.

1        AND IN HIS TWO TRIPS TO CALIFORNIA HAVE NO RELATIONSHIP

2    TO THE FORMATION OF THE CONTRACT.  AND NO RELATIONSHIP TO THE

3    INTERFERENCE WITH THE CONTRACT.

4        THE -- PART OF THE ISSUE IS AND CALIFORNIA USES AS CITED

5    IN THE CASES A BUT FOR TEST IN OTHER WORDS, WAS MR. WESTON'S

6    ACTIVITY, WERE MR. WESTON'S ACTIVITIES IN CALIFORNIA, HAD THEY

7    NOT OCCURRED WOULD THERE STILL BE A CLAIM, AND THE ANSWER IS

8    YOU BET YA, THERE WOULD STILL BE A CLAIM SO THEY ARE RELEVANT

9    TO THIS CLAIM.  OF COURSE, HE WOULD STILL SAY IN MICHIGAN WE

10   DISCUSSED WE HAD A PARTNERSHIP AND THEY WOULD SAY NO, WE

11   DIDN'T.

12       AND HE WOULD STILL HAVE SPOKEN TO MR. COATS WHO WOULD

13   HAVE HMR SAY WE'RE NOT GOING TO PAY AND YOU THAT HAPPENED IN

14   MICHIGAN AND IT WOULD BE A COMPLETELY IRRELEVANT WHETHER HE HAD

15   OR HADN'T HAD TO TRAVEL TO CALIFORNIA ON THESE TWO TRIPS.

16       SO I WOULD SUBMIT THAT UNDER CALIFORNIA TEST FOR SPECIFIC

17   LIMITED JURISDICTION THERE ISN'T A PRIMA FACIE CASE BEFORE THE

18   COURT.

19           THE COURT:  ALL RIGHT.  THANK YOU.

20       AND IF I COULD RESPOND, I WILL BE AS BRIEF AS I CAN,

21   YOUR HONOR.

22       PICKING UP COUNSEL'S LAST POINT FIRST, HIS AND I DON'T

23   MEAN TO DO INJUSTICE TO IT BUT I WILL PARA PHRASE HIS COMMENT.

24   IT IS THAT EVERYTHING THAT EITHER LENT ITSELF TO THE CREATION

25   OR LENT ITSELF TO THE FINDING OF THE NONEXISTENCE OF AN ORAL

1    CONTRACT HAPPENED IN CALIFORNIA, I'M SORRY IN MICHIGAN.

2         THAT REALLY NOT THE CASE AND IT'S NOT THE CASE THAT'S

3    MADE OUT IN THEIR OPPOSITION OR IN THEIR OPPOSITION

4    DECLARATIONS EITHER ON THIS MOTION OR THE MOTION TO TRANSFER

5    WHICH WE HAVEN'T GOTTEN TO.

6         IN ALL OF THOSE, WITNESSES ARE LISTED, EVENTS ARE

7    SUMMARIZED AND DESCRIBED.  THAT SHOW THAT THERE WAS AN

8    IMPORTANCE IN CALIFORNIA TO THE VERY ACTIVITY THAT GENERATED

9    THE SUCCESS FOR WHICH MR. WESTON NOW CLAIMS A ONE-THIRD

10   OWNERSHIP.

11        THAT SUCCESS INVOLVED HIM COMING TO CALIFORNIA IN JUNE

12   AND THEN AGAIN IN EARLIER IN JANUARY OF 2010.

13        THE IDEA THAT HE WAS INVITED TO COME HERE DOES NOT DEFEAT

14   JURISDICTION.  NO ONE FORCED HIM.  HE CAME, HE DID WHAT HE DID,

15   HE WAS PAID FOR HIS TIME AND HIS TRAVEL EXPENSES.  IT WAS A

16   VOLUNTARY DECISION ON HIS PART TO COME.

17        AND IF YOU READ PARAGRAPH 13 OF HIS DECLARATION IN

18   OPPOSITION TO THE MOTION TO DISMISS, YOUR HONOR, YOU WILL SEE

19   THAT HE DESCRIBES HIS UNDERSTANDING OF WHAT HE WAS SUPPOSED TO

20   BE DOING UNDER THE ORAL AGREEMENT THAT HE ADVOCATES, AND IT WAS

21   TO ASSIST AT THE REQUEST OF MR. MANOS OR MR. PICOT IN FUND

22   RAIDING AND IN DEMONSTRATIONS OF THIS TECHNOLOGY.

23        WELL, THE LATTER IS PRECISELY WHAT HE DID HERE.  MORE

24   OVER, FROM OUR STANDPOINT, PROVING UP THE CONTENTION THAT THIS

