**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| BERNARD PICOT,<br>*Plaintiff-Appellant*,<br><br>and<br><br>PAUL DAVID MANOS,<br>*Plaintiff*,<br><br>v.<br><br>DEAN D. WESTON,<br>*Defendant-Appellee.* | No. 12-17098<br><br>DC No.<br>5:12 cv-01939<br>EJD<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted
December 9, 2014—San Francisco, California

Filed March 19, 2015

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges, and Gordon J. Quist, Senior District Judge.[*]

Opinion by Judge Tashima

---

[*] The Honorable Gordon J. Quist, Senior United States District Judge for
the Western District of Michigan, sitting by designation.

## SUMMARY[**]

### Personal Jurisdiction

The panel affirmed the district court's dismissal for lack of personal jurisdiction of a diversity action alleging tort and contract claims.

The plaintiff, a resident of California, brought the action against the defendant, a resident of Michigan, seeking a declaration that no oral agreement was made, and seeking damages for intentional interference with the parties' sales contract.

The panel held that the defendant neither purposefully availed himself of the privilege of conducting activities in California nor expressly aimed his conduct at California. The panel concluded, therefore, that the district court did not err in dismissing for lack of specific personal jurisdiction.

### COUNSEL

Thomas M. Boehm (argued), Law Offices of Thomas M. Boehm, Los Gatos, California, for Plaintiff-Appellant.

David H. Schwartz (argued), Angeline Elizabeth O'Donnell, Law Offices of David H. Schwartz, San Francisco, California, for Defendant-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

TASHIMA, Circuit Judge:

Plaintiff Bernard Picot, a resident of California, appeals the district court's dismissal of his action against Defendant Dean Weston, a resident of Michigan, for lack of personal jurisdiction.  From 2010 to 2012, Picot and Weston worked together with a third man, Paul David Manos, to develop and market an electrolyte for use in hydrogen fuel cells.  After Picot and Manos sold the electrolyte technology without telling Weston, Weston claimed that he was entitled to a one-third share of the proceeds under an oral agreement.  In response, Picot and Manos sued Weston in California seeking a declaration that no oral agreement was made, and for damages for intentional interference with their sales contract.  The district court dismissed the suit for lack of personal jurisdiction.  We affirm.

## I.

Weston is a resident of Waterford, Michigan.[1]  He has made a career of developing technologies for use in Michigan's automotive industry through his corporation, Engineering Interests, Inc., which is incorporated in Michigan and headquartered in Sterling Heights, Michigan.  Outside the

---

[1] Because the district court resolved this case without an evidentiary hearing, we take all uncontroverted allegations in the complaint as true and resolve all factual disputes in the Picot's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "We may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (alteration and internal quotation marks omitted).  The relevant jurisdictional facts are not in dispute.

events involved in this suit, neither Weston nor Engineering
Interests has ever conducted business in California.  Picot is
a resident of Santa Clara County, California.

Weston and Picot met each other through Manos, a
mutual business associate and a resident of Nevada.  Weston
and Manos have known each other since 2005.  In 2009,
Manos and Picot were looking to get involved with a
hydrogen technology being developed in Texas.  Manos
asked Weston if he could help by traveling to Texas to assess
the technology, which Weston did.  Eventually, the three men
determined that the technology being developed in Texas was
unworkable, and began efforts to develop and sell their own
electrolyte formula for use in hydrogen fuel cells.

Exactly how the three men decided to work together is
hotly disputed.  Weston claims that in 2009, he and Manos
met in Michigan and reached an oral agreement under which
Weston would help develop, test, fund, and market the
technology.  In exchange, Weston would receive $20,000 per
month and a one-third share of any profits from the sale of the
technology.   Weston states that Manos claimed to have
authority to enter into the agreement on behalf of Picot, as
well as himself.  On February 1, 2010, Manos, Picot, and
Weston met at a restaurant in Howell, Michigan.  Weston
claims that at this meeting, Picot confirmed his agreement to
the oral profit-sharing deal.  Picot and Manos acknowledge
the meeting, but deny the existence of any oral agreement.