25   AGREEMENT DID NOT EXIST INVOLVED SHOWING THAT WHEN MR. WESTON

1    WAS HERE, HE DID NOT AS COUNSEL PUT IT, DO ANYTHING THAT WOULD

2    SUGGEST A LACK OF AN AGREEMENT.

3         HE DID.  SPECIFICALLY ONE OF THE THINGS HE DID WAS TO

4    TELL THE PEOPLE THAT HE WAS DEMONSTRATING OR ASSISTING IN THE

5    DEMONSTRATION OF THE TECHNOLOGY TO, THAT IF THEY IN FACT FORMED

6    A JOINT VENTURE WITH MR. PICOT, THAT HE MR. WESTON WOULD LIKE

7    TO WORK FOR THE JOINT VENTURE.

8         AGAIN, A VOLUNTARY ACT SEEKING TO TAKE ADVANTAGE OF DOING

9    BUSINESS IN CALIFORNIA WHICH IS WHERE THAT PROPOSED JOINT

10   VENTURE WOULD HAVE BEEN LOCATED HAD IT IN FACT BEEN FORMED.

11        THE FACT IT DIDN'T DOESN'T FEATURE A DISTINCTION, THIS IS

12   MR. WESTON PLANTING HIS FEET AND HIS HEART IN CALIFORNIA IN

13   ORDER TO PROMOTE THIS ACTIVITY THAT IS THIS HYDROGEN TECHNOLOGY

14   OF WHICH HE CLAIMS TO BE AN OWNER.

15        NOW, GOING BACK TO SOME OF COUNSEL'S EARLIER POINTS HE

16   SAYS WELL IT'S MERELY FORTUITOUS THAT MR. PICOT ISN'T ABLE TO

17   SPEND HIS MONEY IN CALIFORNIA.  HE COULD HAVE BEEN SPENDING IT

18   IN FLORIDA AND THIS WOULD BE NO JURISDICTION THERE.  I CAN'T

19   AGREE MUCH LESS NO MATTER HOW I TRY.

20        MR. PICK IS A RESIDENT OF CALIFORNIA.  HE DIDN'T TRAVEL

21   HERE ON VACATION HE DIDN'T COME HERE AND EAT AT A RESTAURANT

22   FOR WHICH HE COULDN'T FORWARD TO PAY THE BILL AFTER THIS TORT.

23   HE LIVES HERE.  THE MONEY THAT WAS COMING TO HIM IS DAMAGE

24   HERE.  IT'S A FAR DISTINCT MATTER FROM WHAT COUNSEL IS TALKING

25   ABOUT.

1        COUNSEL ALSO TOLD YOUR HONOR THAT THERE IS NO EVIDENCE

2    BEFORE THE COURT OF ANY DAMAGE HERE IN THE JURISDICTION.

3        IF YOUR HONOR READS MR. PICK'S DECLARATION IN OPPOSITION

4    TO THE MOTION TO DISMISS IN PARTICULAR PARAGRAPH 32 YOU WILL

5    SEE THAT HE DETAILS THE EXACT DAMAGE THAT I HAVE URGED TO

6    YOUR HONOR TODAY, THE TWO COMPONENTS OF IT, THE LACK OF PAYMENT

7    AND THE INCURRING OF ATTORNEY'S FEES IN THIS JURISDICTION

8    THAT'S BEING THE JURISDICTIONAL HARM.

9        ANOTHER POINT THAT COUNSEL MADE IS THAT YOU HAVE TO LOOK

10   FOR SOMETHING MORE THAN THE MERE EFFECT IN THE JURISDICTION.  I

11   AGREE WITH HIM LEGALLY BUT WE HAVE A DIFFERENT SITUATION

12   FACTUALLY BEFORE THE COURT.

13       WHAT YOU HAVE IS MR. WESTON KNOWING THAT MR. PICK LIVED

14   IN CALIFORNIA, KNOWING THAT THE HMR CONTRACT HAD BEEN SIGNED,

15   FIRST THREATENING TO FIND AND EXPOSE SECRETS OUT ABOUT MR. PICK

16   WHICH HE SAID IN AN E-MAIL TO MR. MANOS, BUT EVEN THOUGH THAT

17   E-MAIL WASN'T SENT BY MR. WESTON TO CALIFORNIA, IT DEALT WITH

18   CAUSING HARM TO A CALIFORNIA RESIDENT.

19       THEN YOU HAVE THE PHONE CALL FROM MR. WESTON TO MR. MANOS

20   ADMITTEDLY IN NEVADA WHERE MR. WESTON SAYS UNLESS YOU DAVID

21   MANOS, AND BERNARD PICOT PAY ME $250,000 RIGHT AWAY, I'M GOING

22   TO RUIN YOUR LIVES.