Weston spent twenty to seventy hours per week working
to develop and market the technology at his office in Sterling
Heights, Michigan.  Picot and Manos occasionally worked
out of his office as well.  Weston's marketing efforts focused
largely on soliciting investors or purchasers in the Michigan

automotive industry including General Motors, Chrysler, Hummer, and Penske Automotive. He also procured a $450,000 investment from a Michigan resident, and contracted with the University of Michigan for technological help.

On two occasions, Weston left his Michigan office to travel to California. First, in January 2010, Weston traveled to southern California for approximately two weeks to help Manos set up a demonstration for a potential client Picot had contacted. Second, in June 2010, Weston went to Sacramento at Manos' and Picot's request to help with another demonstration. On both occasions, Manos and Picot compensated Weston for his work and related expenses.

On three occasions, Weston met with Tracy Coats, a resident of Cleveland, Ohio, at the University of Michigan. Coats is the majority owner of HMR Hydrogen Master Rights, Ltd. ("HMR"), a Delaware corporation with offices in Ohio. At one of these meetings, Coats and Weston videotaped a demonstration of the technology. At another, Weston and Coats conducted a Skype presentation for a potential customer in China.

In 2011, Manos and Picot began negotiating with Coats and another part-owner of HMR, Carl Le Souef, a resident of Australia, for HMR to purchase the technology. The negotiations were successful, and Manos and Picot agreed to sell the technology to HMR for $35 million. They agreed that the money would be paid into two pass-through trusts, one in Wyoming and one in Australia. The contract was executed in Los Angeles, California, and became effective December 12, 2011. This agreement was followed by a series of emails and phone calls between Weston and Manos. On February 8,

2012, Weston sent Manos an email referencing earlier conversations and asking about his share of the proceeds from the sale to HMR.  Immediately after that email Weston called Manos and demanded $250,000 or he would "do everything in his power to destroy" Manos and Picot.

In March 2012, Coats told Weston about the $35 million sale price, and informed him that Manos and Picot had each already received $1.1 million.  On March 20, 2012, Weston's lawyer sent Manos and Picot an email threatening to sue if they did not pay Weston his share of the proceeds pursuant to their oral agreement. As a result of the threatened litigation and other unspecified statements by Weston, HMR stopped making payments to Manos and Picot.

Three days after the threatening email, Picot and Manos filed suit against Weston in California Superior Court for the County of Santa Clara seeking: (1) a declaration that no oral agreement existed between them and Weston; and (2) damages for intentional interference with the HMR sales contract.  Weston removed the action to the United States District Court for the Northern District of California on the basis of diversity jurisdiction.  Weston then moved to dismiss the complaint for lack of personal jurisdiction and improper venue and, in the alternative, to transfer venue to the Eastern District of Michigan.  The district court concluded that it lacked personal jurisdiction over Weston on either of the two claims, granted the motion to dismiss, and denied the motion to transfer as moot.  Picot, but not Manos, timely appealed.

## II.

We review *de novo* a district court's dismissal for lack of personal jurisdiction. *Wash. Shoe Co. v. A-Z Sporting Goods*

*Inc.*, 704 F.3d 668, 671 (9th Cir. 2012).  "[T]he plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800.   Where, as here, a defendant's motion to dismiss is based on a written record and no evidentiary hearing is held, "the plaintiff need only make a prima facie showing of jurisdictional facts."  *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).

## III.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," our inquiry centers on whether exercising jurisdiction comports with due process.  *Id.*; *see* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").   Due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).   Picot does not contend that Weston is subject to general jurisdiction in California; instead, he argues that specific jurisdiction exists.  When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for

"each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.* at 1181.

We employ a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If he does so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not

be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The exact form of our jurisdictional inquiry depends on the nature of the claim at issue. For claims sounding in contract, we generally apply a "purposeful availment" analysis and ask whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). For claims sounding in tort, we instead apply a "purposeful direction" test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Id.* at 802–03. Because Picot asserts both a contract and a tort claim, both tests are at issue here.

## A.

A claim for declaratory judgment as to the existence of a contract is an action sounding in contract. *See Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996) ("[A] claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort."). Therefore, our minimum contacts inquiry for Picot's declaratory judgment claim focuses on whether Weston purposefully availed himself of the privilege of conducting business within California through the purported oral contract.