23       THAT'S HARM TO SOMEBODY IN CALIFORNIA WHICH WE CONTEND IS

24   PART OF THE TORT BECAUSE A FEW WEEKS LATER HE DID EXACTLY THAT.

25       HE WENT AND GAVE HMR A DECLARATION THAT I AM AN OWNER AND

1    DAVE MANOS TOLD ME THE SECRET TO THE FORMULA.

2         BOTH OF THOSE THING FIST TRUE WOULD BE A BREACH OF

3    WARRANTIES IN THE HMR SALES AGREEMENT.  SO THERE IS IN FACT A

4    SIGNIFICANT REASON TO HAVE JURISDICTION IN THIS COURT.

5         WHEN YOU LOOK FOR THE SOMETHING MORE THAN JUST AN IDLE

6    EFFECT HAPPENING SOMEWHERE IN SOME JURISDICTION, YOU HAVE A

7    PREMEDICATED SCHEME BY MR. WESTON TO CAUSE HARM TO A CALIFORNIA

8    RESIDENT.

9         AND IF YOUR HONOR WOULD TAKE THE TROUBLE TO READ THE

10   CASES I'VE CITED AT FOOTNOTE 13 ON PAGE 15 OF THE OPPOSITION

11   BRIEF TO THE MOTION TO DISMISS, THOSE CASES CATEGORICALLY AND

12   THERE ARE 5 OR 6 OF THEM, CATEGORICALLY SAY THAT JUST ONE ACT

13   THAT MEETS THESE OTHER CRITERIA'S OF INTENTIONAL AND CAUSING

14   AND EFFECT, CONFERS JURISDICTION.

15        THE CASES THAT COUNSEL CITES BY AND LARGE DEAL WITH

16   SOMEBODY WHO IS OPERATING AN INTERNET SITE.

17        AND THERE THE NINTH CIRCUIT WARNS YOU HAVE TO LOOK FOR

18   SOMETHING MORE THAN JUST AN EFFECT.  TRUE.  BUT NOT WHEN YOU

19   HAVE A TORT OUTSIDE OF THE INTERNET SETTING WITH A PASSIVE

20   WEBSITE THAT MIGHT CAUSE AN EFFECT SOMEWHERE.

21        THERE YOU NEED SOMETHING MORE.  HERE WE HAVE IT IF IT'S

22   NEEDED AT ALL.

23             THE COURT:  ALL RIGHT.

24        THANK YOU, COUNSEL.  THANK YOU BOTH.

25        THE ARGUMENT HAS BEEN HELPFUL AND I DO EXPECT TO DECIDE

1    THESE MOTIONS HOPEFULLY BEFORE I LEAVE CALIFORNIA AT THE END OF

2    NEXT WEEK.

3            MR. BOEHM:  JUDGE, JUST FOR YOUR INFORMATION, WE HAVE

4    A CMC BEFORE JUDGE DAVILA ONE WEEK HENCE.

5        SO IF YOUR HONOR IS ABLE TO DECIDE THIS BY THEN THAT

6    WOULD BE HELPFUL FOR JUDGE DAVILA.

7            THE COURT:  I WILL TRY.

8            MR. BOEHM:  NOW THE OTHER QUESTION, AND I DON'T KNOW

9    WHETHER YOU WANT TO GET INTO THIS, WE HAVE A CMC STATEMENT DUE

10   TOMORROW.

11           THE COURT:  WELL, I DON'T THINK I WILL GET INTO THAT.

12           MR. BOEHM:  WE SHOULD JUST FILE IT --

13           THE COURT:  JUST FILE IT, YES.

14       IF THAT'S THE OUTSTANDING OBLIGATION UNDER JUDGE DAVILA'S

15   ORDER OR THE LOCAL RULES THEN IT NEEDS TO BE COMPLIED WITH.

16           MR. BOEHM:  I UNDERSTAND, YOUR HONOR.

17       ONE LAST POINT, AND THAT IS OF COURSE COUNSEL HAS BROUGHT

18   A SECOND MOTION

19           THE COURT:  I UNDERSTAND.  I THINK THAT'S BEEN

20   THOROUGHLY BRIEFED.

21           MR. BOEHM:  IT HAS.  I WILL SUBMIT THAT, YOUR HONOR.

22           THE COURT:  THANK YOU.

23           MR. BOEHM:  THANK YOU, JUDGE.

24           (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE

25   CONCLUDED.)

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 9/25/12