"[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, 539 F.3d at 1017. Rather, there must be "actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475 (1985)

(quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Merely "random, fortuitous, or attenuated" contacts are not sufficient. *Id.* (internal quotation marks omitted). A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.1988)). In determining whether such contacts exist, we consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

Applying this standard, we conclude that Picot has not demonstrated that Weston had sufficient minimum contacts with California to subject him to specific personal jurisdiction there. Under the disputed oral agreement, Weston was obligated to develop the technology, arrange for its testing, and assist in fund-raising and marketing. In exchange, Weston would receive a one-third interest in any profits from the sale of the technology, $20,000 per month, and reimbursement of his expenses to develop and adapt the technology. The agreement was formed in Michigan, where Weston lived, where it was understood Weston would perform the majority of his work, and where Weston did indeed discharge most of his contractual duties.

Despite Weston's lack of ties to California, Picot makes two arguments in favor of the exercise of jurisdiction. We find neither persuasive. First, he contends that the oral agreement created a substantial connection between Weston and California because Picot, a co-party to the agreement, fulfilled his obligations under the agreement by seeking out investors and buyers in California. This argument would

mistakenly "allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).  But our inquiry is limited to examining contacts that "proximately result from actions by the defendant *himself*."  *Burger King*, 471 U.S. at 475.  Therefore, the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract.

Second, Picot argues that the requisite contacts were created by "the parties' actual course of dealing."  *Burger King*, 471 U.S. at 479.  Specifically, he contends that Weston's two trips to California are sufficient to subject him to the state's jurisdiction.  While "physical entry into the State . . . is certainly a relevant contact," *Walden*, 134 S. Ct. at 1122, a defendant's transitory presence will support jurisdiction only if it was meaningful enough to "create a 'substantial connection' with the forum State," *Burger King*, 471 U.S. at 475 (quoting *McGee*, 355 U.S. at 223).

Here, given "the limited nature of the transaction at issue," *Boschetto*, 539 F.3d at 1017, that substantial connection is lacking.  Neither trip was envisioned in the initial oral agreement; rather, both grew incidentally out of broader efforts to develop and market the technology.  In both cases, Weston traveled to California at Manos' and Picot's request and expense to assist in presentations Manos and Picot had planned for clients that Manos and Picot had identified.  Weston's role in the presentations was relatively small: he primarily prepared prototypes and demonstrations.  His first visit lasted only two weeks.  The exact length of his second visit is unclear, but appears to have been about the same.

Moreover, Weston's two trips to California hold no special place in his performance under the agreement as a whole. In addition to the two trips to California, he also traveled to Mexico for a presentation and spoke over the Internet with potential customers in China. The bulk of his efforts in developing and marketing the technology were centered in Michigan. He worked out of his office in Sterling Heights, Michigan, contracted with the University of Michigan, and met with possible purchasers in Michigan and Ohio. Manos, Picot, and Coats all traveled to Michigan to meet with Weston. At most, Weston's contacts with California were merely "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Accordingly, we hold that the oral agreement and Weston's two trips to California did not create sufficient minimum contacts to subject him to personal jurisdiction there.[2]

## B.

Picot's second cause of action alleges that Weston tortiously interfered with Picot's contract to sell the technology to HMR. In analyzing whether a court has specific personal jurisdiction over a tort claim, we apply our three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under this test, a defendant purposefully directed his activities at the forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

---

[2] Because Picot has failed to establish that Weston purposefully availed himself of the privilege of conducting activities in California, we need not address whether the suit arises out of Weston's forum-related activities, or whether the exercise of jurisdiction would be reasonable.

that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  In applying this test, we must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122.  Thus, a "mere injury to a forum resident is not a sufficient connection to the forum."  *Id.* at 1125. Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.*

### 1.

The meaning of the term "intentional act" in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the "intent to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806.  Here, Weston committed an intentional act when he spoke with Coats about the technology.  Thus, the first prong is easily satisfied.

### 2.

The second prong of our test, "express aiming," asks whether the defendant's allegedly tortious action was "expressly aimed at the forum."  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). The exact form of our analysis varies from case to case and "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."  *Schwarzenegger*, 374 F.3d at 807.  In this case, Picot alleges intentional interference with a contract, so we must ask whether Weston expressly aimed such interference at California.  Picot argues

that this requirement is met because Weston targeted Picot, a California resident.  *See Wash. Shoe Co.*, 704 F.3d at 675.

In assessing Picot's arguments, we are guided by the Supreme Court's recent decision in *Walden*.  There, the Court reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum.  In *Walden*, a Georgia police officer, working with DEA agents, seized money belonging to two professional gamblers in a Georgia airport and later helped draft a false affidavit to show probable cause for the seizure. 134 S. Ct. at 1119–20.  The gamblers, residents of California and Nevada, filed suit against the police officer in Nevada, alleging violations of their Fourth Amendment rights.  *Id.* at 1120.   The Supreme Court held that the officer lacked sufficient contacts with Nevada to subject him to jurisdiction there.  *Id.* at 1126.  The proper analysis in tort cases as well as contract cases, the Court reiterated, "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* at 1122.  "[T]he plaintiff cannot be the only link between the defendant and the forum."  *Id.*  Turning to the specific injury alleged, the Court noted that the gamblers' lack of access to their seized funds had no meaningful connection to Nevada because they "would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had."  *Id.* at 1125.  Because the plaintiffs' injury was not "tethered to Nevada in any meaningful way," the Court concluded that it did not create a jurisdictionally sufficient contact.  *Id.*

Applying the principles of *Walden*, we conclude that Weston's actions did not connect him with California in a way sufficient to support the assertion of personal jurisdiction over him. Weston's allegedly tortious conduct consists of making statements to Coats (an Ohio resident) that caused HMR (a Delaware corporation with offices in Ohio) to cease making payments into two trusts (in Wyoming and Australia). Weston did all this from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California. In short, "none of [Weston's] challenged conduct had anything to do with [California] itself."[3] *Id.* Moreover, as in *Walden*, Picot's injury, an inability to access out-of-state funds, is not tethered to California in any meaningful way. Rather, his injury is entirely personal to him and would follow him wherever he might choose to live or travel. The effects of Weston's actions are therefore "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction."

---

[3] Picot also contends that the "express aiming" requirement is met because, shortly before the alleged tortious interference, Weston called Manos and threatened to "destroy" Manos and Picot unless they paid him immediately. These threats, Picot argues, amount to extortion expressly targeted at California. However, Picot did not assert an extortion claim in his complaint. We therefore do not address the alleged extortion other than to say that it has no bearing on the jurisdictional issues before us. Our specific jurisdiction inquiry is limited to "the defendant's suit-related conduct." *Walden*, 134 S. Ct. at 1121. A plaintiff may not create personal jurisdiction over one claim by arguing that jurisdiction might be proper over a different, hypothetical claim not before the court. *Cf. Action Embroidery*, 368 F.3d at 1180 ("Personal jurisdiction must exist for each claim asserted against a defendant.").

*Id.*[4]   Accordingly, Picot has failed to make a prima facie showing of specific personal jurisdiction over Weston on his intentional interference claim.

## IV.

Weston neither purposefully availed himself of the privilege of conducting activities in California nor expressly aimed his conduct at California.  The district court, therefore, did not err in dismissing this action for lack of personal jurisdiction.  The judgment of the district court is

**AFFIRMED.**

---

[4] Because Picot has not established the second prong of our purposeful direction test, we need not address the third prong.  *See Schwarzenegger*, 374 F.3d at 807 n.1.

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)     A.     Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.     Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
>
> ► The proceeding involves a question of exceptional importance; or
>
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system.  No paper copies are required unless the Court orders otherwise.  If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper.  No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)

- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees

- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari

- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions

- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ...............................................................................................*(Rev. 12-1-09)*

# United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[                    ] v. [                    ]   9th Cir. No. [          ]

The Clerk is requested to tax the following costs against: [                    ]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** | | | $ | $ | | | $ | $ |
| **Opening Brief** | | | $ | $ | | | $ | $ |
| **Answering Brief** | | | $ | $ | | | $ | $ |
| **Reply Brief** | | | $ | $ | | | $ | $ |
| **Other**\*\* | | | $ | $ | | | $ | $ |
| | | | **TOTAL:** | $ | | | **TOTAL:** | $ |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [ ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [ ]

("s/" plus attorney's name if submitted electronically)

Date [ ]

Name of Counsel: [ ]

Attorney for: [ ]

---

*(To Be Completed by the Clerk)*

Date [ ]      Costs are taxed in the amount of $ [ ]

Clerk of Court

By: [ ] , Deputy Clerk